## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| Xu Lun, a pseudonym, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-cv-803-NJ |
| | ) | |
| Milwaukee Electric Tool Corporation et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF TECHTRONIC INDUSTRIES CO. LTD.'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Jurisdictional Facts and Plaintiff's Allegations Relevant to TTI. ......................... 2

        B.      Plaintiff's Substantive Allegations of Harm as to TTI. ...................................... 4

III.    LEGAL ARGUMENT ........................................................................................... 6

        A.      The Court Should Dismiss the Claims Against TTI for Lack of Personal
                Jurisdiction Pursuant to Rule 12(b)(2). ......................................................... 6

                1.      The Court Lacks General Jurisdiction Over TTI. ................................... 7

                2.      The Court Lacks Specific Jurisdiction Over TTI. .................................. 13

        B.      The Court Should Dismiss Plaintiff's Claims Against TTI Under Rule
                12(b)(6) Because Plaintiff Fails to State a TVPRA Claim. ............................... 15

                1.      The TVPRA's Civil Remedies Provision Does Not Extend
                        Extraterritorially to the Alleged Foreign Conduct and Harm. ................ 16

                2.      Plaintiff's TVPRA Claim Also Fails Because TTI Is Not "Present
                        in the United States" as Required By § 1596(a)(2). ............................... 17

                3.      Dismissal of the Complaint is Warranted for Failing to State a
                        Cognizable Violation of 18 U.S.C. §§ 1589 and 1595. .......................... 21

                        a.      The Complaint Does Not Allege Defendants Are Direct
                                Perpetrators in Violation of § 1589. ......................................... 22

                        b.      The Complaint Fails to Adequately Allege Beneficiary
                                Liability against TTI. ............................................................. 23

                                i.      Plaintiff Fails to Allege That TTI Participated in a
                                        "Venture." ................................................................. 23

                                ii.     Plaintiff Does Not Plausibly Allege That TTI Knew
                                        or Should Have Known That the Alleged Venture
                                        Engaged in TVPRA Violations. .................................... 27

                                iii.    Plaintiff Does Not Plausibly Allege That TTI
                                        Knowingly Benefited from Violations of the
                                        TVPRA. ...................................................................... 29

IV.     CONCLUSION ................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Marriott Int'l, Inc*.,
  455 F. Supp. 3d 171 (E.D. Pa. 2020) .........................................................................29

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  No. 3:19-cv-01992-IM, 2021 WL 1235241 (D. Or. Mar. 31, 2021) .......................29

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) .............................................................................9, 12

*Adhikari v. Daoud & Partners*,
  No. 09-CV-1237, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013) ..........................19

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) .............................................................................8, 13

*Annie Oakley Enters. v. Sunset Tan Corp. & Consulting, LLC*,
  703 F. Supp. 2d 881 (N.D. Ind. 2010) ......................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................15

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020)...................29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................15

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) ................................................................................25

*Boyle v. U.S.*,
  556 U.S. 938 (2009).................................................................................................24

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
  582 U.S. 255 (2017)...................................................................................................9

*Burlingham v. U.S. Dep't of Health & Hum. Servs.*,
  No. 22-CV-1134-pp, 2023 WL 6390798 (E.D. Wis. Sept. 30, 2023) .......................8

*Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) .....................................................................................9

-ii-

*Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*,
    993 F. Supp. 2d 872 (N.D. Ill. 2013) ....................................................................11

*Collazo v. Enter. Holdings, Inc.*,
    823 F. Supp. 2d 865 (N.D. Ind. 2011) ...................................................................10

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ..................................................................................25

*Daimler AG v. Bauman*,
    571 U.S. 117, 134 S. Ct. 746 (2014).......................................................6, 8, 11, 12

*Demaria v. Nissan N. Am., Inc.*,
    No. 15 C 3321, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016).......................................9

*Doe I v. Apple Inc.*,
    No. 1:19-CV-03737 (CJN), 2021 WL 5774224 (D.D.C. Nov. 2, 2021),
    *aff'd on other grounds sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403
    (D.C. Cir. 2024) .................................................................................16, 17, 26, 27

*E.S. v. Best Western Int'l, Inc.*,
    No. 3:20-cv-00050-M, 2021 WL 37457 (N.D. Tex. Jan. 4, 2021) ..........................29

*Endo Ventures Unlimited Co. v. Nexus Pharms. Inc.*,
    No. 23-CV-0299-BHL, 2024 WL 1254358 (E.D. Wis. Mar. 25, 2024)..............6, 12

*Felland v. Clifton*,
    682 F.3d 665 (7th Cir. 2012) ....................................................................................6

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ........................................................................ *passim*

*Gen. Elec. Co. v. Univ. of Virginia Patent Found.*,
    No. 14-C-1529, 2015 WL 1246087 (E.D. Wis. Mar. 18, 2015).............................10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................7, 8, 11, 12

*H.G. v. Inter-Cont'l Hotels Corp.*,
    No. 19-cv-13622, 2020 WL 5653304 (E.D. Mich. Sept. 23, 2020) ........................25

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*,
    136 F.3d 537 (7th Cir. 1998) ..................................................................................10

*Indag GmbH & Co. v. IMA S.P.A*,
    150 F. Supp. 3d 946 (N.D. Ill. 2015) ........................................................................6

-iii-

*Insolia v. Philip Morris Inc.*,
  31 F. Supp. 2d 660 (W.D. Wis. 1998) .............................................................................9, 10

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)................................................................................................................7

*J.B. v. G6 Hosp., LLC*,
  No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)..........................26, 27

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
  965 F.3d 571 (7th Cir. 2020) ...............................................................................................14

*Jane Doe 1 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) .............................26

*Jefferson Elec., Inc. v. Torres*,
  No. 09-C-465, 2009 WL 4884379 (E.D. Wis. Dec. 10, 2009) ................................................9

*Jensen v. U.S. Tennis Ass'n*,
  No. 20-2422-JWL, 2020 WL 6445117 (D. Kan. Oct. 30, 2020)............................................29

*Kipp v. Ski Enter. Corp. of Wis.*,
  783 F.3d 695 (7th Cir. 2015) .................................................................................................8

*Konstantinova v. Garbuzov*,
  No. 2:21-CV-12795 (WJM), 2022 WL 2128799 (D.N.J. June 14, 2022) .............................26

*Milwaukee World Trading LLC v. Kapsch*,
  No. 22-CV-322-pp, 2023 WL 2541556 (E.D. Wis. Mar. 16, 2023)......................................15

*Moderson v. MFK Mobilelink Wis., LLC*,
  630 F. Supp. 3d 1059 (E.D. Wis. 2022)..................................................................................9

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)........................................................................................................18, 19

*N. Grain Mktg. LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) .................................................................................................7

*Nestle USA, Inc. v. Doe*,
  593 U.S. 628 (2021)..............................................................................................................16

*Perkins v. Benguet Consol. Min. Co.*,
  342 U.S. 437 (1952)................................................................................................................8

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .................................................................................................6

*Ratha v. Phatthana Seafood Co.*,
    143 S. Ct. 491, 214 L. Ed. 2d 280 (2022) .............................................................18

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir.) ................................................................ *passim*

*Ratha v. Phatthana Seafood Co.*,
    No. CV 16-4271-JFW, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ..................................25

*Richardson v. Nw. Univ.*,
    No. 1:21-CV-00522, 2023 WL 6197447 (N.D. Ill. Sept. 21, 2023) ...........................22, 24, 26

*Ruderman v. McHenry Cnty.*,
    No. 3:22-CV-50115, 2023 WL 130496 (N.D. Ill. Jan. 9, 2023) .............................22

*Rush v. Savchuk*,
    444 U.S. 320 (1980) ................................................................9

*In re S. White Transp., Inc.*,
    725 F.3d 494 (5th Cir. 2013) ................................................................25

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ................................................................7, 10

*Tanedo v. East Baton Rouge Parish School Bd.*,
    No. SA CV10-01172 JAK, 2012 WL 5378742 . (C.D. Cal. Aug. 27, 2012) ..........................18

*Taylor v. Salvation Army Nat'l Corp.*,
    No. 21-CV-6105, 2022 WL 22861527 (N.D. Ill. Sept. 19, 2022),
    *aff'd*, No. 23-1218, 2024 WL 3665336 (7th Cir. Aug. 6, 2024) .............................7

*U.S. Sec. & Exch. Comm'n v. Carebourn Cap., LP*,
    339 F.R.D. 510 (N.D. Ill. 2021) ................................................................7

*U.S. v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ................................................................25

*U.S. v. Davila-Mendoza*,
    972 F.3d 1264 (11th Cir. 2020) ................................................................20

*U.S. v. Shi*,
    525 F.3d 709 (9th Cir. 2008) ................................................................20

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................13, 14

## Statutes

18 U.S.C. § 1581 ................................................................7

-v-

18 U.S.C. § 1589 ....................................................................................................... *passim*

18 U.S.C. § 1591 ...............................................................................................16, 23, 24

18 U.S.C. § 1595 ....................................................................................................... *passim*

18 U.S.C. § 1596 ....................................................................................................... *passim*

18 U.S.C. § 1961(4) ..................................................................................................24, 25

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .....................................................1, 6, 15, 30

Federal Rule of Civil Procedure 12(b)(6) ............................................................ *passim*

Defendant Techtronic Industries Co. Ltd. ("TTI"), by and through its attorneys, hereby submits the following memorandum in support of its motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.      **INTRODUCTION**

TTI should be immediately dismissed from this lawsuit based on jurisdictional grounds alone. TTI is a Hong Kong-based company with no presence in Wisconsin and whose only connection to the United States is the presence of separate subsidiaries that TTI does not control. This Court lacks personal jurisdiction over TTI for two reasons. First, Plaintiff cannot make a case for general personal jurisdiction because the type of "continuous and systematic" contacts required for general personal jurisdiction are missing. The presence of a subsidiary does not—and, on the facts alleged, cannot—confer general personal jurisdiction in this Court. Second, there is no basis to assert specific jurisdiction over TTI because the wrongdoing alleged in the Complaint occurred in China and affected a Plaintiff who does not allege to have ever set foot in the United States. On these facts, the Court should dismiss the claims against TTI because jurisdiction comporting with the Constitutional requirements of due process is totally lacking.

Because the Court lacks personal jurisdiction over TTI, it need not further address the sufficiency of the Complaint's allegations. Nevertheless, TTI submits that dismissal under Rule 12(b)(6) for failure to state a claim is also warranted. Specifically, Plaintiff brings a sole cause of action under the Trafficking Victims Protection Reauthorization Action, 18 U.S.C. § 1581 et seq. ("TVPRA"). *See* Complaint, Dkt. #1 ("Compl."), ¶¶ 113-121. To begin with, the TVPRA's civil remedy provision under which Plaintiff brings a claim, 18 U.S.C. § 1595, does not apply to extra-territorial conduct. Here, the only alleged violations in the Complaint occurred outside the United States and are thus inactionable. Even if Plaintiff could bring an action, as to TTI, Plaintiff's claim fails out of the gate, because the TVPRA's statutory jurisdiction provision only authorizes civil

actions where "an alleged offender is **present in the United States**[.]" 18 U.S.C. § 1596(a)(2) (emphasis added). Plaintiff does not allege that TTI is present in the United States—it is not—and thus Plaintiff cannot assert a TVPRA claim against it.

Even if the threshold statutory requirements were not lacking, the Complaint further fails to assert, in anything more than a cursory fashion, that TTI violated the TVPRA. TTI does not support or condone forced labor in any form. Here, Plaintiff has not alleged that TTI is a perpetrator of forced labor—as alleged in the Complaint, that perpetrator was a third-party supplier—or that TTI either "knowingly" benefited from forced labor in China or "knowingly" participated in ventures that led to the violations alleged by Plaintiff, as the TVPRA requires. *See* 18 U.S.C. §§ 1589 and 1595(a). Plaintiff therefore fails to adequately allege a TVPRA claim against TTI.

Accordingly, the Court should dismiss TTI and the claims against it from this lawsuit.

## II. BACKGROUND

### A. Jurisdictional Facts and Plaintiff's Allegations Relevant to TTI.

TTI is a limited liability company based in Hong Kong. Declaration of "Frank" Chi Chung Chan, attached as Exh. 1 ("Chan Decl."), ¶ 3; Compl. ¶ 10. TTI has no presence in Wisconsin. Chan Decl., ¶¶ 3-12. TTI does not market, advertise, or solicit business in Wisconsin. *Id.* ¶ 10. TTI does not regularly retain any employees based in Wisconsin, maintain a registered agent in Wisconsin, or pay taxes in Wisconsin. *Id.* ¶¶ 5-8. TTI has never owned, leased, possessed, or maintained any real or personal property in Wisconsin, including bank accounts, offices, residences, or places of business. *Id.* ¶ 4. TTI has an internationally available website, but it is not an "interactive website" (potential customers in the United States cannot place orders for any TTI product through the website) and even the English version of the website is not specific to the

United States. *Id.* ¶ 9.[1] TTI is traded on the Hong Kong stock exchange. *Id.* ¶ 3. TTI does not develop, manufacture, produce, market, or sell—including import or otherwise—any products in Wisconsin or the United States more generally. *Id.* ¶ 10. Nor does TTI ship, send, or export any product to Wisconsin or the United States. *Id.*

In fact, TTI's **only** link to the United States is that it holds interests in subsidiaries there. *Id.* ¶¶ 11-12. TTI is a holding company of numerous International and U.S. companies, including the ultimate corporate parent company to Milwaukee Electric Tool Corporation ("Milwaukee Tool"), which is held by several intermediary entities organized under Techtronic Industries North America, Inc. ("TTI-NA"). *Id.* TTI's only U.S.-based business relationships are through its affiliated subsidiaries, such as Milwaukee Tool. But those subsidiaries are distinct entities and operate independently. *Id.* TTI properly maintains all corporate formalities with its subsidiaries. *Id.* ¶ 12. TTI does not manage their day-to-day operations and their finances are separately accounted for. *Id.* These distinct entities cannot in any way be said to be alter egos of TTI. In short, TTI has no actual or physical presence in the United States as a whole—with the exception of the occasional business trips of its employees, such as is ordinary in a parent-subsidiary relationship, and the few times it has been forced to defend itself through litigation. *See id.* ¶¶ 11-12.

As alleged in the Complaint, TTI's only connection to this forum is that one of its subsidiaries, Milwaukee Tool, has its headquarters in Brookfield, Wisconsin. Compl. ¶ 8. Plaintiff does not allege any specific conduct by TTI that connects it to Wisconsin or even the United States, aside from the presence of a subsidiary and the supposed benefits the subsidiary had there. *See id.* (alleging only that Milwaukee Tool, with a presence in Wisconsin, received benefits of alleged actions in China). Aside from the cursory subsidiary allegations, the Complaint does not allege

---

[1] *See* www.ttigroup.com/en/home (last accessed September 13, 2024).

that TTI itself harmed Plaintiff in the United States, benefitted from any harm to Plaintiff in the United States, targeted the United States in any way, or even has any genuine presence in the United States.

**B.** **Plaintiff's Substantive Allegations of Harm as to TTI.**

Plaintiff, pseudonymously Mr. Lun, alleges that he was subjected to five months of forced labor in a prison in the People's Republic of China during which he was required to produce work gloves bearing a Milwaukee Tool logo. Compl. ¶ 9.[2] Mr. Lun does not allege that any of the Defendants, including TTI, had a presence in that prison or were directly involved in the alleged forced labor. *See id.* ¶¶ 17, 19, 21-27. In fact, the prison at issue was administered by the Chinese government. *Id.* ¶ 16. And to the degree Mr. Lun alleges that any company helped direct or manage manufacturing at the prison, that company was Shanghai Select, "a PRC company that manufactures industrial protective gear," which is majority-owned by a French company called Coverguard and served as a supplier to Milwaukee Tool. *Id.* ¶ 12; *see also* ¶¶ 26-27. Shanghai Select is not alleged to have been a supplier to TTI, and TTI is not alleged to have been the manufacturer of any of the gloves produced by prison labor. *See id.* ¶¶ 12, 37-41.

Notably, Plaintiff's alleged forced labor occurred between February and July 2022. *Id.* ¶ 19. But Plaintiff does not allege that any Defendant had actual knowledge of Shanghai Select's alleged use of Chinese prison labor at the time of Mr. Lun's imprisonment. *Id.* ¶¶ 44-46. Plaintiff only alleges that Defendants became aware of the forced labor allegations through a demand letter sent by Plaintiff's counsel on January 31, 2023, *id.* ¶ 44, and that the U.S. government identified concerns with Shanghai Select in April 2024 (two years after Plaintiff's prison sentence), *id.* ¶¶

---

[2] For purposes of this motion only, as required by Rule 12(b)(6), TTI assumes the allegations in the Complaint, as set forth in this section. Should this case proceed beyond the pleading stage, TTI reserves all rights to oppose Plaintiff's motion to proceed under a pseudonym. Dkt. # 7.

4

110-112. While acknowledging that the Defendants in response to the demand letter "conducted an internal investigation and found that there was no forced labor in the supply chain," Plaintiff's counsel seeks to minimize this action in the Complaint by citing business realities in Chinese commerce that were conveyed to Congress, in that Defendants "[were aware that] it was not able to adequately audit its suppliers." *Id.* ¶¶ 44-45. As a result of this information, which as alleged in the Complaint only came to light ***after*** Mr. Lun's imprisonment, Plaintiff alleges that Defendants had previously been "reckless in failing to detect" Shanghai Select's use of prison labor in Milwaukee Tool's supply chain. *Id.* ¶ 46. Describing the strong policies "specifically to combat forced labor" which require that every supplier "is responsible for confirming compliance" with anti-forced labor policies, *id.* ¶ 85, Plaintiff in essence alleges that Defendants were "negligent" in not exercising more diligence over the Milwaukee Tool supply chain in China. *Id.* ¶¶ 45-46, 86, 105.

Plaintiff's Complaint does not allege that TTI had direct knowledge of Shanghai Select's utilization of prison labor. Rather, Plaintiff alleges that at times Defendants do make efforts to monitor their supply chains and that they were "recklessly" ignorant of the fact of Shanghai Select's alleged practices. *Id.* ¶¶ 81-86. Instead of actual notice about the concerns regarding Shanghai Select in the relevant time period, the Complaint's assertion that Defendants were negligent in their oversight of the supply chain rests on allegations that the Defendants are generally knowledgeable about manufacturing in China, *id.* ¶¶ 57-61, and that issues with prison labor there are well known, *id.* ¶¶ 94-105, rather than any specific facts about Shanghai Select or Milwaukee Tool's actual supply chain.

5

### III.   LEGAL ARGUMENT

**A.**   **The Court Should Dismiss the Claims Against TTI for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2).**

This Court lacks personal jurisdiction over TTI and the claims against it should be dismissed pursuant to Rule 12(b)(2). When a defendant moves to dismiss under Rule 12(b)(2), "plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In ruling on a Rule 12(b)(2) motion, courts are not limited to consideration of facts alleged in the complaint, but may also consider affidavits and other written materials[.]" *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 956 (N.D. Ill. 2015) (citations omitted). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found.,* 338 F.3d at 783.

The Court may not exercise personal jurisdiction over TTI unless authorized by the forum's long-arm statute while also comporting with Constitutional due process. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 754 (2014).[3] The "nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made

---

[3] *See Daimler*, 571 U.S. at 125 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Here, "Wisconsin's long-arm statute . . . has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" *Felland*, 682 F.3d at 678. Therefore, the statutory and due process analyses for personal jurisdiction "essentially merge into one." *Endo Ventures Unlimited Co. v. Nexus Pharms. Inc.*, No. 23-CV-0299-BHL, 2024 WL 1254358, at *3 (E.D. Wis. Mar. 25, 2024).

in the case." *N. Grain Mktg. LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)).

Plaintiff has the burden to demonstrate that TTI—a foreign, non-resident defendant that merely owns U.S. subsidiaries—has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Here, Plaintiff cannot satisfy that burden as there is no basis—either based on the Complaint's allegations or in fact—for the exercise of general or specific jurisdiction over TTI.

### 1. The Court Lacks General Jurisdiction Over TTI.

Plaintiff cannot establish a prima facie basis for general personal jurisdiction because TTI does not have "continuous and systematic" contacts with Wisconsin that are "comparable to a domestic enterprise," which general jurisdiction requires. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919-20 (2011). Rather, TTI is a Hong Kong company with no presence in Wisconsin, and Plaintiff does not allege otherwise as to TTI. Plaintiff only alleges that the TVPRA provides that a civil action may be brought "in an appropriate district court," Compl. ¶ 7 (citing 18 U.S.C. § 1581), and that here, "Defendant Milwaukee Tool received a substantial part of the benefit giving rise to their liability in this district[.]" Compl. ¶ 8.

While the TVPRA authorizes an action "in an appropriate district court," it does not obviate the Constitutional requirements of personal jurisdiction. *See, e.g.*, *Taylor v. Salvation Army Nat'l Corp.*, No. 21-CV-6105, 2022 WL 22861527, at *4 (N.D. Ill. Sept. 19, 2022), *aff'd*, No. 23-1218, 2024 WL 3665336 (7th Cir. Aug. 6, 2024) (standard personal jurisdiction due process analyses applied to TVPRA claims); cf. *U.S. Sec. & Exch. Comm'n v. Carebourn Cap., LP*, 339 F.R.D. 510, 513-14 (N.D. Ill. 2021) (noting due process requirements for personal jurisdiction must still be met even when "a federal statute authorizes nationwide service of process").

7

Constitutional due process requires that a foreign corporation's "continuous corporate operations within [that] state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Burlingham v. U.S. Dep't of Health & Hum. Servs.*, No. 22-CV-1134-pp, 2023 WL 6390798, at *7 (E.D. Wis. Sept. 30, 2023) (alterations in original) (quoting *Goodyear*, 564 U.S. at 924). In other words, the defendant's affiliations must be "so 'continuous and systematic' as to render [the foreign corporation] ***essentially at home*** in the forum State . . . , *i.e.*, comparable to a ***domestic enterprise*** in that State." *Daimler AG*, 571 at 133 n.11 (emphasis added) (internal quotation marks and citation omitted). This is a difficult threshold to satisfy, as even a defendant's maintenance of "a substantial, continuous, and systematic course of business" in a state is insufficient to establish general personal jurisdiction. *Daimler AG*, 571 U.S. at 138.

TTI's contacts with Wisconsin are clearly insufficient to create general personal jurisdiction in this forum. As a threshold matter, a corporation is said to be at home in its place of incorporation and where its principal place of business, or corporate headquarters, is located. *See Goodyear*, 564 U.S. at 919–29 (citing *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447–48 (1952)); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), as corrected (May 12, 2014); *see also Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015). Here, there is no dispute that TTI is a limited liability company organized under the laws of Hong Kong with its principal place of business in Hong Kong. Chan Decl., Exh. 1, ¶ 3; Compl. ¶¶ 10, 57–58. Accordingly, TTI is not "at home" in Wisconsin or anywhere in the United States.

The Complaint does not even attempt to allege that TTI itself maintains the necessary contacts with Wisconsin consistent with general personal jurisdiction. *See* Compl.¶ 8.[4] It merely alleges that TTI has a subsidiary—Milwaukee Tool—in Wisconsin. *Id*. ¶¶ 11, 62-64. But it is black letter law that the presence of a subsidiary does not confer general jurisdiction. *See Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012) (applying "the 'general rule' that 'the jurisdictional contacts of a subsidiary corporation are not imputed to the parent.'") (citation omitted). In fact, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). As a practical matter, "the Court of Appeals for the Seventh Circuit has emphasized that . . . **anything less than the degree of control necessary to <u>pierce the parent corporation's veil</u> of liability is insufficient** to establish personal jurisdiction over the parent." *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 669 (W.D. Wis. 1998) (emphasis added).

---

[4] To the degree the Complaint indulges in group pleading against TTI and Milwaukee Tool (*e.g.*, Compl. ¶¶ 5-6, 65, 106-109), the court should disregard such insufficient jurisdictional pleading. "Personal jurisdiction must be established separately with respect to each claim and each defendant." *Moderson v. MFK Mobilelink Wis., LLC*, 630 F. Supp. 3d 1059, 1067 (E.D. Wis. 2022) (internal alterations omitted) (quoting *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *1 (E.D. Wis. Dec. 10, 2009)); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 268 (2017). Here, Plaintiff only seeks to attribute jurisdiction over Milwaukee Tool to TTI. This is inadequate. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) ("aggregating" the forum contacts of a group of defendants in determining jurisdiction is "plainly unconstitutional"); *Annie Oakley Enters. v. Sunset Tan Corp. & Consulting, LLC*, 703 F. Supp. 2d 881, 887 (N.D. Ind. 2010) ("When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively."); *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *7 (N.D. Ill. Feb. 1, 2016) ("[T]he Court's analysis is complicated by the fact that the Plaintiffs' allegations lump together both NNA and Nissan Motor Company. . . . As a result, the current allegations do not enable this Court to say . . . that NNA engaged in any relevant activities in Illinois for purposes of specific personal jurisdiction.").

Notably, none of Plaintiff's allegations evidence an unusually high degree of control by TTI over Milwaukee Tool, or any other U.S. subsidiary—because none exists. *See* Chan Decl., Exh. 1, ¶¶ 11-12. Rather, Plaintiff in a conclusory manner simply alleges that Milwaukee Tool is TTI's "most important subsidiary" among power tool companies it owns, Compl. ¶¶ 62-64, and that TTI and Milwaukee Tool "coordinate" on manufacturing and the supply chain, *id.* ¶¶ 65-74. These allegations, however, do not even come close to the type of "veil piercing" or "unusually high degree of control" necessary to impute jurisdiction over a subsidiary to its parent.[5] Because the Complaint's allegations do nothing more than describe a typical parent-subsidiary relationship where the corporate formalities are followed.[6] Plaintiff therefore cannot overcome the presumption against general personal jurisdiction over TTI based on the presence of Milwaukee Tool.

---

[5] *See, e.g.*, *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (no personal jurisdiction over an out-of-state parent company that allegedly "controlled, directed, and supervised the three subsidiaries that" committed in-state tortious acts because "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, jurisdiction [] was inappropriate"); *Insolia*, 31 F. Supp. 2d at 670 (rejecting plaintiff's alter-ego theory of general jurisdiction despite plaintiff's evidence showing that the parent company regularly dictated broad policies for the subsidiary regarding "anticipated profits and sales, brand strength and product quality" and colluded in the underlying "conspiracy to spread misinformation about the adverse health effects of smoking," among other allegations); *Collazo v. Enter. Holdings, Inc.*, 823 F. Supp. 2d 865, 871 (N.D. Ind. 2011) (plaintiff could not make out "a prima facie case for general jurisdiction based on an alter ego theory" despite presenting evidence from a shared website that indicated the defendant entities shared a common website for marketing purposes, centralized contact information and customer support services, and failed to disclose the "separate corporate/ownership structures" of the numerous branches operated by a number of separate subsidiaries under the parent holding company's corporate umbrella).

[6] Related to the insufficient allegations about their parent-subsidiary relationship, Plaintiff also alleges that TTI has "jointly prosecuted patent infringement cases as plaintiffs in the United States" with Milwaukee Tool, citing to three specific cases brought in the Eastern District of Wisconsin. Compl. ¶ 66. While TTI has periodically been required to enforce its patent rights against infringers in the United States, such "isolated or sporadic contacts . . . are insufficient for general jurisdiction." *Tamburo*, 601 F.3d at 701. And in relation to cases to protect intellectual property specifically, courts have found that fact insufficient to confer jurisdiction. *Gen. Elec. Co. v. Univ.*

It is beyond dispute that TTI's activities in Wisconsin do not give rise to jurisdiction. TTI does not: (1) do business in Wisconsin; (2) have a license to sell products or services in Wisconsin; (3) maintain any facilities in Wisconsin; (4) have any offices, bank accounts, or telephone listings in Wisconsin; (5) have any officers, employees, or agents who reside in Wisconsin; or (6) pay Wisconsin taxes. Chan Decl., Exh 1, at ¶¶ 4-10. Although TTI does have a subsidiary with a place of business in Wisconsin, the subsidiary operates independently and TTI's connections, at most, involve occasional business meetings in the forum. *Id.* ¶¶ 11-12. The same can be said for any of TTI's other U.S.-based subsidiaries and TTI's connection to any other U.S. jurisdiction. *Id.* The caselaw is clear: "[s]poradic, or even frequent, transactions within a [forum] are not sufficient to give rise to general personal jurisdiction; rather, the entity must be so enmeshed in the forum [] that it be 'fairly regarded as at home' there." *Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*, 993 F. Supp. 2d 872, 879-80 (N.D. Ill. 2013) (quoting *Goodyear*, 564 U.S. at 924).

The Supreme Court's analysis in *Daimler AG* is instructive here. As in this case, the Court in *Daimler* was asked to decide if the exercise of personal jurisdiction over a foreign corporate defendant in a U.S. federal court was constitutionally appropriate "for claims involving only foreign plaintiffs and conduct occurring entirely abroad." 571 U.S. at 125. There, the federal claims arose under the Alien Tort Statute and the Torture Victim Protection Act of 1991, based on the alleged actions of an Argentine subsidiary corporation of Daimler's in "collaboration with Argentinian authorities" to commit human rights atrocities that occurred at its "plant in Argentina."

---

*of Virginia Patent Found.*, No. 14-C-1529, 2015 WL 1246087, at *4 (E.D. Wis. Mar. 18, 2015) (litigation and licensing of patents in Wisconsin "are nowhere near enough to justify the assertion of general jurisdiction" and efforts to protect the University's intellectual property did not render defendant "at home" in Wisconsin simply because it previously brought a lawsuit relating to alleged infringing activities in Wisconsin).

*Id.* at 122. Disposing of the case on purely jurisdictional grounds, the Court noted that none of the alleged wrongdoing "took place in California or anywhere else in the United States." *Id.* Considering for the first time "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary," the Court reversed the Ninth Circuit's finding that Daimler (a German company) was subject to general jurisdiction in California for actions that the affiliated Argentine corporation was alleged to have participated in that occurred in Argentina during its military dictatorship. *Id.* at 134-142. Instead, the Court concluded that "[i]t was [] error for the Ninth Circuit to conclude that Daimler, even with [the subsidiary's] contacts attributed to it, was at home in California, and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California." *Id.* at 139. The same analysis the Supreme Court undertook in *Daimler AG* applies here and with the same result.

In short, a defendant must have extensive contacts with the forum to support the exercise of general jurisdiction, akin to maintaining its corporate headquarters in the forum. Here, Plaintiff's own allegations negate such a finding. *See* Compl. ¶¶ 57–58 ("TTI was founded in 1985 in Hong Kong, S.A.R. . . . . Its worldwide headquarters are also in the PRC, specifically Hong Kong, S.A.R., and from those headquarters, TTI manages 'Manufacturing' and 'Global Sourcing,' including for Milwaukee Tool."). Further, courts have recognized that general jurisdiction does not exist even in circumstances demonstrating far more significant contacts, including those involving the presence of an in-forum subsidiary. *See, e.g.*, *Abelesz*, 692 F.3d at 654–60; *Daimler*, 571 U.S. 133–39; *Goodyear*, 564 U.S. at 919–29; *Endo Ventures*, 2024 WL 1254358, at *4. Accordingly, the Court should conclude that general personal jurisdiction over TTI does not exist.

### 2. The Court Lacks Specific Jurisdiction Over TTI.

Plaintiff also fails to allege a basis for specific personal jurisdiction in the case, as TTI lacks the requisite minimum contacts with Wisconsin relating to this suit that would make jurisdiction reasonable and fair under the circumstances.

Specific personal jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). "[T]he defendant's **suit-related conduct must create a substantial connection with the forum**" for a court's exercise of specific jurisdiction to comport with due process. *Id.* at 284 (emphasis added). Accordingly, the question of whether a District Court has specific jurisdiction over a defendant entails: "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

Here, as alleged in the Complaint, no basis exists to exercise specific personal jurisdiction over TTI. In relation to the underlying TVPRA claim, Plaintiff does not allege that TTI reached out to, "purposely direct[ed]" or "expressly aim[ed]" any conduct toward Wisconsin, or even "avail[ed] itself" of the privilege of doing business in Wisconsin, invoked the "benefits or protections" of Wisconsin law, or otherwise forged any meaningful connections with Wisconsin. *See id.*[7] Plaintiff also does not allege that he has been to Wisconsin or the United States where he

---

[7] Again, to the degree Plaintiff may attempt to rely on the allegations regarding TTI's patent litigation in this forum, this is insufficient for specific jurisdiction as well. *See supra* at 10, n. 6. Such litigation is obviously unrelated to the underlying TVPRA claim here. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 ("Specific jurisdiction must rest on the litigation-specific conduct

sustained the alleged injury. Compl. ¶ 9. To the contrary, Plaintiff alleges that TTI engaged in business *in China* (Compl. ¶¶ 3, 57-61), participated in the procurement from suppliers *in China* (*id.* ¶¶ 61-64, 67-74), and, as a result, either knew or should have known that independent suppliers were benefitting from forced labor *in China* (*id.* ¶¶ 44-46, 93). Because the alleged wrongdoing, injury, and benefit to TTI all occurred outside of the United States, the Court's analysis need go no further in finding that specific jurisdiction is impossible on the facts alleged here.

Plaintiff's attempts to relate the conduct of third-party supplier Shanghai Select to TTI, by way of its alleged relationship with Milwaukee Tool, is a red herring. *See, e.g.*, Compl. ¶¶ 56-70; 106-109. First, Milwaukee Tool is a separate entity, and its presence in this case standing alone does not confer specific jurisdiction over TTI. *Supra*, § II.A. And to the extent that Plaintiff wishes to imply that a benefit to its subsidiary in Wisconsin can be attributable to the Hong-Kong parent, the Seventh Circuit specifically rejected just such a "clever" argument in determining that an out-of-forum defendant's suit-related conduct was too attenuated to warrant asserting specific jurisdiction. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577–78 (7th Cir. 2020) (downstream sales as part of "stream-of-commerce" theory insufficient where sales had only an "attenuated relationship" to the underlying allegations of trade secret misappropriation). As in *J.S.T. Corp.*, the "core focus" of the analysis must remain on TTI's suit-related conduct in ***this*** forum, which is insufficient as alleged to make out a prima facie case for specific jurisdiction. *See id.* This is true even if the products allegedly manufactured using prison labor were eventually directed to or sold in Wisconsin, or in the United States generally, or benefitted U.S. subsidiaries, because it "would not change the fact that the ***harm*** caused by Defendants' alleged TVPRA

---

of the defendant in the proposed forum state."); *see also Walden*, 571 U.S. at 284 (holding "the defendant's suit-related conduct must create a substantial connection with the forum State").

violations was not suffered in the United States." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1172, n.13 (9th Cir.), *cert. denied sub nom. Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022) (emphasis added), *see also id.* (concluding that even if the sale of products sourced in violation of the TVPRA "constituted intentional acts expressly aimed at the United States" it would still be insufficient to show that foreign corporate defendants "purposefully directed their activities to the United States in the sense required to establish specific personal jurisdiction").

Because Plaintiff cannot show that TTI purposefully availed itself towards either Wisconsin or the United States through any of its alleged suit-related conduct, the Court should conclude that specific personal jurisdiction over TTI does not exist. Without any constitutionally sound source of personal jurisdiction, the Court should dismiss Plaintiff's claims against TTI. *See* Fed. R. Civ. P. 12(b)(2); *Milwaukee World Trading LLC v. Kapsch*, No. 22-CV-322-pp, 2023 WL 2541556, at *12 (E.D. Wis. Mar. 16, 2023).

### B.     The Court Should Dismiss Plaintiff's Claims Against TTI Under Rule 12(b)(6) Because Plaintiff Fails to State a TVPRA Claim.

Even if the Court were to find personal jurisdiction as to TTI, Plaintiff has failed to state a valid TVPRA claim against TTI and dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

Under Rule 12(b)(6), a claim only survives where it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiff's allegation against TTI do not state a plausible ground for liability and dismissal is warranted pursuant to Rule 12(b)(6).

### 1. The TVPRA's Civil Remedies Provision Does Not Extend Extraterritorially to the Alleged Foreign Conduct and Harm.

Courts "presume that a statute applies only domestically" unless the statute includes "a clear, affirmative indication that rebuts this presumption." *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 632, (2021) (internal quotation marks and citation omitted). Plaintiff's sole TVPRA cause of action arises under the civil remedy provision, 18 U.S.C. § 1595. *See* Compl. ¶¶ 113-121. But nothing in the civil remedy provision provides a cause of action for conduct or harm occurring exclusively overseas, and the plain statutory text of the civil remedy provision thereby fails to rebut the presumption against extraterritorial application.[8] District Courts to have directly addressed this issue have precisely rule that—there is no extraterritorial civil cause of action under the TVPRA. *See Doe I v. Apple Inc.*, No. 1:19-CV-03737 (CJN), 2021 WL 5774224, at *14-*15 (D.D.C. Nov. 2, 2021), *aff'd on other grounds sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) (holding that § 1595 of the TVPRA does not apply extraterritorially).

In support of extra-territorial application of the TVPRA, Plaintiff will no doubt rely on the statute's jurisdictional provision in § 1596(a), which provides for "extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591," in certain circumstances. However, *Doe I* considered just this provision, and rejected the argument that Congress's enactment of § 1596 (as an amendment to the TVPRA in 2008) indicated an intent to rebut the presumption against extraterritorial application of the civil remedy provision. As *Doe I* found, § 1596 expressly provides

---

[8] In relevant part, § 1595(a) reads: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

extraterritorial reach for various criminal "*offenses*" that may be prosecuted under the TVPRA, but concluded that "the text and structure of § 1596 suggest that it was focused on criminal, not civil, applications." *Id.* at *15.

This Court should follow *Doe I* and find that there is no extraterritorial application to the TVPRA's civil remedy provision. As such, Plaintiff's claims necessarily fail. Plaintiff alleges that all the forced labor at issue occurred in China and any injury occurred in China. *See, e.g.*, Compl. ¶¶ 14-19. *Doe I* similarly involved allegations that manufacturers in the global supply chain for cobalt metal could be held under § 1595 for alleged forced labor employed in African mining operations, and there, the court found that plaintiffs' allegations showed that their "injuries, along with the underlying TVPRA violations that they allege, occurred . . . in the [Democratic Republic of Congo]" and therefore "to hold Defendants liable for the TVPRA violations would amount to an [unauthorized] extraterritorial application of § 1595." Likewise here, Plaintiff is attempting to enforce the civil remedy provision against TTI and Milwaukee Tool for alleged injuries and violations that undeniably occurred only in China. The TVPRA does not provide for a civil remedy in this context and the claim should be dismissed.

### 2. Plaintiff's TVPRA Claim Also Fails Because TTI Is Not "Present in the United States" as Required By § 1596(a)(2).

Even if the Court were to extend the extraterritorial scope of § 1595 in this case—and it should not, for the reasons set forth above— the TVPRA's jurisdiction provision on which Plaintiff relies still does not authorize a claim against TTI. That provision expressly states that it only applies to an alleged foreign offender who is *present in the United States*. 18 U.S.C. § 1596(a)(2). The plain meaning of the statute requires actual *physical presence*—which clearly does not apply to TTI—and under any interpretation of the statute's jurisdictional provision, TTI is not "present" in the United States and therefore not subject to liability under the TVPRA.

The Ninth Circuit has provided the most detailed discussion of the TVPRA's application to non-U.S. companies through § 1596(a)(2) in *Ratha v. Phatthana Seafood Co*., 35 F.4th 1159 (9th Cir.), cert. denied sub nom. *Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022).[9] As *Ratha* noted, it is insufficient to "alleg[e] that Defendants benefited . . . in the United States," when the alleged violations occurred extraterritorially, and the narrow requirements of § 1596 must be met to "overcome the presumption against extraterritoriality." *Id.* at 1174-75; *see also Tanedo v. East Baton Rouge Parish School Bd*., No. SA CV10-01172 JAK (MLGx), 2012 WL 5378742 at *6. (C.D. Cal. Aug. 27, 2012) ("[T]he focus and the touchstone of the territoriality inquiry of the TVPA is where the forced labor occurred[.]").

In *Ratha*, Cambodian fishermen alleged forced labor violations under § 1589 of the TVPRA, through the same civil remedy provision, § 1595. *Ratha*, 35 F.4th at 1167. Just as here, *Ratha* "involve[ed] allegations by foreign Plaintiffs, against foreign Defendants, based on conduct occurring and injuries suffered in a foreign country." *Id.* (plaintiffs alleged that two Thai companies subjected the Cambodian fisherman to forced labor "at their seafood processing factories" in Thailand). The lower court in *Ratha* ruled that the Thai companies were not subject to the TVPRA, and the Ninth Circuit affirmed, finding that the Thai companies were not "present" in the United States.[10] Following the Ninth Circuit's reasoning in *Ratha*, the Court should likewise find that Plaintiff has failed to allege that TTI is "present" in the United States under § 1596(a)(2).

---

[9] In *Ratha*, the Ninth Circuit did not address whether § 1596's extraterritorial scope extended to the civil remedy provision and "assum[ed] without deciding" that § 1595's reach was co-terminus with § 1596. 35 F.4th at 1167-68.

[10] As *Ratha* noted, the parties had argued the scope of the TVPRA's extra-territorial application as a "jurisdictional" question, but "[a]lthough the parties argue that the viability of Plaintiffs' claims raises a jurisdictional question, and the district court framed the issue in similar terms, the Supreme Court has explained that whether a statute applies abroad concerns 'what conduct' the statute prohibits, 'which is a merits question.'" 35 F.4th at 1168 (quoting *Morrison v. Nat'l Austl. Bank*

*First*, the plain meaning of "present in" the United States requires **physical** presence. Although *Ratha* ultimately decided there was no argument that the Thai companies were "present" for reasons analogous to jurisdictional arguments, the Ninth Circuit expressly left open whether § 1596 requires **physical presence**, while indicating (in *dicta*) that it likely does. *Id.* at 1169-70 (noting that universal jurisdiction caselaw cited by plaintiff "supports the conclusion that § 1596's use of the term 'present in' requires physical presence, not merely the types of minimum contacts that satisfy due process . . . However, we need not decide whether § 1596(a)(2) requires physical presence because even assuming the statute requires foreign companies to possess nothing more than minimum contacts with the United States, Plaintiffs have not established that [the Thai defendants] have sufficient contacts to satisfy that standard.")

There is good reason to find that § 1596 does require **physical presence**. As the Ninth Circuit noted in *Ratha*, "the plain meaning of the adjective 'present' is 'in a particular place,'" and the Thai companies at issue in that case were not "present" in the ordinary sense in that they "[n]either had any address, employees, or physical presence in the United States during the period at issue[.]" *Id.* at 1169. The only other District Courts to address the issue have read the statute the same way. *Adhikari v. Daoud & Partners*, No. 09-CV-1237, 2013 WL 4511354, at *9 (S.D. Tex. Aug. 23, 2013), on reconsideration, 994 F. Supp. 2d 831 (S.D. Tex. 2014) ("Plaintiffs argue that 'present in the United States' does not mean physical presence. []This interpretation goes against the plain language meaning of the statute. If Plaintiffs' reading of § 1596(a)(2) were adopted, it would make § 1596(a)(1) superfluous. The plain meaning of § 1596(a)(2) is clear. The offender

---

*Ltd.*, 561 U.S. 247, 253–54 (2010)). Likewise here, and consistent with *Morrison*, the "physical presence" required of § 1596(a)(2) raises a merit's question about the scope of conduct prohibited by the statute.

must be present in the United States for a TVPRA claim to be brought."); *see also U.S. v. Davila-Mendoza*, 972 F.3d 1264, 1275 (11th Cir. 2020) (noting that "§ 1596 provides a jurisdictional hook that precludes purely foreign activity with no nexus to the United States from being criminalized."). There is no reason here to deviate from this plain meaning. And without question, TTI lacks a "physical presence" in the United States and thus the allegations fail on their face a basic requirement of the statute. Regardless of the actions alleged and the civil remedy's provision extraterritorial scope, the statute has no application against TTI.

*Second*, even if this Court decides (similar to *Ratha*) that it need not address whether ***physical presence*** is required by the statute, Plaintiff cannot allege any other plausible basis that could satisfy the threshold "presence" requirement of § 1596(a)(2). In *Ratha* the Ninth Circuit concluded that the Thai companies did not have "minimum contacts" with the United States for purposes of applying the TVPRA, just as it would if analyzing personal jurisdiction. 35 F.4th 1170-72. Again, even under this less strenuous standard, the Ninth Circuit rejected any argument that § 1596(a)(2) allowed a TVPRA claim against Thai companies for alleged violations overseas. Because the harm alleged against the foreign companies was directed not towards the United States (let alone the forum state), but to individuals in Thailand and in Cambodia, there were no "continuous contacts" from which to claim "presence" in the United States. *Id.* at 1170-72. Moreover, the Ninth Circuit also rejected a theory that the Thai Companies were acting as an agent for or in a joint venture with a domestic defendant, because there was no evidence that the Thai companies exercised control over the domestic entities or were "alter egos." *Id.* at 1172-74.

As established above with respect to personal jurisdiction, *supra* at § III.A., the Complaint fails to allege that TTI has the requisite minimum contacts that it could "reasonably anticipate being haled into court in this country." *Ratha*, 35 F.4th 1169 n.9 (quoting *United States v. Shi*, 525

F.3d 709, 722 (9th Cir. 2008)). It is undisputed here that TTI is a Hong Kong entity and that the alleged acts here all occurred in China. Even under a "minimum contacts" analysis, Plaintiff has not alleged facts sufficient to show as to TTI that the physical "presence" requirement in § 1596(a)(2) has been satisfied. TTI cannot be said to be "present" in the United States.

***

Accordingly, as Plaintiff cannot possibly cure the deficiencies as to the extraterritorial application of § 1595 or the "presence" of TTI under § 1596(a)(2), on both or either grounds, the Court should dismiss the TVPRA allegations against TTI under Rule 12(b)(6) *with prejudice.*[11]

### 3. Dismissal of the Complaint is Warranted for Failing to State a Cognizable Violation of 18 U.S.C. §§ 1589 and 1595.

Through the civil remedy provision, § 1595(a), Plaintiff alleges only a single violation of 18 U.S.C. § 1589, which prohibits either "knowingly provid[ing] or obtain[ing] labor" that is forced (§ 1589(a)), or "knowingly benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of" forced labor (§ 1589(b)). *See* Compl. ¶¶ 113-121. The civil remedy provision in § 1595(a) authorizes "two kinds of civil liability: perpetrator liability and participant [a/k/a 'beneficiary'] liability." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023). Even assuming Plaintiff adequately alleges he was subjected to forced labor in a Chinese prison that could violate the statute, the Complaint wholly fails to allege a violation of either § 1589(a) or (b) under either the "perpetrator" or "beneficiary" liability prongs, because it neither alleges (a) that any Defendant provided or obtained that forced labor, nor (b) that TTI knowingly participated in a venture or scheme of forced

---

[11] Plaintiffs in *Ratha* had argued that the "presence" requirement of 18 U.S.C. § 1596(2) could be analogized to a due process jurisdictional analysis, which the Ninth Circuit analyzed and found insufficient, but without deciding whether a "jurisdictional" style analysis was called for under the statute. 35 F.4th 1170. As explained here, the plain meaning of § 1596(2) does require physical presence, which is lacking here.

labor or in any way knowingly benefited from the forced labor. Plaintiff therefore fails to state a valid claim under § 1589, and the civil remedy provision in § 1595, against TTI and the TVPRA claim should be dismissed.

> a. The Complaint Does Not Allege Defendants Are Direct Perpetrators in Violation of § 1589.

Perpetrator liability applies only to a "**direct perpetrator**" of the forced labor in violation of § 1589. *Ratha*, 35 F.4th at 1175 (emphasis added); *see also Richardson v. Nw. Univ.*, No. 1:21-CV-00522, 2023 WL 6197447, at *7 (N.D. Ill. Sept. 21, 2023) (describing the difference between a "direct perpetrator" claim and a claim of beneficiary liability under the TVPRA); *Ruderman v. McHenry Cnty.*, No. 3:22-CV-50115, 2023 WL 130496, at *4 (N.D. Ill. Jan. 9, 2023) ("'[T]he perpetrator' for violations of [§ 1589(a)] of the TVPA. . . . is 'whoever' violates the forced labor provisions at issue in this case."). Here, however, the Complaint alleges that the actual perpetrator was either Shanghai Select, the Chinese Government, or some unknown intermediary. *See, e.g.*, Compl. ¶¶ 26, 28-36, 88. There are no concrete allegations—let alone allegations of *fact*—that any Defendant directly participated in the alleged violation and the allegations about the role of Shanghai Select make that implausible. Rather, the entire Complaint relies solely on allegations setting forth a cursory and unspecified insinuation that TTI or Milwaukee Tool ***should have known*** that a supplier, Shanghai Select, was benefitting from forced labor (Compl. ¶¶ 118-120) or otherwise was negligent in not investigating and discovering it (*id.* ¶¶ 94-105). The Complaint does not allege that Defendants, including TTI, had any ***actual knowledge*** of Shanghai Select or the Chinese Government's actions. *See infra* at § III.B.3.b.ii. Moreover, those allegations show that Plaintiff is really alleging a beneficiary theory of liability, because at most, TTI is alleged to have been negligent about or somehow turned a blind eye to the benefits it may have received from

forced labor utilized by a third-party supplier. As such, Plaintiff cannot plausibly allege—and does not allege—facts to show that TTI was a direct perpetrator of Plaintiff's forced labor under § 1589.

> b. The Complaint Fails to Adequately Allege Beneficiary Liability against TTI.

Clearly recognizing that the facts alleged cannot amount to a direct perpetrator violation of § 1589, Plaintiff alleges that "even if either TTI or Milwaukee Tool are not themselves 'perpetrators,'" they still violated the "knowingly benefit" prong of § 1589(b) and § 1595(a). *See* Compl. ¶¶ 117, 120. But Plaintiff fails to state a claim under this prong as well. In order to prevail under a beneficiary theory of liability, Plaintiff must show that the defendant (1) knowingly benefitted, (2) from participation in a venture, (3) which they knew or should have known was engaged in conduct that violated the TVPRA. *Ratha,* 35 F.4th at 1175. Plaintiff, however, does not plausibly allege facts to satisfy any of these statutory elements.

> i. Plaintiff Fails to Allege That TTI Participated in a "Venture."

To begin with, Plaintiff has not adequately alleged any venture involving forced labor in which TTI could have participated. To show a violation actionable under §§ 1589(b) and 1595(a), a defendant must participate in a venture that has "engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). A "venture" is not defined in § 1595, but "it [is] safe to assume that Congress did not intend 'venture' in Section 1595, which establishes civil liability, to be any more demanding than 'venture' in Section 1591, which establishes criminal liability." *G.G,* 76 F.4th at 554, and § 1591 defines a "venture" as "any group of two or more individuals associated in fact[.]" 18 U.S.C. § 1591(e)(6). Similarly, "participation" is undefined in § 1595, but again, the Seventh Circuit has found "Section 1591's definition can establish the upper limits of 'participation' under Section 1595." *Id.* at 558-59.

As used in § 1591's definition of "venture," associated-in-fact is not an unfamiliar legal term: the Supreme Court has used that term in explaining when a group of individuals can qualify as an "enterprise" under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(4). An "association-in-fact enterprise" should have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009); *Richardson*, 2023 WL 6197447 at *9. Further, § 1591 defines "participation" as requiring "***knowingly assisting, supporting, or facilitating*** a violation." *See G.G.*, 76 F.4th at 558 (emphasis added). The Seventh Circuit has stated that this at least requires "culpable assistance" by a showing that the alleged "participant provides assistance, support, or facilitation to the [direct violator] through such a 'continuous business relationship,' a court or jury may infer that the participant and trafficker have a 'tacit agreement.'" *Id.* at 559 (citations omitted).

Here, Plaintiff does not allege any concrete facts to show that TTI participated in a venture with Shanghai Select to benefit from the use of Chinese prison labor. The only individuals Plaintiff ever interacted with worked for Shanghai Select. Compl. ¶ 27. Plaintiff only alleges that Defendants should have been "well-aware of the risk" that forced labor might exist in Chinese supply chains. *Id.* ¶ 56. And likewise Plaintiff's other allegations are simply too cursory show any actual venture involving Defendants. *E.g.*, *id.* ¶¶ 74 (TTI and Milwaukee Tool sourced manufacturing in China to lower costs), 75-80 (TTI and Milwaukee Tool market their attention to "manufacturing excellence" and "quality control"), 81-86 (TTI claims to audit suppliers and requires them to ensure compliance with policies against forced labor), 88-93 (Shanghai Select stated it could lower costs of production through its outsourcing of supply). These generic allegations could apply to practically any manufacturer outsourcing some of its supply chain to

China, and do not adequately allege a venture in which Defendants could have participated here. *See H.G. v. Inter-Cont'l Hotels Corp.*, No. 19-cv-13622, 2020 WL 5653304, at *6 (E.D. Mich. Sept. 23, 2020) (requiring TVPRA allegations describe "the particular venture in which the defendant allegedly participated"); *cf. Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) (concluding that plaintiff's allegations did "no more than describe the ordinary operation of a garden-variety marketing arrangement between" defendants which was "insufficient to state a RICO claim based on an association-in-fact enterprise"); *but cf. Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ("[T]he complaint recounts in great detail how defendants were responsible for creating the intricate scheme that both enabled forced labor and allowed the threats which enforced that labor to be effective . . . .").

Even if the generalized allegations that Shanghai Select was a Milwaukee Tool supplier could give rise to a venture—it does not, and certainly not one involving TTI—Plaintiff has not alleged that TTI sufficiently participated in the alleged venture to trigger liability under the TVPRA. To "participate" refers to some form of active engagement. *See In re S. White Transp., Inc.*, 725 F.3d 494, 497–98 (5th Cir. 2013); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (participation requires some "overt act" in furtherance of the venture, and nonfeasance is not sufficient). Construing the phrase "participation in a venture" to encompass anything less than active engagement "would create a vehicle to ensnare conduct that the statute never contemplated." *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (citations omitted). Here, at a minimum, that requires Plaintiff to allege that TTI specifically had a "continuous business relationship" with Shanghai Select, *G.G.*, 76 F.4th at 559-60, such that it had a role in "assisting, supporting, or facilitating" the alleged venture,

*Richardson*, 2023 WL 6197447, at *10 (finding participation where "[d]efendant became aware of the alleged misconduct" and allowed it to continue).

The Complaint does not allege any ***facts*** that demonstrate that TTI "assisted, supported, or facilitated" Shanghai Select's alleged use of prison labor. It is not enough to simply allege, as Plaintiff has done, that Milwaukee Tool engaged Shanghai Select as a supplier, or that Defendants had knowledge of manufacturing problems in China generally. Mere operation of a general business venture does not suffice to establish liability under the TVPRA, and the relation must be "more than providing off-the-shelf" products or services in "arms-length" transactions (exactly the type of supplier-relationship alleged about Shanghai Select here). *G.G.,* 76 F.4th at 562; *see also Apple*, 96 F.4th at 415 ("something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture").[12] General knowledge that prison labor is a problem in China does not equate to factual support or assistance for Shanghai Select's alleged specific conduct.

In fact, only one single paragraph of the 34-page Complaint even comes close to alleging Defendants' participation in a venture with Shanghai Select to use prison labor. In Paragraph 109, Plaintiff ***assumes*** "given the specific designs of the gloves and the propriety [sic] technologies involved in making Milwaukee [T]ool gloves, Defendants ***likely*** worked, directly or indirectly, with Shanghai Select. . . . [and] also established a feedback loop . . .to address quality control

---

[12] *See also J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (ruling TVPRA requires a showing of "interaction with a specific venture" engaged in specific violations); *Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) ("Association alone cannot establish liability."); *Konstantinova v. Garbuzov*, No. 2:21-CV-12795 (WJM), 2022 WL 2128799, at *4 (D.N.J. June 14, 2022) (general knowledge of nonspecific complaints by plaintiff and conclusory allegations that individual defendant exploited and hid relevant facts related to the claims against the actual perpetrators was insufficient to plead participation in a venture under § 1589(b)).

issues." (Emphasis added). Plaintiff does not allege any concrete facts to support that admitted assumption, and this allegation presumably shows that Plaintiff can allege none. Nor does Plaintiff even identify which defendant "*likely*" was involved.

Aside from this cursory assertion, there is no allegation that TTI in any way actively supported or assisted a venture from which anyone could infer "tacit approval" of Shanghai Select's alleged use of prison labor, and accordingly Plaintiff does not state a cause of action under § 1595 for violation of § 1589. *See Apple,* 96 F.4th at 416*; J.B.*, 2020 WL 4901196, at *9.

> ii. Plaintiff Does Not Plausibly Allege That TTI Knew or Should Have Known That the Alleged Venture Engaged in TVPRA Violations.

Even more fundamentally, the Complaint fails to plead that the TTI—or, for that matter Milwaukee Tool—"knew or should have known [that the alleged venture] has engaged in an act in violation of this chapter," *Ratha*, 35 F.4th at 1165 (quoting 18 U.S.C. § 1595(a)), let alone that it could have "knowingly" benefited from it.

*First*, Plaintiff does not allege that any Defendant had actual knowledge of Mr. Lun's alleged forced labor. Mr. Lun alleges he was subject to forced labor from February through July 2022. Compl. ¶ 19. But Plaintiff also acknowledges in his Complaint that Defendants were only made aware of the allegations of forced labor in January 2023, after the time period of the alleged violation and that allegedly prompted an internal investigation. *Id.* ¶ 44. In *Ratha*, the Ninth Circuit likewise analyzed defendants' alleged knowledge prior to publication of whistleblower reports that made allegation of labor abuses public, finding that a lack of actual knowledge before the report was fatal to the TVPRA claim for that time period. 35 F.4th at 1177. At the time of Mr. Lun's imprisonment, Plaintiff has simply not alleged actual knowledge by any Defendant. In fact, Plaintiff alleges that Defendants stated they were genuinely ignorant. Compl. ¶ 45.

Rather than actual knowledge at the relevant time period, the Complaint seeks to impute a form of constructive knowledge to TTI in a manner too conclusory and implausible to state a claim. As described above, Plaintiff essentially alleges that TTI "should have known" about forced labor in China because such abuses are "widely known" in the manufacturing industry, Compl. ¶¶ 47-56, and TTI allegedly has "deep and unique knowledge of labor and manufacturing issues" in China, *id.* ¶¶ 57-61. In essence, Plaintiff argues that Defendants failed to exercise diligent oversight of their supply chain and had they done so, they ***would*** have learned about Shanghai Select's use of prison labor sooner. *Id.* ¶¶ 106-109.[13]

In *Ratha*, the Ninth Circuit addressed just such generalized facts about labor abuses in Thailand—including based in widely known news and government reports—and expressly rejected that such general knowledge could give rise to what amounts to a duty to investigate any specific facility. 35 F.4th at 1177 ("Plaintiffs' evidence suggests, at most, that [defendant] should have known of labor abuses in the Thai shrimp industry generally. Sweeping generalities about the Thai shrimp industry are too attenuated to support an inference that [defendant] knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory between 2010 and 2012."). The Complaint similarly relies on the same insinuations or "evidence of country conditions," *id.* at 1179, that *Ratha* expressly rejected.

The allegations here are simply too cursory to adequately allege that TTI "knew" or "should have known" that Shanghai Select was utilizing Chinese prison labor. Plaintiff has not

---

[13] Although outside the scope of this motion, Plaintiff's allegations appear to presume that Shanghai Select did not try to hide its alleged use of prison labor and that the gloves at issue were not intended for China's vast counterfeit or knock-off market.

stated a claim that TTI violated § 1589(b).[14] And, in addition to the fact that the allegations do not show any plausible form of constructive knowledge, the TVPRA does not create an affirmative duty to police suppliers, as the Complaint would seem to suggest and is fatal to its claims. *See, e.g.*, *A.B. v. Wyndham Hotels & Resorts, Inc*., No. 3:19-cv-01992-IM, 2021 WL 1235241, at *7 (D. Or. Mar. 31, 2021) (finding that plaintiff failed to allege facts or information that "would have put Defendants on notice that Plaintiff was being forcibly sex trafficked" and that "the TVPRA does not impose an affirmative duty to police and prevent sex trafficking*"); A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.").

iii.     Plaintiff Does Not Plausibly Allege That TTI Knowingly Benefited from Violations of the TVPRA.

Finally, just as the Complaint fails to allege knowing participation in a venture that violated the TVPRA, it also fails to plausibly allege the Defendants "knowingly benefit[ed], financially or by receiving anything of value" from "participation in a venture which [they] knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); *see also* § 1589(b) (same). The Complaint does not explain how TTI in particular benefited from the use of prison

---

[14] *See, e.g.*, *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (finding that "the [c]omplaint fail[ed] to allege facts as to how … [defendants] … knew or should have known [p]laintiff was being trafficked"); *Jensen v. U.S. Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) (ruling that knowledge for purposes of § 1589(b) could not be established where plaintiff failed to allege facts plausibly showing that defendant knew plaintiff's coach was abusing her); *E.S. v. Best Western Int'l, Inc*., No. 3:20-cv-00050-M, 2021 WL 37457, at *4 (N.D. Tex. Jan. 4, 2021) (finding that, despite allegations that plaintiff used fake IDs to check into rooms at defendants' brand hotels; plaintiff often called for extra towels, refused service, and left trash cans full of items associated with sexual activity; and there was significant foot traffic within the hotels that her trafficker frequented; the complaint did "not state how [the defendant hotel franchisors] knew or should have known that [p]laintiff was being trafficked").

labor by one of Milwaukee Tool's suppliers. And even if there was an attenuated benefit, Defendants did not ***knowingly*** do so, for the same reason they are not alleged to have knowingly participated in use of Chinese prison labor. *Supra* at 27-28; *see also Ratha,* 35 F.4th at 1179-80 (analysis of "knowing benefit" prong is the same as analysis of whether defendant "should have known" of alleged violations).

In short, the allegations here do not satisfy any of the requirements needed to satisfy a "knowing benefit" violation of § 1589(b) and authorized in a civil action under § 1595(a) for beneficiary liability.

## IV. CONCLUSION

For the reasons stated above, the Court should dismiss TTI for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, the Court should dismiss TTI with prejudice because the TVPRA's civil remedy provision (18 U.S.C. § 1595(a)) cannot apply extraterritorially and its "jurisdictional" provision (18 U.S.C. § 1596(a)(2)) does not apply to TTI, or dismiss the substantive allegations against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state an underlying TVPRA claim.

Dated: September 13, 2024            **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Jason C. White*

Jason C. White
110 North Wacker Drive
Chicago, IL 60606
Telephone: +1.312.324.1775
Facsimile: +1.312.324.1001
jason.white@morganlewis.com

Zane David Memeger (*application for admission forthcoming*)
2222 Market St.
Philadelphia, PA 19103
Telephone: +1.215.963.5750
Facsimile: +1.215.963.5001
zane.memeger@morganlewis.com

Angelo J. Calfo (*application for admission forthcoming*)
Andrew DeCarlow (*application for admission forthcoming*)
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Telephone: +1.206.274.6400
Facsimile: +1.206.274.6401
angelo.calfo@morganlewis.com
andrew.decarlow@morganlewis.com

*Attorneys for Defendant Techtronic Industries Co. Ltd.*

31