**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| Xu Lun, a pseudonym, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:24-cv-00803-BHL |
| | ) | |
| Milwaukee Electric Tool Corporation et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF TECHTRONIC INDUSTRIES**
**CO. LTD.'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ....................................................................................... 3

        A.      Jurisdictional Facts and Plaintiff's Allegations Relevant to TTI. ......................... 3

        B.      Plaintiff's Substantive Allegations of Harm as to TTI. .................................. 6

III.    LEGAL ARGUMENT ............................................................................... 7

        A.      The Court Should Dismiss TTI for Lack of Personal Jurisdiction. ...................... 7

                1.      The Court Lacks General Jurisdiction Over TTI. ..................................... 8

                2.      The Presence of Milwaukee Tool Cannot Be Imputed to TTI................ 11

                3.      The Court Lacks Specific Jurisdiction Over TTI.................................... 16

        B.      The Court Should Dismiss Plaintiff's Claims Against TTI Under Rule
                12(b)(6) Because Plaintiff Fails to State a TVPRA Claim. ............................... 18

                1.      The TVPRA's Civil Remedies Provision Does Not Extend
                        Extraterritorially to the Alleged Foreign Conduct and Harm. ................ 18

                2.      Plaintiff's TVPRA Claim Also Fails Because TTI Is Not "Present
                        in the United States" as Required By § 1596(a)(2)................................. 20

                3.      Dismissal of the Complaint is Warranted for Failing to State a
                        Cognizable Violation of 18 U.S.C. §§ 1589 and 1595. .......................... 23

                        a.      The FAC Does Not Allege Defendants Are Direct
                                Perpetrators in Violation of § 1589............................... 23

                        b.      The FAC Fails to Adequately Allege Beneficiary Liability
                                against TTI. ....................................................... 24

                                i.      Plaintiff Fails to Allege That TTI Participated in a
                                        "Venture." ...................................................... 24

                                ii.     Plaintiff Does Not Plausibly Allege That TTI Knew
                                        or Should Have Known the Alleged Venture
                                        Engaged in TVPRA Violations....................................... 27

                                iii.    Plaintiff Does Not Plausibly Allege That TTI
                                        Knowingly Benefited from Violations of the
                                        TVPRA. ......................................................... 29

IV.     CONCLUSION........................................................................................ 30

Page(s)

**Cases**

*A.B. v. Marriott Int'l, Inc*.,
    455 F. Supp. 3d 171 (E.D. Pa. 2020) ......................................................................29

*A.B. v. Wyndham Hotels & Resorts, Inc*.,
    532 F. Supp. 3d 1018 (D. Or. 2021) ......................................................................28

*Abelesz v. OTP Bank*,
    692 F.3d 638 (7th Cir. 2012) ........................................................................12, 15

*Adhikari v. Daoud & Partners*,
    09-CV-1237, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013) ...............................21

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) .........................................................................9, 17

*Annie Oakley Enters., Inc. v. Sunset Tan Corp. & Consulting, LLC*,
    703 F. Supp. 2d 881 (N.D. Ind. 2010) ...................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................18

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ..................29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................18

*Burlingham v. U.S. Dep't of Health & Hum. Servs.*,
    No. 22-CV-1134-pp, 2023 WL 6390798 (E.D. Wis. Sept. 30, 2023) .....................9

*Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) .................................................................................12

*Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*,
    993 F. Supp. 2d 872 (N.D. Ill. 2013) .....................................................................10

*Collazo v. Enter. Holdings, Inc.*,
    823 F. Supp. 2d 865 (N.D. Ind. 2011) ...................................................................15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................... *passim*

*Dissolved Air Floatation Corp. v. Kothari*,
   No. 14-C-1223, 2016 WL 5376192 (E.D. Wis. Sept. 26, 2016)............................................14

*Doe I v. Apple Inc.*,
   No. 1:19-CV-03737 (CJN), 2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd
   on other grounds*, 96 F.4th 403 (D.C. Cir. 2024) ..................................................19, 20, 26, 27

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
   335 F. Supp. 3d 657 (D. Del. 2018)......................................................................................13

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
   No. CIV.A. 3184-VCP, 2008 WL 4057745 (Del. Ch. Sept. 2, 2008) .....................................14

*Endo Ventures Unlimited Co. v. Nexus Pharms. Inc.*,
   No. 23-cv-0299-bhl, 2024 WL 1254358 (E.D. Wis. Mar. 25, 2024) ......................................16

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ..................................................................................................8

*G.G. v. Salesforce.com, Inc.*,
   76 F.4th 544 (7th Cir. 2023) .................................................................................23, 25, 26

*Gen. Elec. Co. v. Univ. of Virginia Patent Found.*,
   No. 14-C-1529, 2015 WL 1246087 (E.D. Wis. Mar. 18, 2015)..............................................15

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
   564 U.S. 915 (2011)..................................................................................................9, 10, 16

*H.G. v. Inter-Cont'l Hotels Corp.*,
   489 F. Supp. 3d 697 (E.D. Mich. 2020)................................................................................25

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*,
   No. CV 15-2105 (ABJ), 2024 WL 4332117 (D.D.C. Sept. 27, 2024)....................................19

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*,
   136 F.3d 537 (7th Cir. 1998) ................................................................................................15

*Indag GmbH & Co. v. IMA S.P.A*,
   150 F. Supp. 3d 946 (N.D. Ill. 2015) ......................................................................................8

*Insolia v. Philip Morris Inc.*,
   31 F. Supp. 2d 660 (W.D. Wis. 1998) .............................................................................12, 15

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................................................8

*J.B. v. G6 Hosp., LLC*,
   No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)............................26, 27

-iii-

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
  965 F.3d 571 (7th Cir. 2020) ...........................................................................17

*Jane Doe 1 v. Red Roof Inns, Inc.*,
  No. 1:19-cv-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ............................26

*Jensen v. U.S. Tennis Ass'n*,
  No. 20-2422-JWL, 2020 WL 6445117 (D. Kan. Oct. 30, 2020) ...........................................29

*Kipp v. Ski Enter. Corp. of Wis.*,
  783 F.3d 695 (7th Cir. 2015) ...........................................................................10

*Konstantinova v. Garbuzov*,
  No. 2:21-CV-12795 (WJM), 2022 WL 2128799 (D.N.J. June 14, 2022) ............................26

*Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*,
  No. 15-C-1479, 2017 WL 11489876 (E.D. Wis. Dec. 8, 2017) ...................................13, 14

*Milwaukee World Trading LLC v. Kapsch*,
  No. 22-CV-322-pp, 2023 WL 2541556 (E.D. Wis. Mar. 16, 2023)......................................18

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)...........................................................................21

*N. Grain Mktg. LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) ...........................................................................8

*Nestle USA, Inc. v. Doe*,
  593 U.S. 628 (2021)...........................................................................19

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...........................................................................8

*Ratha v. Phatthana Seafood Co.*,
  35 F.4th 1159 (9th Cir.), *cert. denied sub nom. Ratha v. Phatthana Seafood
  Co.*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022) .............................................. *passim*

*Ratha v. Phatthana Seafood Co.*,
  No. CV 16-4271-JFW, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ...................................25

*Richardson v. Nw. Univ.*,
  No. 1:21-CV-00522, 2023 WL 6197447 (N.D. Ill. Sept. 21, 2023)...................................23, 26

*Ruderman v. McHenry Cnty.*,
  No. 3:22-CV-50115, 2023 WL 130496 (N.D. Ill. Jan. 9, 2023)...........................................23

*Rush v. Savchuk*,
  444 U.S. 320 (1980)...........................................................................12

*In re S. White Transp., Inc.*,
   725 F.3d 494 (5th Cir. 2013) ................................................................25

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ............................................................8, 15

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   519 F. Supp. 2d 905 (W.D. Wis. 2007), *aff'd*, 726 F.3d 1306 (Fed. Cir. 2013).....................13

*Taylor v. Salvation Army Nat'l Corp.*,
   No. 21-CV-6105, 2022 WL 22861527 (N.D. Ill. Sept. 19, 2022), *aff'd*, No.
   23-1218, 2024 WL 3665336 (7th Cir. Aug. 6, 2024) .............................9

*U.S. v. Davila-Mendoza*,
   972 F.3d 1264 (11th Cir. 2020) ...........................................................22

*U.S. v. Shi*,
   525 F.3d 709 (9th Cir. 2008) ...............................................................22

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................16, 17

**Statutes**

18 U.S.C. § 1581 et seq....................................................................... *passim*

18 U.S.C. § 1589............................................................................... *passim*

18 U.S.C. § 1595............................................................................... *passim*

18 U.S.C. § 1596............................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ......................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ......................................... *passim*

Defendant Techtronic Industries Co. Ltd. ("TTI" or "TTI Ltd. Co."), by and through its attorneys, hereby submits the following memorandum in support of its motion to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.    <u>INTRODUCTION</u>

TTI should be immediately dismissed from this lawsuit on jurisdictional grounds alone. TTI is a Hong Kong-based company with no presence in Wisconsin and whose only connection to the United States is the presence of separate subsidiaries that TTI does not control. Consequently, this Court lacks personal jurisdiction over TTI for two reasons. First, Plaintiff cannot make a case for general personal jurisdiction because the type of "continuous and systematic" contacts required for general personal jurisdiction are missing. The presence of a subsidiary does not—and, even on the (often erroneous) facts alleged, cannot—confer general personal jurisdiction in this Court. Second, there is no basis to assert specific jurisdiction over TTI because the wrongdoing alleged in the complaint occurred in China and affected a Plaintiff who does not allege to have ever set foot in the United States. On these facts, the Court should dismiss the claims against TTI because jurisdiction comporting with the Constitutional requirements of due process is totally lacking.

TTI previously moved to dismiss Plaintiff's original complaint on jurisdictional grounds. Dkt. # 16. Plaintiff responded by amending his complaint to allege several supposed connections between TTI and its U.S. subsidiary, Milwaukee Electric Tool Corporation ("Milwaukee Tool"). *See* First Am. Compl. ("FAC"), Dkt. # 28, ¶¶ 7-8, 14-29. Even if the allegations in the FAC are taken as true, they show nothing more than TTI having a global brand (which is true) and some employees in the United States (which is not true). TTI is thus indistinguishable from the many global conglomerates over which Courts routinely find they lack jurisdiction despite the presence of a separate U.S. subsidiary. The allegations do not show that the Hong Kong entity named in this lawsuit has the requisite contacts with this forum. Nor do they show Plaintiff's supposed

theory of jurisdiction here, namely, that Milwaukee Tool is just an alter ego of TTI whose contacts to this forum are attributable to TTI. Indeed, it is patently implausible to assert that Milwaukee Tool is only a shell company of TTI. What is more, Plaintiff's allegations are not only insufficient as a matter of law to show jurisdiction over TTI, but they are also riddled with inaccuracies, as demonstrated below. In short, the FAC fails to assert jurisdiction over TTI and TTI should be dismissed under Rule 12(b)(2).

Because the Court lacks personal jurisdiction over TTI, it need not further address the sufficiency of the FAC's allegations. Nevertheless, TTI submits that dismissal under Rule 12(b)(6) for failure to state a claim is also warranted. Plaintiff brings a sole cause of action under the Trafficking Victims Protection Reauthorization Action, 18 U.S.C. § 1581 et seq. (the "TVPRA"). FAC ¶¶ 133-141. To begin with, the TVPRA's civil remedy provision under which Plaintiff brings a claim, 18 U.S.C. § 1595, does not apply to extra-territorial conduct. Here, the only alleged violations occurred outside the United States and are thus not actionable. Even if Plaintiff could bring an action, Plaintiff's claim fails out of the gate as to TTI because the TVPRA's statutory jurisdiction provision only authorizes civil actions where "an alleged offender is *present in the United States*[.]" 18 U.S.C. § 1596(a)(2) (emphasis added). TTI is not adequately alleged to be present in the United States—nor could it be—and thus Plaintiff cannot assert a TVPRA claim against it.

Additionally, the FAC fails to assert, in anything more than a cursory fashion, that TTI violated the TVPRA. TTI does not support or condone forced labor in any form and Plaintiff's allegations do not even allege that TTI had direct involvement in forced labor. Instead, Plaintiff alleges that an independent third-party supplier is the responsible perpetrator. Moreover, Plaintiff has not alleged that TTI either "knowingly" benefited from forced labor in China or "knowingly"

participated in ventures that led to the violations alleged by Plaintiff, as the TVPRA requires. *See* 18 U.S.C. §§ 1589 and 1595(a). Plaintiff therefore fails to adequately allege a TVPRA claim against TTI.

Accordingly, the Court should dismiss TTI and the claims against it from this lawsuit.

## II.   BACKGROUND

### A.   Jurisdictional Facts and Plaintiff's Allegations Relevant to TTI.

TTI is a limited liability company based in Hong Kong. Declaration of Chi Chung Chan ("Chan Decl."), Ex. 1, ¶ 4; FAC ¶ 13. TTI has no presence in Wisconsin. Chan Decl. ¶¶ 7-8.  TTI does not market, advertise, or solicit business in Wisconsin. *Id.* ¶ 13. TTI does not have any employees based in Wisconsin, maintain a registered agent in Wisconsin, or pay taxes in Wisconsin. *Id.* ¶¶ 8, 12.  TTI has never owned, leased, possessed, or maintained any real or personal property in Wisconsin, including bank accounts, offices, residences, or places of business. *Id.* ¶ 7.  Contrary to a cursory assertion in the FAC (at ¶ 24), TTI has **no office in Wisconsin**. Chan Decl. ¶ 7. TTI has an internationally available website, but it is not an "interactive website" (potential customers cannot place orders for any TTI product through the website). *Id.* ¶ 13.[1] TTI is traded on the Hong Kong stock exchange. *Id.* ¶ 4. TTI does not develop, manufacture, produce, market, or sell any products in Wisconsin or the United States more generally. *Id.* ¶ 15. Nor does TTI ship, send, or export any product to Wisconsin or the United States. *Id.*

In fact, TTI's *only* link to the United States is that it holds various interests in U.S.-based subsidiaries. *Id.* ¶¶ 16-21; Declaration of Christine Delisle ("Delisle Decl."), Ex. 2, ¶ 4; Declaration of Thoms Scherer ("Scherer Decl."), Ex. 3, ¶ 2. TTI is a holding company of numerous international and U.S. companies, including the ultimate corporate parent company to Milwaukee

---

[1] *See* www.ttigroup.com/en/home (last accessed November 13, 2024).

Tool, which is held by several intermediary entities organized under Techtronic Industries North America, Inc. ("TTI-NA"). Chan Decl. ¶ 5. While internationally many of the subsidiaries share in the "Techtronic" or "TTI" name, they are in fact separate companies. *Id.* ¶¶ 3, 21; *see also* Delisle Decl. ¶¶ 5-6; Scherer Decl. ¶ 3. Milwaukee Tool, for example, was a separate and distinct company when acquired by TTI in 2005 and remains so today. Delisle Decl. ¶ 5. As acknowledged in the FAC (at ¶¶ 25, 90), it is a fully capitalized, on-going concern, with over a billion dollars in independent revenue. *See also* Delisle Decl. ¶ 5. TTI properly maintains all corporate formalities with its subsidiaries, including Milwaukee Tool. Chan Decl. ¶ 18; Delisle Decl. ¶ 6. TTI does not manage Milwaukee Tool's day-to-day operations and their finances are separately accounted for. Chan Decl. ¶ 20; Delisle Decl. ¶¶ 5-7. The subsidiaries have their own management, employees, reporting chains, officers, and boards of directors. Chan Decl. ¶ 18; Delisle Decl. ¶ 6. To the degree TTI subsidiaries or their employees provide services to other TTI companies, those arrangements are separately accounted for in the finances of each entity. Chan Decl. ¶¶ 19, 23; Delisle Decl. ¶ 6; Declaration of Patrick Chan Kin Wah ("Wah Decl."), Ex. 4, ¶ 6. These distinct entities, just as Milwaukee Tool, are not alter egos of TTI.

In short, TTI has no actual or physical presence in or connection to the United States as a whole or Wisconsin in particular—with the exception of inevitable business trips of its employees, such as is ordinary in a parent-subsidiary relationship, and the California home of one of its directors. Chan Decl. ¶¶ 20, 21; Delisle Decl. ¶¶ 5-7.

Plaintiff suggests that TTI and Milwaukee Tool have a "symbiotic" relationship, FAC ¶ 7, or are "entangled in a way that blurs the line between where one company ends and the other begins," FAC ¶ 26. In reality, Milwaukee Tool operates as a separate and distinct company from TTI Co. Ltd. Chan Decl. ¶¶ 17, 19; Delisle Decl. ¶¶ 5-6. While other TTI subsidiaries (not named

4

in the FAC and separate from TTI Co. Ltd.) provide some sourcing services in China and other Asian countries, they are also separate companies that operate pursuant to contracts with other TTI subsidiaries. Chan Decl. ¶ 22; Wah Decl. ¶ 6. Consistent with their legal separation, these entities have separate employees, separate management, and maintain corporate formalities through accounting for their finances separately and keeping separate books and records. Chan Decl. ¶ 18; *see also* Wah Decl. ¶ 5; Delisle Decl. ¶ 6; Scherer Decl. ¶ 3.

The FAC alleges that "TTI employees and executives are based in and work in Wisconsin," FAC ¶ 8. This allegation seems to refer to individuals who have no connection with the entity named here, TTI Co. Ltd. In reality, **<u>no</u> employees or executives of TTI are based in Wisconsin**. Chan Decl. ¶ 8. None of the individuals Plaintiff attributes to TTI are, in fact, TTI Co. Ltd. employees, as set out in greater detail in Appendix A (showing factual inaccuracies in Plaintiff's allegations). The companies they work for are distinct entities, accounting for their finances and services separately, and having separate management and reporting chains. Chan Decl. ¶ 25; Wah Decl. ¶ 6; Delisle Decl. ¶¶ 6, 8-9; Scherer Decl. ¶¶ 4-8. It is true that TTI's new president, Steve Richman, was until recently Milwaukee Tool's chief executive officer and often works remotely from his home in California. *See* FAC ¶¶ 22, 25. But since becoming TTI's president he no longer manages day-to-day operations of Milwaukee Tool, and all of TTI's other directors are in Hong Kong. Chan Decl. ¶ 9; Delisle Decl. ¶ 7. Similarly, the FAC also appears to confuse references to TTI (a global brand used by some subsidiary companies) as references to the party named here, TTI Co. Ltd., including limited co-branding on business cards. *See* FAC ¶¶ 26-29. In reality, the occasional use of the "Techtronic/TTI" name as part of a global brand is nothing more than co-branding among subsidiary companies. Chan Decl. ¶ 21.

Cursory and factually uninformed allegations aside, the FAC itself does not allege any facts about TTI that connect it to Wisconsin or even the United States, aside from the presence of a subsidiary and the supposed benefits the subsidiary had there. *See* FAC ¶ 11 (alleging for venue only that Milwaukee Tool, with a presence in Wisconsin, received benefits of alleged actions in China). In fact, TTI's only connection to this forum is that one of its separate and legally distinct subsidiaries, Milwaukee Tool, has its headquarters in Brookfield, Wisconsin. *Id.* Aside from the cursory subsidiary allegations, the FAC does not allege that TTI itself harmed Plaintiff in the United States, benefited from any harm to Plaintiff in the United States, targeted the United States in any way, or even has any genuine presence in the United States.

**B.** **Plaintiff's Substantive Allegations of Harm as to TTI.**

Plaintiff, pseudonymously Mr. Lun, alleges that he was subjected to five months of forced labor in a prison in the People's Republic of China during which he was required to produce work gloves bearing a Milwaukee Tool logo. FAC ¶ 12.[2] Mr. Lun does not allege that any of the Defendants, including TTI, had a presence in that prison or were directly involved in the alleged forced labor. *See id.* ¶¶ 35, 37, 39-45. In fact, the prison at issue was administered by the Chinese government. *Id.* ¶ 37. To the degree Mr. Lun alleges that any company directed or managed manufacturing at the prison, that company was Shanghai Select, "a PRC company that manufactures industrial protective gear," which is owned by a French company called Coverguard and served as a supplier to Milwaukee Tool. *Id.* ¶ 30; *see also* ¶¶ 43-45. Shanghai Select is not alleged to have been a supplier to TTI—in fact, it is alleged to have contracted to supply Milwaukee Tool through a separate company, TTI Trading Co.—and TTI is not alleged to have been the manufacturer of any of the gloves produced by prison labor. *See id.* ¶¶ 30, 46, 56-61.

---

[2] For purposes of the 12(b)(6) portion of this motion only, TTI assumes the allegations in the FAC, as set forth in this section.

Notably, Plaintiff's alleged forced labor occurred between February and July 2022. *Id.* ¶ 37. But Plaintiff does not allege that any Defendant had actual knowledge of Shanghai Select's alleged use of Chinese prison labor at the time of Mr. Lun's imprisonment. *Id.* ¶¶ 63-65. Plaintiff only alleges that Defendants became aware of the forced labor allegations through a demand letter sent on January 31, 2023, *id.* ¶ 63, and that subsequently the U.S. government identified concerns with Shanghai Select in April 2024 (two years after Plaintiff's prison sentence). *Id.* ¶¶ 4, 130-132. But the FAC acknowledges that, in response to the demand letter, Defendants "conducted an internal investigation and found that there was no forced labor in the supply chain." *Id.* ¶ 63. The FAC also concedes that Defendants have strong policies "specifically to combat forced labor" that require that every supplier "is responsible for confirming compliance" with anti-forced labor policies, *id.* ¶ 104. Although Defendants were allegedly informed of forced-labor concerns only **after** Mr. Lun's imprisonment, Plaintiff alleges that Defendants had previously been "reckless in failing to detect" Shanghai Select's use of prison labor in Milwaukee Tool's supply chain, *id.* ¶ 65, or "negligent" in not exercising more diligence because Defendant were generally knowledgeable about manufacturing in China, *id.* ¶¶ 76-80, and that issues with prison labor there are well known, *id.* ¶¶ 113-125. However, the FAC alleges no specific facts about Shanghai Select or Milwaukee Tool's actual supply chain.

### III. <u>LEGAL ARGUMENT</u>

**A.** <u>The Court Should Dismiss TTI for Lack of Personal Jurisdiction</u>.

This Court lacks personal jurisdiction over TTI. When a defendant moves to dismiss under Rule 12(b)(2), "plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In ruling on a Rule 12(b)(2) motion, courts are not limited to consideration of facts alleged in the complaint, but may also consider affidavits and other written materials[.]" *Indag GmbH & Co. v. IMA S.P.A*, 150 F.

7

Supp. 3d 946, 956 (N.D. Ill. 2015) (citations omitted). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the ***plaintiff must go beyond the pleadings and submit affirmative evidence*** supporting the exercise of jurisdiction." *Purdue Rsch. Found.,* 338 F.3d at 783 (emphasis added). Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 571 U.S. 117 (2014).[3] The "nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope— that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *N. Grain Mktg. LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)).

In light of evidence TTI submits here, Plaintiff has the burden to demonstrate ***with evidence*** that TTI—a foreign, non-resident defendant that merely owns U.S. subsidiaries—has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Plaintiff cannot satisfy that burden.

### 1. The Court Lacks General Jurisdiction Over TTI.

Plaintiff cannot establish a prima facie basis for general personal jurisdiction because TTI does not have "continuous and systematic" contacts with Wisconsin "as to render them essentially at home in the forum State," which general jurisdiction requires. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919-20 (2011). Rather, TTI is a Hong Kong company, and Plaintiff does not allege otherwise. Constitutional due process requires that a foreign corporation's

---

[3] The Court may not exercise personal jurisdiction over TTI unless authorized by the forum's long-arm statute while also comporting with Constitutional due process. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). *See Daimler*, 571 U.S. at 125 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Here, "Wisconsin's long-arm statute . . . has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" *Felland*, 682 F.3d at 678.

"continuous corporate operations within [that] state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Burlingham v. U.S. Dep't of Health & Hum. Servs.*, No. 22-CV-1134-pp, 2023 WL 6390798, at *7 (E.D. Wis. Sept. 30, 2023) (alterations in original) (quoting *Goodyear*, 564 U.S. at 924).[4] In other words, the defendant's affiliations must be "so 'continuous and systematic' as to render [the foreign corporation] ***essentially at home*** in the forum State . . ., *i.e.*, comparable to a ***domestic enterprise*** in that State." *Daimler AG*, 571 at 133 n.11 (emphasis added) (internal quotation marks and citation omitted). This is a difficult threshold to satisfy, as even a defendant's maintenance of "a substantial, continuous, and systematic course of business" in a state is insufficient to establish general personal jurisdiction. *Daimler AG*, 571 U.S. at 138.

TTI's contacts with Wisconsin are clearly insufficient to create general personal jurisdiction in this forum. As a threshold matter, a corporation is at home in its place of incorporation and where its principal place of business, or corporate headquarters, is located. *See Goodyear*, 564 U.S. at 919–29 (citations omitted); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), as corrected (May 12, 2014); *see also Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015). Here, there is no dispute that TTI is a limited liability company organized under the laws of Hong Kong with its principal place of business in Hong Kong. Chan Decl. ¶ 4; FAC ¶¶ 13, 76-77. Thus, TTI is not "at home" in Wisconsin or anywhere in the United States.

---

[4] Plaintiff alleges that the TVPRA provides that a civil action may be brought "in an appropriate district court," FAC ¶ 10 (citing 18 U.S.C. § 1581), and that here, "Defendant Milwaukee Tool received a substantial part of the benefit giving rise to their liability in this district[.]" FAC ¶ 11. While the TVPRA authorizes an action "in an appropriate district court," it does not obviate the Constitutional requirements of personal jurisdiction. *See, e.g.*, *Taylor v. Salvation Army Nat'l Corp.*, No. 21-CV-6105, 2022 WL 22861527, at *4 (N.D. Ill. Sept. 19, 2022), *aff'd*, No. 23-1218, 2024 WL 3665336 (7th Cir. Aug. 6, 2024).

Even accepting the FAC's allegations as true, the allegations themselves do not show that TTI maintains the necessary contacts with Wisconsin consistent with general personal jurisdiction. *See* FAC ¶¶ 10-11. Although factually inaccurate (*see* Appendix A), the supposed connections to Wisconsin alleged in the FAC at best amount to a few overlapping employees and coordination with its subsidiary. But these allegations are on their own insufficient to establish jurisdiction. The caselaw is clear: "Sporadic, or even frequent, transactions within a [forum] are not sufficient to give rise to general personal jurisdiction; rather, the entity must be so enmeshed in the forum [] that it be 'fairly regarded as at home' there." *Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*, 993 F. Supp. 2d 872, 879-80 (N.D. Ill. 2013) (quoting *Goodyear*, 564 U.S. at 924).

At most, the FAC alleges some level of "co-branding" and coordination in that other subsidiary entities share a part in the "Techtronic/TTI" name. But The Supreme Court's analysis in *Daimler AG* is instructive here. The *Daimler* case involved the parent company of Mercedes-Benz, likewise a global brand that goes by "Mercedes" all over the globe. But as in this case, the Court in *Daimler* was asked to decide if the exercise of personal jurisdiction over a foreign corporate defendant in a U.S. federal court was constitutionally appropriate "for claims involving only foreign plaintiffs and conduct occurring entirely abroad." 571 U.S. at 125. There, the federal claims arose under the Alien Tort Statute, based on the alleged actions of an Argentine subsidiary corporation of Daimler's in "collaboration with Argentinian authorities" to commit human rights atrocities that occurred at its "plant in [ ] Argentina." *Id*. at 122. Disposing of the case on purely jurisdictional grounds, the *Daimler* court noted that none of the alleged wrongdoing "took place in California or anywhere else in the United States." *Id.* Considering for the first time "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary," the Court reversed the Ninth Circuit's finding that Daimler (a German

company) was subject to general jurisdiction in California for actions that the affiliated Argentine corporation was alleged to have participated in that occurred in Argentina during its military dictatorship. *Id.* at 134-142. Instead, the Court concluded that "[i]t was [] error for the Ninth Circuit to conclude that Daimler, even with [the subsidiary's] contacts attributed to it, was at home in California, and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California." *Id.* at 139. The same analysis the Supreme Court undertook in *Daimler AG* applies here and with the same result.

To try and overcome this significant obstacle, Plaintiff presents allegations based on publicly sourced information that misconstrue the relationships of multiple TTI subsidiary entities and personnel. *See* FAC ¶¶ 21-29. For example, while TTI, as a corporate parent, employs personnel to coordinate with its subsidiaries, including Milwaukee Tool, TTI does not have any employees, officers, or agents based in Wisconsin. Chan Decl. ¶¶ 8, 20. Plaintiff's allegations to the contrary are simply factually inaccurate. Similarly, TTI does not: (1) maintain a registered agent or pay taxes in Wisconsin, (2) own, lease, possess, or maintain any real or personal property in Wisconsin, including bank accounts, offices, residences, or places of business; (3) develop, manufacture, produce, market, or sell—including import or otherwise—any products in Wisconsin or the United States more generally; or (4) ship, send, or export any product to Wisconsin or the United States. *Id.* ¶¶ 7, 12, 15. In short, TTI has no contacts with Wisconsin separate and apart from its parent-subsidiary relationship with Milwaukee Tool, let alone the type of "continuous and systematic" contacts required to warrant general personal jurisdiction.

## 2. The Presence of Milwaukee Tool Cannot Be Imputed to TTI.

The only connection between TTI and this forum is the presence of its subsidiary. As a result, Plaintiff attempts to blur the jurisdictional lines between Milwaukee Tool, TTI, and other TTI group subsidiaries, by suggesting that they have a "symbiotic" relationship. *See id.* ¶¶ 7-8,

21-29. These conclusory, group allegations are inadequate. *See, e.g.*, *Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) ("aggregating" the forum contacts of a group of defendants in determining jurisdiction is "plainly unconstitutional"); *Annie Oakley Enters., Inc. v. Sunset Tan Corp. & Consulting, LLC*, 703 F. Supp. 2d 881, 887 (N.D. Ind. 2010) ("When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively.").

It is black letter law that the presence of a subsidiary does not confer general jurisdiction. *See Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012) (applying "the 'general rule' that 'the jurisdictional contacts of a subsidiary corporation are not imputed to the parent.'") (citation omitted). In fact, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).

As a practical matter, "the Court of Appeals for the Seventh Circuit has emphasized that . . . ***anything less than the degree of control necessary to <u>pierce the parent corporation's veil</u> of liability is insufficient*** to establish personal jurisdiction over the parent." *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 669 (W.D. Wis. 1998) (emphasis added). In other words, "[t]o prevail under the alter-ego theory of piercing the veil, a plaintiff must generally establish two elements: (1) that the entities in question operated as a single economic entity, and (2) that it would be inequitable for the court to uphold a legal distinction between the two entities." *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, No. 15-C-1479, 2017 WL 11489876, at *4 (E.D. Wis. Dec. 8, 2017); *see also E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d

657, 675 (D. Del. 2018) ("To state a veil-piercing claim under Delaware law, a plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors or creditors.").[5] Courts generally consider several non-dispositive factors to determine whether to pierce the corporate veil: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade." *Id.* at 675; *Milwaukee Ctr. for Indep., Inc.* 2017 WL 11489876, at *4.

None of Plaintiff's allegations regarding the nature of the relationship between TTI and its subsidiaries, including Milwaukee Tool, even taken as true, come close to meeting this exceptionally high standard. Plaintiff cannot credibly allege that Milwaukee Tool is in essence a "façade" or shell company. It is not inadequately capitalized or insolvent. Delisle Decl. ¶ 5. In fact, Plaintiff alleges the exact opposite. *See* FAC ¶¶ 7 ("TTI's acquisition of Milwaukee Tool . . . made Milwaukee Tool more successful"); 90 ("TTI's 2005 acquisition of Milwaukee Tool (for [] $626.6 million)"); 95 (quoting from TTI's webpage touting Milwaukee Tool as "a 150-year-old company and now a billion dollar worldwide brand annually"). Such allegations on their own demonstrate that Milwaukee Tool is a separate enterprise—just as the evidence submitted shows it really is. Further, Plaintiff fails to allege, nor could he, that TTI and Milwaukee Tool ignore corporate formalities or inappropriately commingle their finances. *See* Chan Decl. ¶ 18; *see also* Delisle Decl. ¶¶ 4-6.

---

[5] When determining whether to set aside the corporate form and pierce the corporate veil, courts generally look to the laws of the state of incorporation for the allegedly veiled company, in this case Milwaukee Tool, which is incorporated in Delaware. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007), *aff'd*, 726 F.3d 1306 (Fed. Cir. 2013). Here, TTI cites to authority for the alter ego theory under both Wisconsin and Delaware law, either of which support its arguments, because they have significant analytical overlap. *See, e.g.*, *Milwaukee Ctr. for Indep., Inc.*, 2017 WL 11489876, at *4 (applying Wisconsin veil-piercing law but citing to Delaware authority as informative).

More importantly, Plaintiff fails to make any allegations that Milwaukee Tool's separate corporate status is merely a tool "to perpetrate an injustice," which the "alter ego" analysis would require. *Milwaukee Ctr. for Indep.*, 2017 WL 11489876, at *5. It is not sufficient for Plaintiff to allege that TTI acted in concert with Milwaukee Tool to perpetrate the underlying statutory violation because "the requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. CIV.A. 3184-VCP, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008); *Dissolved Air Floatation Corp. v. Kothari*, No. 14-C-1223, 2016 WL 5376192, at *5 (E.D. Wis. Sept. 26, 2016) ("[P]iercing the corporate veil is an unusual scenario reserved for the rare case where use of the corporate form itself is part of a fraud. It should be emphasized that the corporate cloak is not lightly thrown aside and that the alter ego doctrine is an exception to the general rule recognizing corporate independence."). The Chancery Court's decision in *EBG Holdings* is instructive. There, the Court noted the potential inequities highlighted in the plaintiff's arguments against dismissing a foreign corporate parent on personal jurisdiction grounds, but nonetheless concluded that "[e]ven drawing all inferences in favor of [plaintiff], it has not shown that [the foreign parent's] use of the corporate form for its []subsidiary constituted a sham and exists for no other purpose than as a vehicle for fraud." *EBG Holdings*, 2008 WL 4057745, at *12. Similarly, even taking all of Plaintiff's allegations as true, in conjunction with the uncontroverted evidence presented by TTI, there is no dispute that Milwaukee Tool operates as a separate and distinct corporate entity—without excessive or undue control by its ultimate parent TTI— just as it has for over a hundred years, well before it was acquired by TTI.

The FAC's allegations do nothing more than describe a typical parent-subsidiary relationship where the corporate formalities are followed.[6] Plaintiff therefore cannot overcome the presumption against general personal jurisdiction over TTI based on the presence of Milwaukee Tool.[7]

In short, TTI itself must have extensive contacts with the forum to support the exercise of general jurisdiction, akin to maintaining its corporate headquarters in the forum. Plaintiff's own allegations negate such a finding. *See* FAC ¶¶ 76–77 ("TTI was founded in 1985 in Hong Kong, S.A.R. . . . Its worldwide headquarters are also in the PRC, specifically Hong Kong, S.A.R., and from those headquarters, TTI manages 'Manufacturing' and 'Global Sourcing,' including for Milwaukee Tool."). Further, courts have recognized that general jurisdiction does not exist even in circumstances demonstrating far more significant contacts than those at issue here. *See, e.g.*, *Abelesz*, 692 F.3d at 654–60; *Daimler AG*, 571 U.S. 133–39; *Goodyear*, 564 U.S. at 919–29; *Endo Ventures Unlimited Co. v. Nexus Pharms. Inc.*, No. 23-cv-0299-bhl, 2024 WL 1254358, at *4 (E.D. Wis. Mar. 25, 2024). Accordingly, general personal jurisdiction over TTI does not exist.

---

[6] Related to the insufficient allegations about their parent-subsidiary relationship, Plaintiff also alleges that TTI has "jointly prosecuted patent infringement cases" with Milwaukee Tool. FAC ¶ 85. Such "isolated or sporadic contacts . . . are insufficient for general jurisdiction." *Tamburo*, 601 F.3d at 701. And in relation to cases to protect intellectual property specifically, courts have found that fact insufficient to confer jurisdiction. *Gen. Elec. Co. v. Univ. of Virginia Patent Found.*, No. 14-C-1529, 2015 WL 1246087, at *4 (E.D. Wis. Mar. 18, 2015).

[7] *See, e.g.*, *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (no personal jurisdiction over an out-of-state parent company that allegedly "controlled, directed, and supervised the three subsidiaries that" committed in-state tortious acts because "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts" making jurisdiction inappropriate); *Insolia*, 31 F. Supp. 2d at 670 (rejecting plaintiff's alter-ego theory of general jurisdiction despite plaintiff's evidence showing that the parent company regularly dictated broad policies for the subsidiary regarding "anticipated profits and sales, brand strength and product quality" and colluded in the underlying "conspiracy to spread misinformation about the adverse health effects of smoking," among other allegations); *Collazo v. Enter. Holdings, Inc.*, 823 F. Supp. 2d 865, 872 (N.D. Ind. 2011) (plaintiff could not make out "a prima facie case for general jurisdiction based on an alter ego theory" despite presenting evidence from a shared website that indicated the defendant entities shared a common website for marketing purposes, centralized contact information and customer support services, and failed to disclose the "separate corporate/ownership structures" of the numerous branches operated by a number of separate subsidiaries).

### 3. The Court Lacks Specific Jurisdiction Over TTI.

Plaintiff also fails to allege a basis for specific personal jurisdiction in the case, as TTI lacks the requisite minimum contacts with Wisconsin relating to this suit that would make jurisdiction reasonable and fair under the circumstances.

Specific personal jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). "[T]he defendant's ***suit-related conduct must create a substantial connection with the forum***" for a court's exercise of specific jurisdiction to comport with due process. *Id.* (emphasis added). Accordingly, the question of specific jurisdiction entails: "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

Here, as alleged in the FAC, no basis exists to exercise specific personal jurisdiction over TTI. In relation to the underlying TVPRA claim, Plaintiff does not allege that TTI reached out to, "purposely direct[ed]" or "expressly aim[ed]" any conduct toward Wisconsin, or even "avail[ed] itself" of the privilege of doing business in Wisconsin, invoked the "benefits or protections" of Wisconsin law, or otherwise forged any meaningful connections with Wisconsin. *See id.*[8] Plaintiff also does not allege that he has been to Wisconsin or the United States where he sustained the

---

[8] Again, to the degree Plaintiff may attempt to rely on the allegations regarding TTI's patent litigation in this forum, this is insufficient for specific jurisdiction as well. *See supra* at p. 15, n. 6. Such litigation is obviously unrelated to the underlying TVPRA claim here. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state."); *see also Walden*, 571 U.S. at 284 (holding "the defendant's suit-related conduct must create a substantial connection with the forum State").

alleged injury. FAC ¶ 12. To the contrary, Plaintiff alleges that TTI engaged in business *in China* (*id.* ¶¶ 3, 76-80), participated in the procurement from suppliers *in China* (*id.* ¶¶ 80-93), and, as a result, either knew or should have known that independent suppliers were benefitting from forced labor *in China* (*id.* ¶¶ 63-65, 112). Because the alleged wrongdoing, injury, and benefit to TTI all occurred outside of the United States, the Court's analysis need go no further in finding that specific jurisdiction is impossible on the facts alleged here.

Plaintiff's attempt to relate the conduct of third-party supplier Shanghai Select to TTI, by way of its alleged relationship with Milwaukee Tool and a separate company (TTI Trading Co.), is a red herring. *See, e.g., id.* ¶¶ 75-89; 126-129. First, Milwaukee Tool is a separate entity, and its presence in this case standing alone does not confer specific jurisdiction over TTI. *Supra*, § II.A. And to the extent that Plaintiff wishes to imply that a benefit to its subsidiary in Wisconsin can be attributable to the Hong-Kong parent, the Seventh Circuit specifically rejected just such a "clever" argument in determining that an out-of-forum defendant's suit-related conduct was too attenuated to warrant asserting specific jurisdiction. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577–78 (7th Cir. 2020) (downstream sales as part of "stream of commerce" theory insufficient where sales had only an "attenuated relationship" to the underlying allegations of trade secret misappropriation). As in *J.S.T. Corp.*, the "core focus" of the analysis must remain on TTI's suit-related conduct in ***this*** forum, which is insufficient as alleged to make out a prima facie case for specific jurisdiction. *See id.* This is true even if the products allegedly manufactured using prison labor were eventually directed to or sold in Wisconsin, or in the United States generally, or benefitted U.S. subsidiaries, because it "would not change the fact that the ***harm*** caused by Defendants' alleged TVPRA violations was not suffered in the United States." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1172, n.13 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491, 214 L. Ed. 2d

280 (2022) (emphasis added), *see also id.* at 1172 (even if the sale of products sourced in violation of the TVPRA "constituted intentional acts expressly aimed at the United States" it is still insufficient to show that foreign corporate defendants "purposefully directed their activities to the United States.").

Because Plaintiff cannot show that TTI purposefully availed itself toward either Wisconsin or the United States through any of its alleged suit-related conduct, the Court should conclude that specific personal jurisdiction over TTI does not exist.

\*\*\*

Without any constitutionally sound source of personal jurisdiction, the Court should dismiss Plaintiff's claims against TTI. *See* Fed. R. Civ. P. 12(b)(2); *Milwaukee World Trading LLC v. Kapsch*, No. 22-CV-322-pp, 2023 WL 2541556, at \*12 (E.D. Wis. Mar. 16, 2023).

**B.      The Court Should Dismiss Plaintiff's Claims Against TTI Under Rule 12(b)(6) Because Plaintiff Fails to State a TVPRA Claim.**

Even if the Court were to find personal jurisdiction as to TTI, Plaintiff still has failed to state a valid TVPRA claim. Under Rule 12(b)(6), a claim only survives where it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's allegations against TTI do not state a plausible claim.

**1.      The TVPRA's Civil Remedies Provision Does Not Extend Extraterritorially to the Alleged Foreign Conduct and Harm.**

Courts "presume that a statute applies only domestically" unless the statute includes "a clear, affirmative indication that rebuts this presumption." *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021) (citation omitted). Plaintiff's sole TVPRA cause of action arises under the civil remedy provision, 18 U.S.C. § 1595. FAC ¶¶ 133-141. But nothing in the civil remedy provision provides

a cause of action for harm occurring exclusively overseas, and the plain statutory text of the civil remedy provision thereby fails to rebut the presumption against extraterritorial application.[9] At least one District Court that directly addressed this issue ruled precisely that—holding that there is no extraterritorial civil cause of action under § 1595 of the TVPRA. *See Doe I v. Apple Inc.*, No. 1:19-CV-03737 (CJN), 2021 WL 5774224, at *14- *15 (D.D.C. Nov. 2, 2021), *aff'd on other grounds*, 96 F.4th 403 (D.C. Cir. 2024).

In support of extra-territorial application of the TVPRA, Plaintiff will no doubt point to the jurisdictional provisions in § 1596(a), which provides for "extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591," in certain circumstances. However, while one District Court has split on this issue,[10] *Doe I*'s reasoning is compelling, because it considered these exact statutory provisions at issue, and rejected the argument that Congress's enactment of § 1596 indicated an intent to rebut the presumption against extraterritorial application of the civil remedy provision. *Id.* at *15 ("[T]he text and structure of § 1596 suggest that it was focused on criminal, not civil, applications."). This Court should follow the reasoning of *Doe I* and find that there is no extraterritorial application to the TVPRA's civil remedy provision. Plaintiff alleges that all the forced labor at issue occurred in China and any injury occurred in China. *See, e.g.*, FAC ¶¶ 32-39. Just as in *Doe I*, such alleged action "abroad" would be an "[unauthorized] extraterritorial application of § 1595." 2021 WL 5774224, at *15. The TVPRA does not provide for a civil remedy here.

---

[9] In relevant part, § 1595(a) reads: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

[10] *United States ex rel. Hawkins v. ManTech Int'l Corp.*, No. CV 15-2105 (ABJ), 2024 WL 4332117 (D.D.C. Sept. 27, 2024).

### 2. Plaintiff's TVPRA Claim Also Fails Because TTI Is Not "Present in the United States" as Required by § 1596(a)(2).

The TVPRA does not authorize a claim against TTI for another independent reason. The TVPRA's "jurisdictional" provision expressly states that it only applies to an alleged offender who is ***present in the United States***. 18 U.S.C. § 1596(a)(2). The plain meaning of the statute requires actual ***physical presence***—which does not apply to Hong Kong-based TTI—and under any interpretation of the statute's jurisdictional provision, TTI is not "present" in the United States and therefore not subject to liability under the TVPRA.

The Ninth Circuit has provided the most detailed discussion of the TVPRA's application to non-U.S. companies through § 1596(a)(2) in *Ratha v. Phatthana Seafood Co*., 35 F.4th 1159 (9th Cir. 2022), *cert. denied sub*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022).[11] In *Ratha*, Cambodian fishermen alleged forced labor violations under § 1589, through the same civil remedy provision, § 1595. *Ratha*, 35 F.4th at 1167. Just as here, *Ratha* "involve[ed] allegations by foreign Plaintiffs, against foreign Defendants, based on conduct occurring and injuries suffered in a foreign country." *Id.* (plaintiffs alleged that two Thai companies subjected the Cambodian fisherman to forced labor "at their seafood processing factories" in Thailand). The lower court in *Ratha* ruled that the Thai companies were not subject to the TVPRA, and the Ninth Circuit affirmed, finding that the Thai companies were not "present" in the United States.[12] Following the Ninth Circuit's reasoning in

---

[11] In *Ratha*, the Ninth Circuit did not address whether § 1596's extraterritorial scope extended to the civil remedy provision and "assum[ed] without deciding" that § 1595's reach was co-terminus with § 1596. 35 F.4th at 1167-68.

[12] As *Ratha* noted, the parties had argued the scope of the TVPRA's extra-territorial application as a "jurisdictional" question, but "[a]lthough the parties argue that the viability of Plaintiffs' claims raises a jurisdictional question, and the district court framed the issue in similar terms, the Supreme Court has explained that whether a statute applies abroad concerns 'what conduct' the statute prohibits, 'which is a merits question.'" 35 F.4th at 1168 (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 253–54 (2010)). Likewise here, and consistent with *Morrison*, the "physical presence" required of § 1596(a)(2) raises a merit's question about the scope of conduct prohibited by the statute.

*Ratha*, the Court should likewise find that Plaintiff has failed to allege that TTI is "present" in the United States under § 1596(a)(2).

*First*, the plain meaning of "present in" the United States requires **physical** presence. Although *Ratha* ultimately decided there was no argument that the Thai companies were "present" for reasons analogous to jurisdictional arguments, the Ninth Circuit expressly left open whether § 1596 requires **physical presence**, while indicating (in *dicta*) that it likely does. *Id.* at 1169-70 (caselaw cited by plaintiff "supports the conclusion that § 1596's use of the term 'present in' requires physical presence, not merely the types of minimum contacts that satisfy due process[.]")

There is good reason to find that § 1596 does require **physical presence**. As the Ninth Circuit noted in *Ratha*, "the plain meaning of the adjective 'present' is 'in a particular place,'" and the Thai companies at issue in that case were not "present" in the ordinary sense in that they "[n]either had any address, employees, or physical presence in the United States during the period at issue[.]" *Id.* at 1169. The only other courts to address the issue have read the statute the same way. *Adhikari v. Daoud & Partners*, 09-CV-1237, 2013 WL 4511354, at *8 (S.D. Tex. Aug. 23, 2013), *rev'd in part on other grounds on reconsideration*, 994 F. Supp. 2d 831 (S.D. Tex. 2014) ("Plaintiffs argue that 'present in the United States' does not mean physical presence. []This interpretation goes against the plain language meaning of the statute. If Plaintiffs' reading of § 1596(a)(2) were adopted, it would make § 1596(a)(1) superfluous. The plain meaning of § 1596(a)(2) is clear. The offender must be present in the United States for a TVPRA claim to be brought."); *United States v. Davila-Mendoza*, 972 F.3d 1264, 1275 (11th Cir. 2020) (noting that "§ 1596 provides a jurisdictional hook that precludes purely foreign activity with no nexus to the United States from being criminalized.").

There is no reason here to deviate from this plain meaning. The FAC alleges (at ¶ 13) that TTI is a Hong Kong company, and as a result TTI lacks a "physical presence" in the United States and thus the allegations facially fail to meet a basic requirement of the statute.

*Second*, Plaintiff cannot allege any other plausible basis that could satisfy the threshold "presence" requirement of § 1596(a)(2). In *Ratha* the Ninth Circuit concluded that the Thai companies did not have "minimum contacts" with the United States for purposes of applying the TVPRA, just as it would if analyzing personal jurisdiction. 35 F.4th 1170-72. Again, even under this less strenuous standard, the Ninth Circuit rejected any argument that § 1596(a)(2) allowed a TVPRA claim against Thai companies for alleged violations overseas. Because the harm alleged against the foreign companies was directed not towards the United States (let alone the forum state), but to individuals in Thailand and in Cambodia, there were no "continuous contacts" from which to claim "presence" in the United States. *Id.* at 1170-72. Moreover, the Ninth Circuit also rejected a theory that the Thai Companies were acting as an agent for or in a joint venture with a domestic defendant, because there was no evidence that the Thai companies exercised control over the domestic entities or were "alter egos." *Id.* at 1172-74.

As established above with respect to personal jurisdiction, *supra* at § III.A., even the face of the FAC fails to allege that TTI has the requisite minimum contacts to "reasonably anticipate being haled into court in this country." *Ratha*, 35 F.4th 1170 n.9 (quoting *United States v. Shi*, 525 F.3d 709, 722 (9th Cir. 2008)). It is undisputed here that TTI is a Hong Kong entity and that the acts all occurred in China. Even under a "minimum contacts" analysis, Plaintiff has not alleged facts to show that the physical "presence" requirement in § 1596(a)(2) has been satisfied. TTI cannot be said to be "present" in the United States.

Accordingly, as Plaintiff cannot possibly cure the deficiencies as to the extraterritorial application of § 1595 or the "presence" of TTI under § 1596(a)(2), the Court should dismiss the TVPRA allegations against TTI under Rule 12(b)(6) *with prejudice* on both grounds or either ground.

### 3. Dismissal of the Complaint Is Warranted for Failing to State a Cognizable Violation of 18 U.S.C. §§ 1589 and 1595.

Through the civil remedy provision, § 1595(a), Plaintiff alleges only a single violation of 18 U.S.C. § 1589, which prohibits either "knowingly provid[ing] or obtain[ing] labor" that is forced (§ 1589(a)), or "knowingly benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of" forced labor (§ 1589(b)). The civil remedy provision in § 1595(a) authorizes "two kinds of civil liability: perpetrator liability and participant [a/k/a 'beneficiary'] liability." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023). The FAC—even after an opportunity to amend—wholly fails to allege a violation of either § 1589(a) or (b) under either the "perpetrator" or "beneficiary" prongs. Plaintiff therefore fails to state a claim under § 1589 and § 1595.

### a. The FAC Does Not Allege Defendants Are Direct Perpetrators in Violation of § 1589.

Perpetrator liability applies only to a "***direct perpetrator***" of the forced labor in violation of § 1589. *Ratha*, 35 F.4th at 1175 (emphasis added); *see also Richardson v. Nw. Univ.*, No. 1:21-CV-00522, 2023 WL 6197447, at *7 (N.D. Ill. Sept. 21, 2023); *Ruderman v. McHenry Cnty.*, No. 3:22-CV-50115, 2023 WL 130496, at *4 (N.D. Ill. Jan. 9, 2023). Here, however, the FAC alleges that the actual perpetrator was either Shanghai Select or the Chinese Government. *E.g.*, FAC ¶¶ 44-54. There are no concrete allegations—let alone allegations of *fact*—that any Defendant directly participated in the alleged violation (the allegations about the role of Shanghai Select make that implausible). Rather, the entire FAC relies solely on allegations setting forth a cursory

insinuation that TTI or Milwaukee Tool **should have known** that a supplier, Shanghai Select, was benefitting from forced labor (*id.* ¶¶ 138-140) or otherwise was negligent in not investigating and discovering it (*id.* ¶¶ 113-124). The FAC does not allege that Defendants, including TTI, had any **actual knowledge** of Shanghai Select or the Chinese Government's actions. *See infra* at § III.B.3.b.ii. Moreover, those allegations show that Plaintiff is really alleging a beneficiary theory of liability, because at most, TTI is alleged to have somehow turned a blind eye to the benefits its subsidiary may have received from forced labor utilized by a third-party supplier. As such, Plaintiff cannot plausibly allege—and does not allege—facts to show that TTI was a direct perpetrator of Plaintiff's forced labor under § 1589.

       b.      The FAC Fails to Adequately Allege Beneficiary Liability against TTI.

Recognizing his failure to allege a direct perpetrator violation of § 1589, Plaintiff alleges that "even if either TTI or Milwaukee Tool are not themselves 'perpetrators,'" they still violated the "knowingly benefit" prong of § 1589(b) and § 1595(a). *See* FAC ¶¶ 137, 140. But Plaintiff fails to state a claim under this prong as well. To prevail under a beneficiary theory of liability, Plaintiff must show that the defendant (1) knowingly benefitted, (2) from participation in a venture, (3) which they knew or should have known was engaged in conduct that violated the TVPRA. *Ratha,* 35 F.4th at 1175. Plaintiff, however, does not plausibly allege facts to satisfy any of these statutory elements.

       i.      Plaintiff Fails to Allege That TTI Participated in a "Venture."

To begin with, Plaintiff has not adequately alleged any venture involving forced labor in which TTI could have participated. To show a violation, a defendant must participate in a venture that has "engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). A "venture" is not defined in § 1595, but as used in § 1591 "participation" requires "**knowingly assisting, supporting, or facilitating** a violation." *See G.G.*, 76 F.4th at 558 (emphasis added). The Seventh Circuit has

stated that this at least requires "culpable assistance" by a showing that the alleged "participant provides assistance, support, or facilitation to the [direct violator] through such a 'continuous business relationship,' a court or jury may infer that the participant and trafficker have a 'tacit agreement.'" *Id.* at 559 (citations omitted).

Here, Plaintiff does not allege any concrete facts to show that TTI participated in a venture with Shanghai Select to benefit from the use of Chinese prison labor. The only individuals Plaintiff ever interacted with worked for Shanghai Select. FAC ¶ 45. Plaintiff only alleges that Defendants should have been "well-aware of the risk" that forced labor might exist in Chinese supply chains. *Id.* ¶ 75. Likewise, Plaintiff's other allegations are simply too cursory to show any actual venture involving Defendants. *E.g.*, *id.* ¶¶ 93 (Defendants sourced manufacturing in China to lower costs), ¶¶ 94-99 (Defendants market their attention to "manufacturing excellence" and "quality control"), ¶¶ 100-105 (TTI audits suppliers and requires them to ensure compliance with policies against forced labor), ¶¶ 107-112 (Shanghai Select stated it could lower costs of production through its outsourcing of supply). These generic allegations could apply to practically any manufacturer outsourcing some of its supply chain to China, and do not adequately allege a venture in which Defendants could have participated here. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (requiring TVPRA allegations describe "the particular venture in which the defendant allegedly participated").

In any event, Plaintiff has not alleged that TTI sufficiently participated in the alleged venture to trigger liability under the TVPRA. To "participate" refers to some form of active engagement. *See In re S. White Transp., Inc.*, 725 F.3d 494, 497–98 (5th Cir. 2013); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASx), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017). Here, at a minimum, that requires Plaintiff to allege that TTI specifically had a

"continuous business relationship" with Shanghai Select, *G.G.*, 76 F.4th at 559-60, such that it had a role in "assisting, supporting, or facilitating" the alleged venture, *Richardson*, 2023 WL 6197447, at *10 (finding participation where "[d]efendant became aware of the alleged misconduct" and allowed it to continue).

The FAC does not allege any ***facts*** to show that TTI "assisted, supported, or facilitated" Shanghai Select's alleged use of prison labor. It is not enough to simply allege, as Plaintiff has done, that another TTI-subsidiary company engaged Shanghai Select as a supplier on behalf of Milwaukee Tool, or that Defendants had knowledge of manufacturing problems in China generally. Mere operation of a general business venture does not suffice to establish liability under the TVPRA, and the relation must be "more than providing off-the-shelf" products or services in "arms-length" transactions (exactly the type of supplier-relationship alleged about Shanghai Select here). *G.G.*, 76 F.4th at 562; *see also Apple*, 96 F.4th at 415 ("something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture").[13] General knowledge that prison labor is a problem in China does not equate to factual support or assistance for Shanghai Select's alleged specific conduct.

In fact, only one single paragraph of the FAC even comes close to alleging Defendants' participation in a venture with Shanghai Select to use prison labor. In Paragraph 129, Plaintiff ***assumes*** "given the specific designs of the gloves and the propriety [sic] technologies involved in making Milwaukee [T]ool gloves, Defendants ***likely*** worked, directly or indirectly, with

---

[13] *See also J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (ruling TVPRA requires a showing of "interaction with a specific venture" engaged in specific violations); *Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) ("Association alone cannot establish liability."); *Konstantinova v. Garbuzov*, No. 2:21-CV-12795 (WJM), 2022 WL 2128799, at *4 (D.N.J. June 14, 2022) (general knowledge of nonspecific complaints by plaintiff and conclusory allegations that individual defendant exploited and hid relevant facts related to the claims against the actual perpetrators was insufficient to plead participation in a venture under § 1589(b)).

Shanghai Select. . . . [and] also established a feedback loop . . . to address quality control issues."
(Emphasis added). Plaintiff does not allege any facts to support that assumption—presumably
Plaintiff can allege none. Nor does Plaintiff even identify which defendant "*likely*" was involved.

There is no allegation that TTI in any way actively supported or assisted a venture from
which anyone could infer "tacit approval" of Shanghai Select's alleged use of prison labor, and
accordingly Plaintiff does not state a cause of action under § 1595 for violation of § 1589. *See
Apple,* 96 F.4th at 416*; J.B.*, 2020 WL 4901196, at *9.

ii.     Plaintiff Does Not Plausibly Allege That TTI Knew or Should
Have Known the Alleged Venture Engaged in TVPRA Violations.

Even more fundamentally, the FAC fails to plead that the TTI "knew or should have known
[that the alleged venture] has engaged in an act in violation of this chapter," *Ratha*, 35 F.4th at
1165 (quoting 18 U.S.C. § 1595(a)), let alone that it could have "knowingly" benefited from it.

*First*, Plaintiff does not allege that Defendants had actual knowledge of Mr. Lun's alleged
forced labor. Mr. Lun alleges he was subject to forced labor from February to July 2022. FAC
¶ 37. But Plaintiff also acknowledges that Defendants were only made aware of the allegations of
forced labor in January 2023, *after* the time period of the alleged violation. *Id.* ¶ 63. *Ratha* likewise
analyzed defendants' alleged knowledge prior to publication of whistleblower reports that made
allegation of labor abuses public, finding that a lack of actual knowledge before the report was
fatal to the TVPRA claim for that time period. 35 F.4th at 1177. Plaintiff has simply not alleged
actual knowledge by any Defendant at the time of Mr. Lun's imprisonment. In fact, Plaintiff alleges
that Defendants stated they were genuinely ignorant. FAC ¶ 64.

Rather than actual knowledge, the FAC seeks to impute a form of constructive knowledge
to TTI in a manner too implausible to state a claim. As described above, Plaintiff essentially alleges
that TTI "should have known" about forced labor in China because such abuses are "widely

27

known" in the manufacturing industry, FAC ¶¶ 66-75, and TTI allegedly has "deep and unique knowledge of labor and manufacturing issues" in China, *id.* ¶¶ 76-80. In essence, Plaintiff argues that Defendants failed to exercise diligent oversight of their supply chain and had they done so, they **would** have learned about Shanghai Select's use of prison labor sooner. *Id.* ¶¶ 126-129.[14]

In *Ratha*, the Ninth Circuit addressed just such generalized facts about labor abuses in Thailand—including based on widely known news and government reports—and expressly rejected that such general knowledge could give rise to what amounts to a duty to investigate any specific facility. 35 F.4th at 1177 ("Plaintiffs' evidence suggests, at most, that [defendant] should have known of labor abuses in the Thai shrimp industry generally. Sweeping generalities about the Thai shrimp industry are too attenuated to support an inference that [defendant] knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory between 2010 and 2012."). The FAC similarly relies on the same insinuations or "evidence of country conditions," *id.* at 1179, that *Ratha* expressly rejected.

Simply, the TVPRA does not create an affirmative duty to police suppliers, as the FAC suggests, and as such the allegations here are simply too cursory to adequately allege that TTI "knew" or "should have known" that Shanghai Select was using Chinese prison labor. Plaintiff has not stated a claim that TTI violated § 1589(b). *See, e.g.*, *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (finding that plaintiff failed to allege facts or information that "would have put Defendants on notice that Plaintiff was being forcibly sex trafficked" and that "the TVPRA does not impose an affirmative duty to police and prevent sex trafficking*"); A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not

---

[14] Although outside the scope of this motion, Plaintiff's allegations presume that Shanghai Select did not try to hide its alleged use of prison labor and that the gloves at issue were not for Asia's vast counterfeit/knock-off market.

read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking."); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (finding that "the [c]omplaint fail[ed] to allege facts as to how … [defendants] … knew or should have known [p]laintiff was being trafficked"); *Jensen v. U.S. Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) (knowledge for purposes of § 1589(b) could not be established where plaintiff failed to allege facts plausibly showing that defendant knew plaintiff's coach was abusing her).

iii.       Plaintiff Does Not Plausibly Allege That TTI Knowingly Benefited from Violations of the TVPRA.

Finally, just as the FAC fails to allege knowing participation in a venture that violated the TVPRA, it also fails to plausibly allege the Defendants "knowingly benefit[ed], financially or by receiving anything of value" from "participation in a venture which [they] knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); § 1589(b) (same). The FAC does not explain how TTI in particular benefited from the use of prison labor by one of Milwaukee Tool's suppliers. Even if there was an attenuated benefit, Defendants did not ***knowingly*** do so, for the same reason they are not alleged to have knowingly participated in use of Chinese prison labor. *Supra* at 27-28; *see also Ratha,* 35 F.4th at 1179-80 ("knowing benefit" prong is the same analysis as whether defendant "should have known" of alleged violations).

In short, the allegations here do not satisfy any of the requirements needed to establish a "knowing benefit" violation of § 1589(b) and authorized in a civil action under § 1595(a) for beneficiary liability.

# IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss TTI for lack of personal jurisdiction pursuant to Rule 12(b)(2). Alternatively, the Court should dismiss TTI with prejudice because the TVPRA's civil remedy provision (18 U.S.C. § 1595(a)) cannot apply extraterritorially and its "jurisdictional" provision (18 U.S.C. § 1596(a)(2)) does not apply to TTI, or dismiss the substantive allegations against it pursuant to Rule 12(b)(6) for failure to state a TVPRA claim.

Dated: November 13, 2024                    **MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Jason C. White*

Jason C. White
110 North Wacker Drive
Chicago, IL 60606
Telephone: +1.312.324.1775
Facsimile: +1.312.324.1001
jason.white@morganlewis.com

Zane David Memeger
2222 Market St.
Philadelphia, PA 19103
Telephone: +1.215.963.5750
Facsimile: +1.215.963.5001
zane.memeger@morganlewis.com

Angelo J. Calfo
Andrew DeCarlow
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Telephone: +1.206.274.6400
Facsimile: +1.206.274.6401
angelo.calfo@morganlewis.com
andrew.decarlow@morganlewis.com

*Attorneys for Defendant Techtronic Industries Co. Ltd.*