IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

XU LUN, a pseudonym,

        Plaintiff,

v.

MILWAUKEE ELECTRIC TOOL CORPORATION., et al.,

        Defendants.

Case No. 2:24-cv-00803-BHL

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY FROM TTI**

As explained in his opposition to TTI's motion to dismiss, Mr. Xu has provided an extensive documentary record that—along with the allegations in his complaint—easily satisfies his burden of making a "prima facie showing" that TTI has sufficient United States contacts for this Court to exercise personal jurisdiction, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).[1] *See* Dkt. 41 at 37–46; 41-1–41-31. If this Court disagrees, however, Mr. Xu requests jurisdictional discovery. He made this request in his opposition to the motion to dismiss, but out of an abundance of caution, he also submits it as a freestanding motion.

**1.** As explained in his opposition, Mr. Xu has at the very least met the "minimal burden" of "establish[ing] a colorable or prima facie showing of personal jurisdiction" sufficient to warrant "jurisdictional discovery." *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024). Under this standard, Mr. Xu need only show "that personal jurisdiction might exist." *Esquivel v. Airbus*

---

[1] Unless otherwise specified, all internal citations, quotation marks, and alterations are omitted from quotations throughout this brief.

*Americas, Inc.*, 2021 WL 4395815, at *2 (N.D. Ill. May 3, 2021). And in applying this standard, a court must "draw[] all inferences in [Mr. Xu's] favor" and "bear[] in mind the fact that, without discovery, it is not surprising that the plaintiff can do little more than suggest that a defendant currently has minimum contacts." *B.D.*, 91 F.4th at 864. Under this framework, it is, at the very least, "colorable" that this Court has personal jurisdiction over TTI, such that if this Court does not deny TTI's motion to dismiss outright, jurisdictional discovery is warranted. *See id.*; Dkt. 41 at 47–48.

**2. *Specific jurisdiction.*** Mr. Xu's allegations and evidence more than suffice to make out a colorable showing that this Court has specific jurisdiction, based on either the stream-of-commerce theory or on TTI's continuing business relationship with Milwaukee Tool, through which the companies collaborate to sell forced-labor-made gloves into United States markets.

*First*, as Mr. Xu explained in his opposition to TTI's motion to dismiss, the record evidence—including customs data—demonstrates that TTI supplies Milwaukee Tool gloves for sale in the U.S. *See* Dkt. 41 at 39–41 (collecting evidence). And Mr. Xu's claims are based on this venture to cheaply manufacture these gloves overseas for sale in American markets. *See id.* at 41. Under longstanding stream-of-commerce jurisprudence, that is sufficient to make a prima facie showing of personal jurisdiction. *See, e.g., id.* at 39–41; *B.D.*, 91 F.4th at 861.

*Second*, Mr. Xu has also made a prima facie showing of specific jurisdiction based on TTI's close and continuous business relationship with Milwaukee Tool. "[P]arties who reach out beyond one [forum] and create continuing relationships and obligations with citizens of another [forum] are subject to regulation and sanctions in the other [forum] for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *see uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 426 (7th Cir. 2010); *Daniel J. Hartwig Assocs. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990). As explained in his opposition, Mr. Xu has provided detailed allegations and evidence of TTI's continuing relationship with Milwaukee Tool—including its acquisition of Milwaukee Tool for the purpose of

2

selling goods in the United States made with cheap labor abroad, the companies' joint project to outsource production of Milwaukee Tool gloves to China, and the profits both companies made from sales of these gloves in the United States. *See* Dkt. 41 at 5, 21–25, 40–41. This relationship is at the core of Mr. Xu's claim that TTI benefitted from participation in a venture to outsource production of Milwaukee Tool gloves to China and sell them in the United States. *See id.* at 21–25. That, too, is more than sufficient for a prima facie case of personal jurisdiction. *See uBID*, 623 F.3d at 426 (under *Burger King*, one of the "many different forms" of "contacts supporting specific jurisdiction" is when a "defendant did not physically enter the forum but purposefully availed itself of the benefit and protection of the forum state's laws by entering into long-term business franchise contract with resident of forum"); *Daniel J. Hartwig Assocs.*, 913 F.2d at 1219 (where defendant "knowingly reached out to a Wisconsin business and created a continuing relationship with that business, we cannot say that [the defendant's] contacts with Wisconsin were random, fortuitous or attenuated"); *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022), *vacated on other grounds,* 144 S. Ct. 2675 (2024) (specific jurisdiction proper based on foreign suppliers' agreements with U.S. manufacturers).

However, if this Court believes more evidence is required to support specific jurisdiction, this Court should grant Mr. Xu leave to take discovery to provide that evidence. *See, e.g.*, *B.D.*, 91 F.4th at 862–63 (granting discovery into stream-of-commerce jurisdiction as to foreign company that sold goods into the U.S. market); *Nicks v. Koch Meat Co.*, 2016 WL 6277489, at *4–5 (N.D. Ill. Oct. 27, 2016) (St. Eve, J.) (granting jurisdictional discovery as to interrelationship between corporate entities). In particular, Mr. Xu requests that he be permitted to take discovery into TTI's role in designing, manufacturing, shipping, and marketing Milwaukee Tool gloves for sale in the United States; as well as discovery into the formation of the venture between TTI and Milwaukee Tool: each company's role in the venture; their ongoing relationship as it relates to the production and sale of Milwaukee

3

Tool gloves; and any agreements between them relevant to the manufacture, distribution, and sale of Milwaukee Tool gloves.

**3. *General jurisdiction.*** Because TTI has sufficient contacts with the United States that are related to Mr. Xu's claims, this Court need not reach the question of whether it has general jurisdiction over TTI. But if it were necessary to reach the question, Mr. Xu has also made a colorable showing that this Court has general jurisdiction, at least sufficient to warrant discovery, on two theories. *First*, as explained in Mr. Xu's opposition, TTI has publicly represented that it has a headquarters in the United States. Dkt. 41 at 47. Indeed, in defending against accusations that TTI had inflated its property holdings, the "Company"—defined *solely* as "Techtronic Industries Company Limited" as opposed to its subsidiaries—responded that "our balance sheet" includes "Head Quarter offices in … Florida." Dkt. 41-23 at 1, 8; *see also* Dkt. 41-27 at 2–3 (TTI's CEO referring to "our U.S. corporate headquarters" in Florida). TTI itself admits that a company is subject to general jurisdiction where it is headquartered. TTI Br. 9 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919–24 (2011)). To the extent this Court believes further evidence on this point is necessary, Mr. Xu requests leave to take discovery into the company's Florida headquarters.

*Second,* Mr. Xu has made a colorable showing that TTI has an alter-ego relationship with its U.S. subsidiaries. And "a court which has jurisdiction over a corporation has jurisdiction over its alter egos." *Smartsignal Corp. v. Bickford*, 2006 WL 8461603, at *4 (N.D. Ill. May 16, 2006); *Nicks*, 2016 WL 6277489, at *4–5. In this inquiry, courts may exercise general jurisdiction over a parent company, based on its subsidiary's contacts, if *either* there is "'evidence that would justify piercing the corporate veil' *or* one entity exercised an 'unusually high degree of control' over the other." *Nicks*, 2016 WL 6277489, at *4 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (emphasis added)); *see also Smartsignal*, 2006 WL 8461603, at *4.

Without discovery, plaintiffs will rarely have "detailed facts" as to "how … corporations share or interchange employees" or manage responsibilities. *Foren v. LBC Optics Inc.*, No. 23-cv-00095 (BHL), 2023 WL 3752187, at *3 (E.D. Wis. June 1, 2023). Nevertheless, Mr. Xu's allegations, and the evidence he was able to compile without discovery, are sufficient to make at least a "colorable" showing that, given discovery, he would be able to demonstrate that TTI satisfies the requirements for alter-ego jurisdiction. TTI's declarants make conclusory assertions that TTI and its subsidiaries are separate and independent without providing any further evidence to support those assertions. But Mr. Xu has provided evidence and allegations that TTI holds itself out as interchangeable with its U.S. subsidiaries—Milwaukee Tool, TTI NA, and TTI Consumer Power Tools—and exercises a high degree of control over them. *See, e.g.*, Compl. ¶¶ 21–29 (describing close involvement of TTI in Milwaukee Tool's operations, as well as overlap in employees and management between Milwaukee Tool and TTI); *id.* ¶¶ 84–89 (detailing close collaboration between Milwaukee Tool and TTI on sourcing, manufacturing, and litigation); Dkt. 41 at 39–41, 43, 47 (compiling evidence that TTI holds itself out as the producer of Milwaukee Tool products and as having a footprint and employees in the United States); Dkt. 41-11 (business cards bearing both TTI and Milwaukee Tool logos); Dkts. 46-15–46-17 (LinkedIn profiles showing TTI employees responsible for Milwaukee Tool's supply chain); Dkt. 32-4 ¶ 3 (TTI NA based out of the same Florida headquarters that TTI has referred to as its own); Dkt. 41-26 (describing how TTI "has … top executives at an office in Fort Lauderdale, Florida" and that Milwaukee Tool executives report directly to TTI's CEO); Dkts. 32-4 ¶ 6, 41-23 at 1, 8 (TTI Consumer Power Tools is "based in South Carolina," where TTI itself claims to have a "regional office").

"[B]earing in mind the fact that, without discovery, it is not surprising that" Mr. Xu cannot provide many of the details of the relationship between TTI and its American subsidiaries, this Court should permit Mr. Xu to take discovery to demonstrate alter-ego jurisdiction—if it does not find there

is jurisdiction on other grounds. *B.D.*, 91 F.4th at 864; *see also Nicks*, 2016 WL 6277489, at *4. In particular, Mr. Xu seeks discovery into "whether the parent arranges financing for and capitalization of the subsidiary; whether separate books, tax returns and financial statements are kept; whether officers or directors are the same; whether the parent holds its subsidiary out as an agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent over the daily affairs of its subsidiary." *Smartsignal*, 2006 WL 8461603, at *4; *see also Nicks*, 2016 WL 6277489, at *4.

For the reasons above, if this Court determines that the record is insufficient to determine whether it has personal jurisdiction over TTI, jurisdictional discovery is warranted.

Dated: December 23, 2024                     Respectfully submitted,

**GUPTA WESSLER LLP**
*/s/ Jennifer Bennett*
Jennifer Bennett
Attorney Bar Number: 296726
Attorney for Plaintiff
Email: jennifer@guptawessler.com
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

Thomas Scott-Railton
Attorney Bar Number: 5687330
Attorney for Plaintiff
Email: thomas@guptawessler.com
2001 K Street NW, Suite 850 North
Washington, DC 20001
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

**HAWKS QUINDEL, S.C.**

William E. Parsons
Attorney Bar Number: 1048594
Attorney for Plaintiff
Email: wparsons@hq-law.com
409 East Main Street

P.O. Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

**FARRA & WANG PLLC**

Times Wang
Attorney Bar Number: 281077
Attorney for Plaintiff
Email: twang@farrawang.com
Adam Farra (application for admission forthcoming)
Attorney for Plaintiff
Email: afarra@farrawang.com
1300 I Street NW, Suite 400E
Washington, D.C. 20005
Telephone: (202) 505-6227

*Counsel for Plaintiff*