**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| XU LUN, a pseudonym, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:24–cv–00803–BHL |
| MILWAUKEE ELECTRIC TOOL | § | |
| CORPORATION, and | § | |
| TECHTRONIC INDUSTRIES | § | |
| COMPANY LIMITED, | § | |
| | § | |
| Defendants. | | |

**DEFENDANT MILWAUKEE ELECTRIC TOOL CORPORATION'S**
**REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Paul J. Stockhausen (Bar No. 1034225)
pstockhausen@reinhartlaw.com
REINHART BOERNER VAN DEUREN, S.C.
22 East Mifflin Street, Suite 700
Madison, WI 53703
Tel.: 608-229-2200
Fax: 608-229-2100

Ellen E. Dew (Bar No. 081218015)
William W. Reichart III (Bar No. 1812120078)
ellen.dew@us.dlapiper.com
wes.reichart@us.dlapiper.com
DLA Piper LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel.: 410-580-3000
Fax.: 410-580-3001

*Attorneys for Defendant Milwaukee Electric Tool Corporation*

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST MILWAUKEE TOOL ...................1

    A.      The Opposition Does Not Overcome the Presumption Against Extraterritorial Application of the TVPRA's Civil Cause of Action Provision. ....................................1

    B.      Plaintiff Impermissibly Seeks to Apply Section 1595 Extraterritorially. ......................8

    C.      Plaintiff Does Not Plausibly Allege that Milwaukee Tool Participated in a Trafficking Venture. ...................................................................................................9

    D.      Plaintiff Does Not Plausibly Allege that Milwaukee Tool Knew or Should Have Known of Shanghai Select's Alleged Use of Forced Labor. .......................................11

    E.      Milwaukee Tool Did Not Knowingly Benefit from the Alleged Forced Labor. .........15

III.    CONCLUSION ....................................................................................................15

i

**Page(s)**

**Cases**

*A.B. v. H.K. Group of Co., Inc.*,
2022 WL 467786 (N.D. Ga. Feb. 9, 2022) ......................................................................6, 10

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
532 F. Supp. 3d 1018 (D. Or. 2021) ...................................................................................13

*Abafita v. Aldukhan*,
2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019)........................................................................5

*Adhikari v. Kellog Brown & Root, Inc.*,
845 F.3d 184 (5th Cir. 2017) ...............................................................................................5

*C.T. v. Red. Roof Inns, Inc.*,
2021 WL 602578 (S.D. Ohio July 1, 2021)......................................................................5, 6

*Doe 1 v. Apple, Inc.*,
2021 WL 5774224 (D.D.C. Nov. 2, 2021) ........................................................................3, 4

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ..............................................................................................9

*Doe (K.B.) v. G6 Hospitality, LLC*,
2024 WL 4701891 (N.D. Ga. Nov. 5, 2024) ......................................................................14

*Doe (S.M.A.) v. Salesforce, Inc.*,
2024 WL 1337370 (N.D. Tex. Mar. 28, 2024)...................................................................15

*Eglen v. America Online, Inc.*,
2001 WL 1028851 (S.D. Ind. June 19, 2001) ......................................................................1

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) .......................................................................................*passim*

*Kellog Brown & Root Services, Inc. v. United States ex rel. Carter*,
575 U.S. 650 (2015)..............................................................................................................4

*Misko v. Speedway, Inc.*,
2018 WL 2431638 (E.D. Mich. May 19, 2018)..................................................................14

*Morrison v. Nat'l Austrl. Bank Ltd.*,
561 U.S. 247 (2010)..............................................................................................................9

*Motorola Sols., Inc. v. Hytera Comms. Corp. Ltd.*,
 108 F.4th 458 (7th Cir. 2024) ...........................................................................4, 5

*Nestlé USA, Inc. v. Doe*,
 593 U.S. 628 (2021) ...............................................................................................1

*Ratha v. Phattana Seafood Co.*,
 26 F.4th 1029 (9th Cir. 2022) ...........................................................................7, 13

*Ratha v. Phatthana Seafood Co.*,
 2016 WL 11020222 (C.D. Cal. 2016)...................................................................7

*RJR Nabisco, Inc. v. European Cmty.*,
 579 U.S. 325 (2016)........................................................................................*passim*

*Rodriguez v. Pan America Health Org.*,
 29 F.4th 706 (D.C. Cir. 2022) ..............................................................................8

*Roe v. Howard*,
 917 F.3d 229 (4th Cir. 2019) ............................................................................6, 7

*S.J. v. Choice Hotels Int'l, Inc.*,
 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ...............................................................14

*TRW Title Ins. Co. v. Security Union Title Ins. Co.*,
 153 F.3d 822 (7th Cir. 1998) ..............................................................................12

*WesternGeco LLC v. Ion Geophysical Corp.*,
 585 U.S. 407 (2018)..............................................................................................8

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*
 2024 WL 4332117 (D.D.C. Sept. 27, 2024) .....................................................6, 7

**Statutes**

18 U.S.C. § 1595(a) .......................................................................................*passim*

18 U.S.C. § 1596(b).......................................................................................*passim*

18 U.S.C. § 1964(c) ...............................................................................................3

18 U.S.C. § 3271 ...................................................................................................7

**Other Authorities**

H.R. Rep. No. 110-430, pt. 1 (2007).......................................................................4

# I.     INTRODUCTION

Plaintiff's Opposition (ECF No. 41) ("Opp.") fails to tackle the fundamental flaws in his theory of beneficiary liability against Milwaukee Tool[1] under the TVPRA.[2]  Plaintiff ignores the clear, on-point authority that Milwaukee Tool has twice cited in favor of dismissal—case law confirming that Plaintiff cannot state a claim against Milwaukee Tool because he has not plausibly alleged any ***facts*** linking his alleged labor in a Chinese prison to Milwaukee Tool other than his allegation that he was directed to make (possibly counterfeit) gloves bearing the Milwaukee logo by Chinese prison guards for a Chinese company.  Instead, Plaintiff relies on inapposite cases and contorted legal theories.  As Plaintiff would have it, solely by virtue of the alleged prevalence of forced labor in China, companies would be subject to civil TVPRA claims any time a product allegedly manufactured with forced labor in China potentially makes its way into the company's supply chain, regardless of the company's knowledge of the trafficking.  That is plainly not what the TVPRA provides.  Plaintiff's claim must be dismissed with prejudice.

# II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST MILWAUKEE TOOL

## A.    The Opposition Does Not Overcome the Presumption Against Extraterritorial Application of the TVPRA's Civil Cause of Action Provision.

It is well-established that courts must "presume that a statute applies only domestically" unless "'the statute gives a clear, affirmative indication' that rebuts this presumption." *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016)). The Opposition does not (because it cannot) identify any "clearly expressed congressional intent" in Section 1595 that overcomes the presumption that it only authorizes civil

---

[1] Capitalized terms not otherwise defined shall have the same meaning given in the Motion.
[2] Plaintiff abandoned his claim for "perpetrator liability."  *See* Opp. at 5 n.2.  Accordingly, Milwaukee Tool is entitled to an Order dismissing that claim (Amend. Compl., ¶¶ 134–136) with prejudice.  *See Eglen v. America Online, Inc.*, 2001 WL 1028851, at *3 (S.D. Ind. June 19, 2001).

actions for domestic violations of the TVPRA. *RJR Nabisco*, 579 U.S. at 335. Instead, Plaintiff argues that although Section 1595 says nothing of extraterritorial application, this Court should read extraterritoriality into the civil remedy here based solely on the TVPRA's grant of extraterritorial jurisdiction over the prosecution of *criminal* violations of the forced labor statute in Section 1596. *See* Opp. at 10. But that argument fails because it relies on the same reasoning that the Supreme Court expressly rejected in *RJR Nabisco*, which the Opposition misreads.

As Milwaukee Tool detailed in is opening Brief, in *RJR Nabisco*, the Supreme Court held that when a statute contains both substantive prohibitions (and criminal liability attached thereto) and a private right of action, like the TVPRA, "the presumption against extraterritoriality must be ***applied separately to both***." 579 U.S. at 350 (emphasis added). There, the Court explained that certain of RICO's predicates "plainly apply to at least some foreign conduct" and that "Congress's incorporation of these (and other) extraterritorial predicates" provide the required "affirmative indication that [18 U.S.C.] § 1962 [(*RICO's criminal liability provision*)] applies to foreign racketeering activity." *Id.* at 338–39. However, the Court reached the ***opposite*** conclusion with respect to RICO's civil action provision, emphasizing that: "It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries. ***Something more is needed***, and here it is absent." *Id.* at 350 (emphasis added).

This requirement of "***something more***" for private rights of action follows directly from the Court's recognition that "providing a private civil remedy for foreign conduct creates a potential for international friction" and that the "decisions involved in defining a cause of action based on conduct within the territory of another sovereign carries with it significant foreign policy implications." *Id.* at 346–47. Thus, *RJR Nabisco* dictates a clear rule: because it is for Congress, not the Courts, to make thorny foreign policy decisions, Courts may not apply private rights of

action extraterritorially based simply on the fact that the statute authorizing such actions incorporates *other* statutory prohibitions that themselves apply extraterritorially. Rather, Courts can only do so where Congress provides *additional clear, affirmative indication of extraterritorial application* of the private right of action statute itself.

Here, there is none. Section 1595 is akin to RICO's private right of action.[3] And Plaintiff has not identified the "something more" required by *RJR Nabisco* – the clear congressional intent needed to transform the silence of Section 1595 into an affirmative grant of extraterritorial application. Contrary to Plaintiff's argument, as the district court in *Doe 1 v. Apple, Inc.* (the *only* court to squarely address the argument Plaintiff presents here based on Section 1596) held: Section 1596 does not provide what is missing. 2021 WL 5774224, at *14–16 (D.D.C. Nov. 2, 2021), *aff'd on other grounds*, *Doe 1 v. Apple, Inc.*, 96 F.4th 403 (D.C. Cir. 2024).

While it is undisputed that Section 1596(a) grants extraterritorial jurisdiction over the *criminal* prohibitions in Section 1589, under *RJR Nabisco*, that by itself is not enough to extend extraterritorial application to civil causes of action based on Section 1589. *Id.* at *15. Moreover, Section 1596 does not even mention Section 1595, let alone make any clear, affirmative statement that Section 1596 expands the application of the civil cause of action. *Id.* Faced with this, Plaintiff instead asks this Court to take an expansive approach to extraterritoriality by suggesting that the reference in Section 1596(a) to courts having "extraterritorial jurisdiction over any *offense* (or any attempt or conspiracy to commit an offense) under section…1589" must mean that it encompasses civil suits for violations of Section 1589. *See* Opp. at 12. But, as the *Apple* court held when rejecting the very same argument, to adopt that reading would require the court to ignore that "the

---

[3] *Compare* 18 U.S.C. § 1595(a) (authorizing civil actions by "a victim of a violation of this chapter"), *with* 18 U.S.C. § 1964(c) (permitting "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue).

text and structure of [Section] 1596" are focused on criminal applications.  2021 WL 5774224, at *15.  Indeed, Section 1596(a) refers to *attempts* or *conspiracies* to commit an offense, uniquely criminal terms.  And, while the term "offense" can refer to things that are not crimes, as the Seventh Circuit recognized in *Motorola Sols., Inc. v. Hytera Comms. Corp. Ltd.*, at the time Section 1596 was enacted in 2008 the term "offense" ***was not used anywhere*** in title 18 to denote civil violations. 108 F.4th 458, 485–86 (7th Cir. 2024) (quoting the Supreme Court's decision in *Kellog Brown & Root Services, Inc. v. United States ex rel. Carter*, 575 U.S. 650, 659 (2015) that at that time "[a]lthough the term offense appears hundreds of times in Title 18" no one "has been able to find a single provision of that title [(which included Section 1596)] in which 'offense' is employed to denote a civil violation").[4]

Section 1596's exclusively criminal focus is further confirmed by subsection (b), which states that "no ***prosecution*** may be commenced against a person under this ***section*** if a foreign government…has prosecuted or is ***prosecuting*** such a person…" 18 U.S.C. § 1596(b) (emphasis added).  So, too, is it by the legislative history.  *See* H.R. Rep. No. 110-430, pt. 1, at 51, 55 (2007) ("provides jurisdiction…for prosecution of certain slavery and trafficking offenses committed abroad").  There is no clear affirmative indication that Section 1596 covers civil claims.

Contrary to Plaintiff's argument, the Seventh Circuit's decision in *Motorola* does not support his position nor does it preclude Milwaukee Tool's argument.  There, the Seventh Circuit found that the congressionally enacted statutory purpose of the Defend Trade Secrets Act made clear that the whole statute applied "in the United States and around the world."  108 F.4th at 483. What is more, the provision authorizing extraterritorial application clearly stated that it applied to

---

[4] *Motorola* is distinguishable on this ground and others.  108 F.4th at 485 (holding that the defendant's argument that "offense" in the provision extending extraterritorial application referred only to criminal offenses "would have been persuasive before the passage of the DTSA in 2016").

"*this chapter*," which was later amended to include a private cause of action. *Id.* at 485 (emphasis added). As the Seventh Circuit noted, "Congress's decision to leave the introductory language in [the extraterritorial extension] unchanged…is more persuasive textual evidence" of clear congressional intent for it to apply to the civil cause of action. *Id.* Here, the **exact opposite** sequence occurred. Congress added Section 1596 **after** Section 1595 was enacted. But Congress included no reference in Section 1596 to state or suggest that it applies to the entire TVPRA. Rather, Section 1596 expressly states that it applies only to "offenses" under the TVPRA's substantive provisions. Moreover, Section 1596 does not make any reference to Section 1595.

Far from rejecting Milwaukee Tool's argument about the proper application of *RJR Nabisco*, the Seventh Circuit simply held that to disregard the statute's plain language about applying to the entire chapter and reading the provision at issue "as meaning something other than what it says faces a steep uphill climb." *Id.* at 484. The court's holding in *Motorola* is entirely consistent with how *RJR Nabisco* must be applied – the court cannot accept the existence of extraterritorial criminal prohibitions alone but must look for clear evidence (such as in the DTSA section) that Congress intended to provide for extraterritorial civil claims.

Ultimately, Plaintiff's refrain that the "vast majority of courts" have endorsed his argument is disingenuous, at best. To be sure, the cases that Plaintiff relies on addressed entirely different legal questions. Far from "com[ing] to the same conclusion" as Plaintiff, Opp. at 11, the Fifth Circuit's decision in *Adhikari v. Kellog Brown & Root, Inc.*, addressed whether Section 1596 applied retroactively. 845 F.3d 184, 190 (5th Cir. 2017). There, Fifth Circuit did not have occasion to make a finding on extraterritoriality because the parties *did not dispute* it.[5] Similarly, in *C.T. v.*

---

[5] Plaintiff's citation to *Abafita v. Aldukhan*, 2019 WL 6735148, at *5 (S.D.N.Y. Apr. 4, 2019) is similarly unavailing as that case merely followed *Adhikari* in addressing retroactivity.

*Red Roof Inns, Inc.*, the question at issue was "[w]hether Section 1596…authorized nationwide service of process[,]" not whether it expressed congressional intent for Section 1595 to apply extraterritorially. 2021 WL 602578, at *8 (S.D. Ohio July 1, 2021). And the case of *Aguilera v. Aegis Comms. Group, LLC* merely involved an argument that the statute only covered victims trafficked *into* the U.S. 72 F. Supp. 3d 975, 979 (W.D. Mo. 2014).

The only cases that Plaintiff cites that even address whether Section 1595 can apply extraterritorially are inapposite and plainly distinguishable. Plaintiff's reliance on the Fourth Circuit's decision in *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019), which did not address Section 1596, is misplaced for several reasons. First, *Roe* incorrectly concluded that Section 1595 could apply extraterritorially solely because it "incorporates a predicate statutory provision that applies extraterritorially." *Id.* This was exactly what the Supreme Court in *RJR Nabisco* said was not enough. 579 U.S. at 350. And *Roe*'s discussion on this point quoted and focused on the portion of *RJR Nabisco* concerning RICO's *criminal* liability provision, not civil liability provision, 917 F.3d at 242, which *RJR Nabisco* took pains to make clear must be analyzed separately. Attempting to distinguish *RJR Nabisco*, *Roe* then claimed that *RJR Nabisco*'s clear instructions for analyzing civil liability provisions were somehow limited to RICO because of a "gap" between the civil liability and criminal liability provisions in RICO. *Id.* at 243. But the Supreme Court's ruling did not turn on any such "gap"; rather, the Court simply observed that the gap corroborated the decision it already reached. *RJR Nabisco*, 579 U.S. at 350.

Not only is *Roe* not controlling here, wrong as a legal matter, and not even premised on the argument Plaintiff advances under Section 1596, it is factually distinguishable. *Roe* involved TVPRA claims against **U.S.** embassy personnel for alleged forced labor abroad. 917 F.3d at 237–39. As courts interpreting *Roe*, such as *U.S. ex rel. Hawkins v. ManTech Int'l Corp.* (on which

Plaintiff also relies), have noted, that fact was "of key importance to the ruling." 2024 WL 4332117, at *7 (D.D.C. Sept. 27, 2024). Indeed, in *Roe* the Court found that 18 U.S.C. § 3271, which expanded TVPRA liability to U.S. personnel acting outside of the country, served as the evidence of congressional intent for Section 1595 to apply extraterritorially in that case. 917 F.3d at 244. And *Roe* characterized this holding as "limited in scope." *Id.* [6]

While Plaintiff is correct that *Hawkins* noted a disagreement with the district court's decision in *Apple*, it is important to emphasize that *Hawkins* did not actually decide whether Section 1596 could serve as a basis of clear congressional intent for Section 1595 to apply extraterritorially in all actions. Rather, *Hawkins*, which involved government contractors, explicitly made clear that the "*Roe v. Howard* **context** and reasoning were more analogous" to the case before it than *RJR Nabisco* or *Apple* "in which the plaintiffs sued U.S.-based private manufacturers and not their foreign suppliers." 2024 WL 4332117, at *12 (emphasis added).[7] The *Hawkins* court then held that the civil provision reached "offenses committed by U.S. contractors abroad pursuant to section 3271." *Id.* at *13. Far from endorsing Plaintiff's argument, *Hawkins* made a holding limited to its facts and a separate provision (Section 3271) not applicable here.

At bottom, Plaintiff's argument seeking to apply Section 1595 extraterritorially, based purely on Section 1596, to the alleged "facts" of his claim is not supported by any on point authority, let alone any case that is controlling here.

---

[6] Plaintiff's reliance on the district court decision in *Ratha* (*see* Opp. at 11, 13 (citing *Ratha v. Phatthana Seafood Co.*, 2016 WL 11020222, at *6 (C.D. Cal. 2016)) is entirely misplaced because the Ninth Circuit expressly held on appeal that the court lacked subject matter jurisdiction and need not decide extraterritoriality. *See Ratha v. Phattana Seafood Co.*, 26 F.4th 1029, 1036–38 (9th Cir. 2022). Moreover, the district court's opinion did not consider, let alone apply, *RJR*.
[7] Both *Roe* and *Hawkins* are also distinguishable on this ground—both cases involved direct perpetrator liability claims of forced labor against the alleged trafficker, not beneficiary liability claims such as the one Plaintiff asserts here. *See Roe*, 917 F.3d at 238 (trafficking by U.S. embassy personnel); *Hawkins*, 2024 WL 4332117, at *12 (trafficking by government contractors).

**B.    Plaintiff Impermissibly Seeks to Apply Section 1595 Extraterritorially.**

Plaintiff next seeks to avoid dismissal by arguing that his claim for the forced labor he (a foreign national and resident of China) allegedly suffered at the hands of *Chinese* prison guards in a *Chinese* prison camp on behalf of a *Chinese* company is a domestic, not extraterritorial, application of the TVPRA because Milwaukee Tool allegedly experienced some tangential benefit in the United Sates. *See* Opp. at 16. Plaintiff's incredible argument does not hold water. His claim must be dismissed as impermissibly extraterritorial.

As the Supreme Court explained in *RJR Nabisco*, to determine "whether the case involves a domestic application of the statute," courts "look[] to the statute's 'focus.'" 579 U.S. at 337. Here, Plaintiff mistakenly argues that focus of Section 1595 is where a defendant benefitted from participating in a venture that violated the TVPRA. *See* Opp. at 18. As the district court in *Apple* recognized, this "focus" is "too narrow." 2021 WL 5774224, at *16. Section 1595 "does not create a new violation merely for benefitting from other violations." *Id.* Rather, it simply "identifies who can be sued" for knowingly benefitting from "an act in violation" of the TVPRA. *Id.* It is that act in violation – the forced labor – that is the statute's focus. *Id.*[8]

Plaintiff has not identified a *single* case supporting his argument that the territoriality turns on where the defendant received a benefit.[9] "[I]t is a rare case of prohibited extraterritorial

---

[8] Contrary to Plaintiff's suggestion, *WesternGeco LLC v. Ion Geophysical Corp.*, 585 U.S. 407, 414 (2018), supports Milwaukee Tool's argument. In that case, the Court considered the statutory focus of the damages provision of the Patent Act, which provides for an award of "damages adequate to compensate for the infringement." *Id.* The Court held that "'the infringement' is the focus of this statute." *Id.* Here, the "violation" of the TVPRA, not the benefit is the focus.

[9] Plaintiff's reliance on *Rodriguez v. Pan America Health Org.*, 29 F.4th 706, 712 (D.C. Cir. 2022) is misplaced. That case did not analyze the presumption against extraterritoriality; it concerned the commercial-activity exception in the Foreign Sovereign Immunities Act. Accordingly, that court's "gravamen" analysis, which is only applicable to that Act, has nothing to do with the "focus" analysis for evaluating extraterritoriality. Moreover, there the "gravamen" of the claim

application that lacks all contact with the territory of the United States." *Morrison v. Nat'l Austrl. Bank Ltd.*, 561 U.S. 247, 266 (2010). "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." *Id.* But that is exactly what Plaintiff's argument would yield. By his theory, the presumption could be end run in every beneficiary liability claim against a company for forced labor at the hands of others abroad so long as the plaintiff merely alleges that the defendant "benefitted" in the U.S. This would render the presumption meaningless and must be rejected.

### C. Plaintiff Does Not Plausibly Allege that Milwaukee Tool Participated in a Trafficking Venture.

As anticipated, Plaintiff's exclusive argument that Milwaukee Tool participated in a venture that engaged in forced labor is based on the alleged "continuous business relationship," no matter how attenuated it may be, between Milwaukee Tool and non-party Shanghai Select, *not* any actions by Milwaukee Tool to request that its gloves be produced with forced labor. *See* Opp. at 22. While Plaintiff relies entirely on the Seventh Circuit's decision in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), he ignores how that court, and many others, have made clear that the mere operation of a general and lawful business venture, such as Milwaukee Tool's contract to purchase gloves from a supplier (who is not even alleged to be Shanghai Select), does not suffice to establish liability under the TVPRA. *Id.* at 559; *see also Apple*, 96 F.4th at 415. Moreover, Plaintiff fails to address the critical distinctions between this case and *G.G.*

The Seventh Circuit has held that "participation" in a venture requires "culpable assistance to a wrongdoer" and a "desire to promote the wrongful venture's success." 76 F.4th at 559; *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). While this can sometimes be inferred

---

was in the U.S. because the defendant received money from traffickers that it retained in the U.S. as a financial intermediary between the venture participants. *Id.* at 709–10.

from a "continuous business relationship," the plaintiff must allege facts showing the defendant "provide[d] assistance, support or facilitation *to the trafficker*" through the relationship. 76 F.4th at 559 (emphasis added). Here, neither the Amended Complaint or the Opposition provide any allegation or explanation of how Milwaukee Tool "facilitated the venture's success." *Id.* at 560. Plaintiff has not alleged that Milwaukee Tool had any contractual relationship with Shanghai Select or traffickers at Chishan Prison, let alone that Milwaukee Tool "facilitated the growth" of their business or was even aware of their existence. Even under *G.G.*'s reasoning, this dooms his claim. *See A.B. v. H.K. Group of Co., Inc.*, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) ("Plaintiff has not alleged any interactions between Defendants or their employees and the alleged traffickers sufficient to establish that Defendants 'took part in a common undertaking' with the alleged traffickers"). Instead, Plaintiff merely alleges an "arms-length" transaction: Milwaukee Tool allegedly purchased gloves from an entity that allegedly sub-contracted with Shanghai Select, who in turn allegedly outsourced its production to the prison. That is not enough to state a claim.

Attempting to make his allegations into something more than they are, Plaintiff focuses on his conclusory allegations that Shanghai Select, even if unknown to Milwaukee Tool, must have manufactured the gloves to Milwaukee Tool's specifications because Milwaukee Tool designed the gloves. Opp. at 22–23. From this, Plaintiff submits that Shanghai Select contributed to the success of Milwaukee Tool's alleged (and assumed) objective to produce gloves cheaply in China, and thus Milwaukee Tool must have participated in Shanghai Select's trafficking venture. *See id.*

Plaintiff's argument has the law exactly *backwards*. As the facts of *G.G.* illustrate, it is the alleged participant (here, Milwaukee Tool) that must give "assistance, support, or facilitation *to the trafficker* through such a 'continuous business relationship.'" 76 F.4th at 559. In *G.G.*, the Seventh Circuit focused on the fact that "Salesforce facilitated the growth of *Backpage's business*,

*a business that was almost exclusively a sex-trafficking business*." *Id.* at 560 (emphasis added).
Salesforce "provided *Backpage* with targeted solutions addressed to the needs of *Backpage's*
business, repeatedly assessed *Backpage's* operational needs, and provided active ongoing support
that was tailored to those needs." *Id.* (emphasis added). *Backpage* was able to use the tailored
services from Salesforce to expand and grow *its* trafficking operation. *Id.*; *see also id.* at 561
(using the example of a "company help[ing] *a drug kingpin expand his drug-trafficking*
operations") (emphasis added). Ultimately, the Seventh Circuit concluded that plaintiffs had
"allege[d] that Salesforce 'participated in commercial ventures' with *Backpage to grow its
business and that Backpage violated the statute*." *Id.* at 562 (emphasis added).

Here, Plaintiff's allegations say nothing as to how Milwaukee Tool did anything to further
the business of his alleged traffickers—Shanghai Select and the Chinese prison guards. The
Amended Complaint does not allege that Milwaukee Tool was even aware of Shanghai Select or
that Shanghai Select sought to improve its own profit margins by outsourcing labor to Chinese
prison officials that were operating forced labor trafficking ventures, let alone that Milwaukee
Tool provided any assistance, support, or facilitation of that trafficking venture. Milwaukee Tool's
decision to purchase gloves from another party, who in turn allegedly sub-contracted with
Shanghai Select, who then allegedly outsourced production to a trafficker is nothing more than an
arm's-length transaction from which it cannot possibly be found that Milwaukee Tool has provided
the requisite "culpable assistance to a wrongdoer" required to establish participation. *Id.* at 559.

### D. Plaintiff Does Not Plausibly Allege that Milwaukee Tool Knew or Should Have Known of Shanghai Select's Alleged Use of Forced Labor.

To state a claim for beneficiary liability Plaintiff must plausibly allege that Milwaukee
Tool "'knew or should have known' that the 'venture…has engaged in an act in violation of'" the
TVPRA. *G.G.*, 76 F.4th at 555 (quoting 18 U.S.C. § 1595(a)). Here, recognizing that he has not

alleged any *facts* supporting the inference that Milwaukee Tool knew or should have known that Shanghai Select used forced labor to produce the gloves, Plaintiff's Opposition does not even attempt to meet this standard. Instead, Plaintiff strains to invent a new one. Without *a single* TVPRA case in support,[10] Plaintiff argues that he has stated a claim because he has alleged that "defendants acted recklessly, or at the very least negligently, as to the ***risk*** of forced labor" in the supply chain. Opp. at 25 (emphasis added). But liability under the TVPRA is not based on knowledge (constructive or actual) of merely the ***risk*** of forced labor (which presumably always exists), but knowledge of ***actual forced labor in violation of the statute***. *See G.G.*, 76 F.4th at 555 ("The next question is whether plaintiffs have plausibly alleged that Salesforce knew or should have known that Backpage's venture had engaged in acts in violation of [the TVPRA]").[11] Given the complete absence of any *factual* allegations in the Amended Complaint that Milwaukee Tool knew or should have known of the TVPRA violations at Chishan Prison it is unsurprising that Plaintiff seeks to change the test. His claim fails under well-established law.

As Milwaukee Tool detailed in its opening brief, Plaintiff's Amended Complaint relies entirely on generic and generalized allegations that Milwaukee Tool was *generally* aware of forced labor in Chinese textile manufacturing. *See* Mot. at 25–29. Plaintiff makes conclusory claims that Milwaukee Tool had the requisite knowledge of the TVPRA violations at issue *not* based on any *facts* showing that Milwaukee Tool knew or should have known that Shanghai Select (an unknown downstream sub-contractor) outsourced production to Chinese prison officials, let alone that

---

[10] The case Plaintiff principally relies on – *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998) – had nothing to do with the standard for knowledge under the TVPRA but concerned whether a negligent mistake of fact dirtied the hands of a party making an unjust enrichment claim related to fraud in the title insurance industry.

[11] "*All courts agree* that a defendant under Section 1595 *must* have had at least construction knowledge that the "venture" in question *has engaged in an act in violation of* [the TVPRA] in order for participant liability to attach." *Id.* n.9 (collecting cases) (emphasis added).

Plaintiff was forced to work. Rather, the sum total of Plaintiff's allegations of Milwaukee Tool's supposed "knowledge" of the trafficking are that Milwaukee Tool designed its gloves, that Milwaukee Tool sought to reduce manufacturing costs, that Milwaukee Tool knew the gloves were produced in China, that forced labor is allegedly used in China, and that Milwaukee Tool had the right to audit its suppliers (but does not allege that Milwaukee Tool did so). Plaintiff then tries to bootstrap these allegations with purported "expert" findings that, based on such generalized information, Milwaukee Tool could have detected the risk of forced labor.

Courts have roundly rejected such allegations as insufficient to state a claim. For example, in *Ratha*, which is directly on point and which Plaintiff ignores, the Ninth Circuit flatly rejected the plaintiff's argument that defendants should have known of forced labor because of "evidence [(including expert testimony)] generally establishing that abusive labor practices were common in Thailand, particularly in the shrimp industry." 35 F.4th at 1177. This evidence "shed[] little light on whether labor abuses were occurring at Phatthana's Songkhla factory, let alone whether [defendants] knew or should have known of such abuses." *Id.* Importantly, the court concluded:

> Assuming § 1595 imposes a negligence standard, Plaintiffs' evidence suggests, at most, [defendant] should have known of labor abuses in the Thai shrimp industry *generally*. Sweeping generalities about the Thai shrimp industry are too attenuated to support an inference that [it] knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory between 2010 and 2012.

*Id.* (emphasis in original).

Plaintiff does not even attempt to argue anything more than what the court rejected in *Ratha*. Instead, he doubles down on his theory that Milwaukee Tool was "negligent as to the risk of forced labor in its supply chain." Opp. at 34. Despite clear law that the TVPRA does not impose an affirmative duty on companies to search for trafficking,[12] Plaintiff hinges his entire argument

---

[12] *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent [] trafficking.").

on Milwaukee Tool's alleged right to audit its suppliers. Attempting to create a "Catch-22," but without any supporting law, Plaintiff makes conclusory allegations that either (1) Milwaukee Tool conducted audits and thus "would have been aware of the substantial risk that forced labor was being used" or (2) because of the alleged widespread use of forced labor in China Milwaukee Tool was negligent in not auditing its suppliers. *See* Opp. at 33. Both theories are fatally flawed.

The first theory is devoid of any factual support. Plaintiff does not allege a single *fact* supporting the inference that Milwaukee Tool audited the supply chain of the gloves that were allegedly produced by Shanghai Select, let alone that Milwaukee Tool learned anything in that audit that would put it on notice that Shanghai Select outsourced production to the Chishan Prison. Instead, Plaintiff merely contends that Milwaukee Tool's audits would have learned about "red flags" of trafficking in its Chinese supply chain. Notably, Plaintiff does not allege *how* Milwaukee Tool would have learned these facts. Even still, any general awareness of risks of forced labor is not enough. *See G.G.*, 75 F.4th at 557 ("to allow allegations that a civil defendant was aware of sporadic sex-trafficking in low-budget hotels generally to show constructive knowledge of a particular sex trafficking venture unjustifiably bridges the scienter gap between should have known and might have been able to guess") (quoting and discussing *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020)); *see also Misko v. Speedway, Inc.*, 2018 WL 2431638, at *10 (E.D. Mich. May 19, 2018) (general knowledge of condition is not sufficient).

The second theory is similarly flawed and completely foreclosed by the law. Not only do defendants not have any duty to audit their supply chains, courts have been clear that allegations of negligent failures to undertake steps to prevent trafficking cannot satisfy the requirement that the defendant knew or should have known of the specific TVPRA violation that the plaintiff sues on. *See, e.g.*, *Doe (K.B.) v. G6 Hospitality, LLC*, 2024 WL 4701891, at *3 (N.D. Ga. Nov. 5, 2024)

("The Court therefore finds that [plaintiff] cannot meet the knowledge requirement based on the failure to exercise ordinary diligence in preventing trafficking.").

At bottom, Plaintiff seeks to impose what courts have recognized would amount to "strict liability"[13] any time a plaintiff alleges that a product allegedly manufactured with forced labor in China made its way into the company's supply chain. Plaintiff's theory is that the company would have been negligent if it had not audited its supply chain given the alleged prevalence of forced labor in China and had it audited its supply chain it would have been negligent to ignore the risks of forced labor in China by continuing to manufacture its products in the country. By Plaintiff's account that is all that is needed to show the requisite knowledge of the TVPRA violation – not any *facts* establishing that the defendant knew or should have known of the actual trafficker's actions in violation of the TVPRA. That is clearly not the law. His claim must be dismissed.

### E. Milwaukee Tool Did Not Knowingly Benefit from the Alleged Forced Labor.

Plaintiff does not offer any clear response to Milwaukee Tool's argument that it cannot possibly "knowingly benefit" from a violation of the TVPRA when it did not even know of Shanghai Select, let alone that Shanghai Select was engaged in forced labor. Unlike *G.G.*, where Salesforce was aware of its contracts with the alleged trafficker (Backpage), 76 F.4th at 565, here Plaintiff has not alleged any facts that Milwaukee Tool knew that it was selling gloves manufactured by Shanghai Select with prison labor. His claim fails for this reason too.

### III. CONCLUSION

For all these reasons and those in Milwaukee Tool's opening brief, Milwaukee Tool respectfully requests that this Court dismiss all claims against Milwaukee Tool with prejudice.

---

[13] *See Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *15 (N.D. Tex. Mar. 28, 2024) ("[i]f participant liability could attach without knowledge the venture committed the specific violation sued upon, then § 1595(a) would impose strict liability for participants…).

Dated: January 13, 2025

*/s/ Paul J. Stockhausen*
Paul J. Stockhausen (Bar No. 1034225)
pstockhausen@reinhartlaw.com
REINHART BOERNER VAN DEUREN, S.C.
22 East Mifflin Street, Suite 700
Madison, WI 53703
Tel.: 608-229-2200
Fax: 608-229-2100

Ellen E. Dew (Bar No. 081218015)
William W. Reichart III (Bar No. 1812120078)
ellen.dew@us.dlapiper.com
wes.reichart@us.dlapiper.com
DLA Piper LLP (US)
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Tel.: 410-580-3000
Fax.: 410-580-3001

*Attorneys for Defendant Milwaukee Electric Tool Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 13, 2025, the foregoing Milwaukee Tool's Reply Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint was electronically filed with the Clerk of Court using the CM/ECF system and thereby served on the following counsel of record:

William E. Parsons
Hawks Quindel SC
409 E. Main Street
P.O. Box. 2155
Madison, Wisconsin 53701
wparsons@hq-law.com

Adam Farra
Times Wang
Farra & Wang PLLC
1300 I Street, N.W.
Suite 400e
Washington, D.C. 20005
afarra@farrawang.com
twang@farrawang.com

Jennifer Bennett
505 Montgomery Street, Suite 625
San Francisco, California 94111
jennifer@guptawessler.com

Thomas Scott-Railton
2001 K Street N.W., Suite 850 North
Washington, D.C. 20001
thomas@guptawessler.com

*Counsel for Plaintiff*

Jason C. White
Morgan Lewis & Bockius LLP
110 N. Wacker Dr.
Chicago, Illinois 60606
jason.white@morganlewis.com

Zane D. Memeger
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
zane.memeger@morganlewis.com

Andew DeCarlow
Morgan Lewis & Bockius LLP
1301 2nd Ave., Suite 3000
Seattle, Washington 98101
andrew.decarlow@morganlewis.com

*Counsel for Defendant Techtronic Industries Company Limited*

/s/ Paul J. Stockhausen
Paul J. Stockhausen