IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

XU LUN, a pseudonym,

    Plaintiff,

v.

MILWAUKEE ELECTRIC TOOL
CORPORATION., et al.,

    Defendants.

Case No. 2:24-cv-00803-BHL

**PLAINTIFF'S REPLY IN SUPPORT OF CONDITIONAL
MOTION FOR JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 1

    I.     Mr. Xu has made a colorable showing of personal jurisdiction. .................................... 1

           A.    Specific jurisdiction ......................................................................................... 1

           B.    General jurisdiction. ...................................................................................... 10

    II.    The defendants' other arguments are unavailing. ........................................................ 11

Conclusion ........................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Steers, Sullivan, McNamar & Rogers*,
  998 F.2d 495 (7th Cir. 1993) .................................................................................................. 13

*B.D. ex rel. Myer v. Samsung SDI Co.*,
  91 F.4th 856 (7th Cir. 2024) ............................................................................... 1, 2, 3, 5, 6

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
  582 U.S. 255 (2017) ............................................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................................................. 4

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express
  World Corp.*,
  230 F.3d 934 (7th Cir. 2000) .............................................................................................. 4

*Curry v. Revolution Laboratories, LLC*,
  949 F.3d 385 (7th Cir. 2020) ................................................................................. 2, 6, 7, 8

*Daniel J. Hartwig Associates, Inc. v. Kanner*,
  913 F.2d 1213 (7th Cir. 1990) ............................................................................................ 4

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
  46 F.4th 226 (5th Cir. 2022) .............................................................................................. 10

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021) .............................................................................................. 5, 6, 7, 12

*Foren v. LBC Optics Inc.*,
  No. 23-cv-00095 (BHL), 2023 WL 3752187 (E.D. Wis. 2023) ................................... 3, 11

*Froemming v. Carlson*,
  677 F. Supp. 3d 828 (E.D. Wis. 2023) ............................................................................. 13

*Gay v. Chandra*,
  682 F.3d 590 (7th Cir. 2012) ............................................................................................ 13

*ISI International, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) ............................................................................................ 10

*J.S.T. Corp. v. Foxconn Interconnect Technology Ltd.*,
  965 F.3d 571 (7th Cir. 2020) ........................................................................................ 5, 6, 7

*Jolly Group v. Medline Industries, Inc.*,
  435 F.3d 717 (7th Cir. 2006) ............................................................................................ 12

*Knepfle v. J-Tech Corp.*,
 48 F.4th 1282 (11th Cir. 2022) ................................................................................................ 8

*Lane v. Person*,
 40 F.4th 813 (7th Cir. 2022) .................................................................................................. 13

*Malibu Media v. Linthakhanh*,
 2014 WL 12740543 (C.D. Ill. 2014) ..................................................................................... 13

*Moser v. Ayala*,
 2012 WL 2421537 (N.D. Ill. 2012) ....................................................................................... 12

*NBA Properties, Inc. v. HANWJH*,
 46 F.4th 614 (7th Cir. 2022) .................................................................................................... 2

*Neterval-Quiel v. CMC SRL*,
 No. 21-cv-1279 (BHL), 2022 WL 4131921 (E.D. Wis. 2022) ................................................ 8

*Nicks v. Koch Meat Co.*,
 2016 WL 6277489 (N.D. Ill. 2016) .................................................................................. 3, 11

*Nicks v. Koch Meat Co.*,
 260 F. Supp. 3d 942 (N.D. Ill. 2017) ..................................................................................... 11

*Rodriguez v. Pan American Health Organization*,
 29 F.4th 706 (D.C. Cir. 2022). ................................................................................................ 6

*Smartsignal Corp. v. Bickford*,
 2006 WL 8461603 (N.D. Ill. 2006) ....................................................................................... 11

*Tamburo v. Dworkin*,
 601 F.3d 693 (7th Cir. 2010) ................................................................................................... 1

*The Chicago Athenaeum: the Center for Architecture, Art, & Urban Studies v.
 International Awards, Inc.*,
 2019 WL 10734740 (N.D. Ill. 2019) ....................................................................................... 4

*uBID, Inc. v. GoDaddy Group*,
 623 F.3d 421 (7th Cir. 2010) ........................................................................................... 4, 6, 7

**Statutes**

18 U.S.C. § 3271 .............................................................................................................................. 9

18 U.S.C. § 1589 .............................................................................................................................. 5

18 U.S.C. § 1595 ............................................................................................................................ 12

18 U.S.C. § 1596 .............................................................................................................................. 9

Trafficking Victims Protection Act of 2000,
    Pub. L. No. 106-386, § 102(b)(3), (12), (24), 114 Stat. 1464, 1466–69 .................................................. 9

iv

# INTRODUCTION

This Court should deny TTI's motion to dismiss for lack of personal jurisdiction because Mr. Xu has provided an extensive documentary record that more than meets the requirement at this early stage of the litigation of making "a prima facie showing" that TTI has sufficient United States contacts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). But if this Court concludes that further information is necessary, then Mr. Xu has certainly met the "minimal burden" of "establish[ing] a colorable" showing sufficient to warrant "jurisdictional discovery." *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024).[1]

# ARGUMENT

## I. Mr. Xu has made a colorable showing of personal jurisdiction.

Mr. Xu has made a "colorable showing" sufficient to warrant discovery on both specific and general jurisdiction.[2] As explained in the motion, in determining whether to grant such discovery, a court must "draw[] all inferences in [the plaintiff's] favor" and "bear[] in mind the fact that, without discovery, it is not surprising that the plaintiff can do little more than suggest that a defendant currently has minimum contacts." *B.D.*, 91 F.4th at 864.

### A. Specific Jurisdiction

Specific jurisdiction requires that: (1) TTI "purposefully directed [its] activities at the forum" or "purposefully availed [itself] of the privilege of conducting business in the forum"; (2) the suit "relate[s] to" TTI's "contacts with the forum"; and (3) there is nothing unfair about subjecting TTI

---

[1] Unless otherwise specified, all internal citations, quotation marks, and alterations are omitted from quotations throughout this brief.

[2] Milwaukee Tool argues that Mr. Xu must make a "prima facie" showing *before* seeking jurisdictional discovery. Dkt. 47 at 4. For jurisdictional discovery, however, "a colorable showing" is sufficient, which is a "minimal burden." *B.D.*, 91 F.4th at 864. While courts sometimes use the term "prima facie" to refer to both the showing to survive a motion to dismiss and to the standard for jurisdictional discovery, the latter is necessarily a lower bar. After all, if the standard to survive a motion to dismiss were met, jurisdictional discovery would not be needed.

1

to jurisdiction in the United States. *Id.* at 861. Contrary to the defendants' assertions, Mr. Xu has made at least a "colorable showing" on all three requirements.

**1.** Start with "purposeful availment," which requires that "the defendant must have certain minimum contacts with the forum state." *Id.* In this circuit, "[i]f the defendant exploits the forum market, it is subject to the jurisdiction of the forum." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022). It can do so by, for example, "intentionally shipping [a] product" into the forum. *Id.* at 624; *see also Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398–400 (7th Cir. 2020). Here, Mr. Xu alleged and presented evidence that TTI shipped goods to Milwaukee Tool in the United States—both directly and through TTI Trading, a company TTI does not dispute is merely a shell for TTI itself. *See* Compl. ¶¶ 14–19; Dkt. 41-1 ¶¶ 3–7.[3] That's sufficient for purposeful availment.

But it's certainly not all. In this circuit, "[a] defendant's minimum contacts may be established through the stream-of-commerce theory." *B.D.*, 91 F.4th at 864. Under this well-established theory, "[a]s long as a participant in the stream of commerce is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* This too can take

---

[3] TTI asks the Court to ignore the customs data demonstrating its shipments on the grounds that it is insufficiently authenticated. But Mr. Xu submitted: (1) a declaration explaining the customs data and how it was accessed through the ImportGenius service; (2) a declaration from the Chief Operating Officer of ImportGenius from another case explaining the service; and (3) the customs data itself. Dkts. 41-1, 41-2, 41-3. At this stage of the litigation that is more than enough—especially since TTI does not actually claim the data is inauthentic. Indeed, "[a]t this juncture … [a] court may consider a document that is unauthenticated." *Mauger v. Metro. Life Ins. Co.*, 2021 WL 2826792, at *3–4 (N.D. Ind. 2021); *see also Philips Med. Sys. (Cleveland), Inc. v. Buan*, 2021 WL 1531622, at *5–6 (N.D. Ill. 2021); *Neterval-Quiel v. CMC SRL*, No. 21-cv-1279 (BHL), 2022 WL 4131921, at *4 (E.D. Wis. 2022) (holding that at this stage, "to the extent the legitimacy of the [documents] is in dispute, the Court must resolve that dispute in Plaintiffs' favor").

Nor should this Court ignore the data simply because it ends in 2019. At the very least, it demonstrates that TTI has shipped goods into the United States. That's a sufficient basis to warrant discovery into whether TTI—either directly or through a shell company—continued to do so. Drawing this "inference[] in [Mr. Xu's] favor," *B.D.*, 91 F.4th at 864, would be all the more appropriate since the gloves continued to be manufactured in China by a company engaged by TTI for sale in the United States.

2

the form of either shipping products into the forum or knowing that the products will be sold in the forum by third parties. *Id.* at 861–62. Mr. Xu presented evidence of both. *See* Dkt. 41 at 39–41 (collecting evidence). Indeed, the Seventh Circuit has held that even where there was no evidence the defendant "advertised, sold, or serviced [the product] in [the forum]," discovery was still warranted into whether the defendant "knew or expected" the product's entry into the forum through "third-party websites and vendors." *B.D.*, 91 F.4th at 863.

TTI tries to disclaim any role in placing Milwaukee Tool gloves in the stream of commerce, shipping the gloves, or taking advantage of the U.S. market. Dkt. 48 at 8. But Mr. Xu presented allegations and evidence of TTI's extensive involvement in the production, shipping, and profiting from sales of the gloves in the United States. TTI plays a driving role in Milwaukee Tool's Chinese supply chain. Compl. ¶¶ 8, 22, 26, 46, 77–78, 90–93, 97, 129; Dkt. 41-1 ¶¶ 8–9, 13–14, 28. "TTI manages 'Manufacturing' and 'Global Sourcing' … for Milwaukee Tool." Compl. ¶ 77. TTI (through TTI Trading) engaged the company producing Milwaukee Tool's gloves using forced labor and was one of that company's biggest customers. *Id.* ¶ 46. TTI employees handle Milwaukee Tool's supply chain and sourcing. *Id.* ¶¶ 22–23, 26; Dkts. 41-15, 41-16, 41-17.[4] TTI imposes standards on suppliers and audits them. Compl. ¶¶ 100–04. Again, customs data shows that TTI—both directly and through TTI Trading—shipped Milwaukee Tool products, including gloves, into the United States. *Id.* ¶¶ 14–

---

[4] Mr. Xu alleged that these employees work for TTI and provided evidence showing that they list their employer as "Techtronic Industries" without qualification. Dkts. 41-15, 41-16, 41-17. TTI now asserts that they are actually employees of yet another TTI subsidiary named TSSL that is also based in Hong Kong and has "two common directors" with TTI. Dkt. 32-5 ¶¶ 3–4, 8–10. At this stage, however, a "court will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record, *either* by way of [the] complaint or other submissions," and "[w]here there is a factual conflict between the record and the defendants' affidavits, we will resolve them in [the plaintiff's] favor." *Curry*, 949 F.3d at 393 (emphasis added). At the very least, ambiguities or gaps in the record as to the relationship between these companies and employees would warrant discovery. *See, e.g.*, *Nicks v. Koch Meat Co.*, 2016 WL 6277489, at *5 (N.D. Ill. 2016) (St. Eve, J.) (permitting jurisdictional discovery because record was "ambiguous as to the … Defendants' internal structure"); *see also Foren v. LBC Optics Inc.*, No. 23-cv-00095 (BHL), 2023 WL 3752187, at *3 (E.D. Wis. 2023).

19; Dkt. 41-1 ¶¶ 3–7. And TTI has profited significantly from the U.S. sales of Milwaukee Tool, its "flagship brand," to companies like Home Depot. Compl. ¶¶ 29, 81–82, 93; *see also* Dkt. 41-1 ¶ 21.[5]

Finally, TTI glosses over another, independent basis for purposeful availment that Mr. Xu provided: the "continuing relationships and obligations" between TTI and Milwaukee Tool. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). TTI claims that this basis for jurisdiction would only apply if Milwaukee Tool were TTI's "alter ego." Dkt. 48 at 17. Not so. Minimum contacts with a forum can be satisfied "by entering into [a] long-term business ... contract with [a] resident of [the] forum," *uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 426 (7th Cir. 2010), or if a defendant "knowingly reached out to a Wisconsin business and created a continuing relationship with that business," *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990); *see also* Dkt. 41 at 44 & n. 15 (compiling cases). Of course, relatedness must also still be satisfied, but reaching out into a forum to continuously do business with a company there is purposeful availment. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475–76 ("[W]here the defendant … has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there."). To be clear, this is not the same thing as requesting that "the acts" of Milwaukee Tool "be attributed" to TTI under an alter ego theory. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). Instead, TTI's *own* acts in creating and maintaining a relationship with a company in the United States constitute minimum contacts with the forum.

---

[5] At various places, TTI protests that Mr. Xu "does not allege" certain facts giving rise to personal jurisdiction in the complaint. Dkt. 48 at 8. Yet as the cites above demonstrate, Mr. Xu extensively alleged facts that support personal jurisdiction here. As a general matter, while "the Court accepts as true the factual allegations relevant to jurisdiction made in the plaintiff's complaint," a "complaint need not allege personal jurisdiction." *The Chicago Athenaeum: the Ctr. for Architecture, Art, & Urb. Stud. v. Int'l Awards, Inc.*, 2019 WL 10734740, at *2 (N.D. Ill. 2019). And once a defendant moves to dismiss on those grounds, the plaintiff can rely on *both* allegations and evidence. *Id.* Mr. Xu has provided such evidence, which the defendants largely fail to address.

4

**2.** The defendants' relatedness arguments are even less compelling. Personal jurisdiction requires merely that "the suit arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Here, the crux of Mr. Xu's TVPA claim is that TTI "benefit[ted] … from participation in a venture which has engaged in" forced labor. 18 U.S.C. § 1589(b). TTI's profitable participation in a venture with Milwaukee Tool to produce gloves for sale in the United States is thus at the heart of Mr. Xu's claim.[6] And participation in that venture is inextricably bound up with TTI's contacts with the United States—its role in shipping gloves into the United States, its participation in placing the gloves in the stream of commerce (knowing and expecting they would be sold in the United States), and its continuous business relationship with Milwaukee Tool. That plainly distinguishes the facts and nature of the claim in *J.S.T.*, as Mr. Xu explained (and the defendants fail to address). Dkt. 41 at 46 (citing *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577–78 (7th Cir. 2020)).

TTI insists that the forced labor itself must have been expressly aimed at causing harm in the United States. Dkt. 48 at 11–12. But that is wrong twice over. First, TTI misunderstands the basis for Mr. Xu's claim: The relevant conduct is not directly forcing Mr. Xu to labor; it's participating in— and benefiting from—a venture that relied on forced labor. 18 U.S.C. § 1589(b). That venture made its profits from selling Milwaukee Tool gloves in the United States. More fundamentally, TTI misunderstands the standard for personal jurisdiction. A forum may exercise jurisdiction over a defendant that has *either* "purposefully directed" its conduct at the forum *or* "purposefully availed"

---

[6] TTI asserts that it "would logically perceive any benefit from actions in China as accruing in Hong Kong." Dkt. 48 at 15. But Mr. Xu's claim is based on TTI's role in manufacturing gloves for sale in the United States, shipping those gloves into the United States, and profiting from those sales in the United States. Compl. ¶ 29 (70% of TTI's revenue comes from Milwaukee Tool). At this early stage of the litigation, it is "not surprising" that Mr. Xu does not have the full picture of how TTI has structured its role in each of those steps (including its revenues and profits), but that is the whole reason for jurisdictional discovery. *B.D.*, 91 F.4th at 864.

5

itself of the forum's markets. *B.D.*, 91 F.4th at 861. A defendant that has "exploited" a forum's market, therefore, is subject to jurisdiction in that forum—regardless of whether it *also* satisfies the "express aiming" test. *uBID*, 623 F.3d at 427 & n.1; *see also* Dkt. 41 at 45–46.

Beyond this, TTI argues at length that relatedness requires either harm to the plaintiff in the forum or conduct by the defendant in the forum. Dkt. 48 at 12–14. TTI does not cite any case from the Seventh Circuit or the Supreme Court imposing such a bright-line test, nor could it. *First*, it is settled law that harm to the plaintiff need not occur in the forum: "[I]t is the *defendant's* conduct, not the plaintiff's injury, that must form the necessary connection with the forum." *J.S.T.*, 965 F.3d at 577. The focus of section 1589(b) is on a defendant's conduct in profitably participating in a venture involved in forced labor, and that benefit was realized from the sale of Milwaukee Tool gloves in the United States. *See* Dkt. 41 at 16–20. To avoid this, TTI asks this Court to adopt the reasoning of the Ninth Circuit in *Ratha*, but TTI fails to address Mr. Xu's explanation of why *Ratha*'s myopic focus on the plaintiff's harm cannot be squared with Seventh Circuit precedent like *J.S.T. See id.* at 45–46.[7] Additionally, the forced labor protections of the TVPA are not solely concerned with harm to the victim, but also with the harm to U.S. workers and U.S. companies who face unfair competition from companies employing forced labor. *See Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 716 n.5 (D.C. Cir. 2022).

*Second*, there is simply no requirement that the defendant's conduct must physically occur within the forum. Personal jurisdiction looks to a defendant's "*contacts* with the forum," not solely its conduct within the forum. *Ford*, 592 U.S. at 362–63 (emphasis added); *see also Curry*, 949 F.3d at 398–

---

[7] For similar reasons, TTI stretches *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017), far beyond its breaking point by citing it for the proposition that if "the plaintiffs and the injuries were not in the forum," there cannot be specific jurisdiction. Dkt. 48 at 13–14. As the Supreme Court later explained, "[w]e found jurisdiction improper in *Bristol-Myers* because the forum … lacked any connection to the plaintiffs' claims." *Ford*, 592 U.S. at 369.

400 ("[P]hysical presence is not necessary for a defendant to have sufficient minimum contacts with a forum."). "[T]he contacts supporting specific jurisdiction can take many different forms," including shipping products into the forum and a business relationship with entities in the forum. *uBID*, 623 F.3d at 426. To satisfy the relatedness test, those contacts need not occur within the forum's borders, so long as they are "relate[d] to" the plaintiff's claims. *Ford*, 592 U.S. at 362; *see Curry*, 949 F.3d at 400 (requiring just a "connection between the forum and the ... claims"). As explained above, that requirement is met here. And indeed, the Seventh Circuit has rejected such attempts to impose a bright-line rule on the "flexible jurisdictional analysis that the Supreme Court has applied consistently." *uBID*, 623 F.3d at 429. In that case, as here, "[w]hat matters is that [the defendant] purposefully availed itself of the [forum] market … through its deliberate and continuous exploitation of that market." *Id.*

TTI also tries to cast doubt on the notion that the stream-of-commerce theory could extend beyond products liability cases. Dkt. 48 at 13, 23–24. But as explained above, both the direct shipments and TTI's longstanding contractual relationship with Milwaukee Tool provide a basis for personal jurisdiction without relying on the stream-of-commerce theory. Beyond that, however, the very Seventh Circuit case on which TTI relies, *J.S.T.*, did not create any such per se rule. The court did note that "the stream of commerce theory is *typically* associated only with products liability suits." *J.S.T.*, 965 F.3d at 576 (emphasis added). But it made clear that it is not categorically *limited* to product liability suits. Personal jurisdiction in other suits can be based on the stream of commerce theory, so long as there is a "a connection … between [the] downstream consumer sales" that occur in the

7

forum "and [the] underlying claims." *Id.* Here, there is precisely that connection: The underlying claim is that TTI has benefited from these sales.[8]

**3.** Finally, as to fairness, TTI never made this argument in its motion to dismiss and instead improperly raises it for the first time in reply. Dkt. 41 at 39. Doing so is particularly inappropriate since "as long as the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Curry*, 949 F.3d at 402. But even putting forfeiture aside, TTI does not cite the factors courts consider in this analysis, *see id.*, or explain why it has borne its burden of meeting that standard.

Instead, TTI rehashes its other arguments that it could not "reasonably anticipate being haled into court" in the United States. Dkt. 48 at 14–15. But having shipped Milwaukee Tool gloves into the United States, benefited from sales of those gloves in United States markets, and entered into a continuous business relationship with a United States company to do so, TTI can hardly be surprised at being subject to jurisdiction for violating U.S. laws governing how those products can be made. Taking advantage of the U.S. market through this conduct has all been exceedingly profitable for TTI, and "[t]here is no unfairness in requiring a defendant to defend a lawsuit in the courts of [a forum] where, through the very activity giving rise to the suit, it [has] gain[ed] so much." *Curry*, 949 F.3d at 402. As this Court has observed, "with economic benefit comes legal exposure," and this "informs the risk-reward calculus all companies must make when entering a market, and they may not simplify the math by accepting the profits and disclaiming the perils." *Neterval-Quiel v. CMC SRL*, No. 21-cv-1279 (BHL), 2022 WL 4131921, at *4 (E.D. Wis. 2022). Plus, it is hardly unfair to hale TTI into U.S.

---

[8] TTI also relies on a plainly distinguishable out-of-circuit case applying a different test under Florida state law for "piercing the corporate veil or … demonstrat[ing] that [a subsidiary] was an alter ego of [a parent]." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1291–92 (11th Cir. 2022).

8

courts when the company itself regularly litigates in U.S. courts when it suits the company's interests. Dkt. 41 at 42.

TTI also claims that Mr. Xu's argument would mean that "anyone worldwide could sue a foreign company in the United States over any product that at any point may have the taint of forced labor in its supply chain." Dkt. 48 at 15. That is incorrect. First of all, the defendant must purposefully avail themselves of U.S. markets (and the claims must be related to that). Further, the TVPA's prohibition on forced labor applies extraterritorially only when "an alleged offender is present in the United States," "an alleged offender is a national of the United States," or the defendant is working with the U.S. government. 18 U.S.C. §§ 1596(a), 3271(a).[9]

This also scuttles TTI's argument that the forum (the United States) does not have a real interest in preventing TTI's conduct. Dkt. 48 at 15. Congress expressly determined that trafficking, including "forced labor," has "national implications"—including "an impact on the nationwide employment network and labor market." Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 102(b)(3), (12), (24), 114 Stat. 1464, 1466–69. Indeed, given the goals of the TVPA, it is difficult to argue that fairness would be better served by requiring Mr. Xu to sue in China based on his forced labor in a Chinese prison than allowing him to sue in a country where a massive global company makes the lion's share of its revenue, Compl. ¶ 29—revenue generated in part from the forced labor of Mr. Xu and others.

In sum, Mr. Xu has made (at the very least) a colorable showing of personal jurisdiction sufficient to warrant discovery into specific jurisdiction.

---

[9] As Mr. Xu explained in his opposition, he has sufficiently alleged that TTI is "present" in the United States, even under TTI's definition of the term. Dkt. 41 at 48–49.

9

## B. General Jurisdiction.

As to general jurisdiction, Mr. Xu also provided evidence that TTI has held itself out as having a headquarters in Florida, *see* Dkt. 43 at 4 (compiling evidence), which the company itself admits would support general jurisdiction, Dkt. 32 at 9.[10] Mr. Xu also provided evidence and allegations that TTI has an alter ego relationship with its U.S. subsidiaries. Dkt. 43 at 5 (compiling evidence). That is enough to make a colorable showing, and TTI's arguments to the contrary are similarly without merit.

*First*, TTI misleadingly claims that courts have "recognized" that Rule 4(k)(2) is "inapplicable in general personal jurisdiction cases." Dkt. 48 at 6 (quoting *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 240 (5th Cir. 2022)). In support of that assertion, TTI cites a single case. But what that case actually said was that the plaintiffs *may* have been making that argument, and it "*might*" be right— but it did not decide. *Douglass*, 46 F.4th at 240 n. 27 (emphasis added). TTI does not cite a single court that has actually accepted this argument. And in the Seventh Circuit, the law is clear that if "the defendant contends that [it] cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). The Seventh Circuit has not made any exception for general jurisdiction.

*Second*, as elsewhere, TTI tries to characterize Mr. Xu's arguments as reliant on Milwaukee Tool and TTI being alter egos. But Mr. Xu also pointed to evidence of TTI treating itself as interchangeable with its other U.S. subsidiaries. Dkt. 43 at 5 (citing evidence as to TTI North America and TTI Consumer Power Tools). And as to Milwaukee Tool, Mr. Xu also provided concrete evidence that makes at least a colorable showing that "'would justify piercing the corporate veil' *or* [that] one entity exercised an 'unusually high degree of control' over the other." *Nicks*, 2016 WL

---

[10] Here as well, ambiguities in the record as to this headquarters would, at the very least, warrant discovery.

6277489, at *4 (St. Eve, J.) (emphasis added) (quoting *Cent. States*, 230 F.3d at 943). As this Court has recognized, without discovery, plaintiffs will rarely have "detailed facts" as to "how … corporations share or interchange employees" or manage responsibilities. *Foren v. LBC Optics Inc.*, No. 23-cv-00095 (BHL), 2023 WL 3752187, at *3 (E.D. Wis. 2023); *see also Nicks*, 2016 WL 6277489, at *5 (ordering jurisdictional discovery where "the factual record is ambiguous as to the … Defendants' internal structure" and degree of "control" exerted by defendant over other entities).[11]

This colorable showing is sufficient since "a court which has jurisdiction over a corporation has jurisdiction over its alter egos." *Smartsignal Corp. v. Bickford*, 2006 WL 8461603, at *4 (N.D. Ill. 2006).

## II. The defendants' other arguments are unavailing.

None of the defendants' other arguments have merit either.

**A.** The defendants complain that Mr. Xu's request for jurisdictional discovery is "overly broad" and "unduly burdensome." Dkt. 47 at 5; Dkt. 48 at 21–24. As an initial matter, these arguments are premature. If this Court were to grant Mr. Xu's motion for jurisdictional discovery, the parties would follow this Court's normal rules for discovery: They would prepare a discovery plan with more granular requests, and the defendants would have the opportunity to raise any objections to specific requests as they arise. *See* Individual Rule IV. The defendants have given no reason for why the regular procedures and standards for discovery could not address any such concerns.

Beyond that, Mr. Xu's description of the kinds of jurisdictional discovery he would seek closely tracks the showing required. To take just one example, his theories of purposeful availment look to TTI's role in putting Milwaukee Tool gloves into the stream of commerce with knowledge

---

[11] TTI confusingly claims that *Nicks* "does not address personal jurisdiction at all," but that appears to be because TTI is citing a different decision in the case. Dkt. 48 at 20 n.4 (citing *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 959–62 (N.D. Ill. 2017)).

11

that they will be sold in the United States, as well as the continuous business relationship between the two companies. The arrangements between the two companies for manufacturing, shipping, and selling the gloves are plainly relevant to that. And to the extent that involves information in the possession of Milwaukee Tool, that too would be relevant. *See, e.g., Moser v. Ayala*, 2012 WL 2421537, at *2 (N.D. Ill. 2012) (granting jurisdictional discovery as to third parties).[12] This information may overlap in some instances with Mr. Xu's claims, but that reflects the requirement that the defendants themselves invoke—which is that his claims must "relate to" TTI's contacts with the United States. *Ford*, 592 U.S. at 362.

**B.** Both of the defendants make a surprising request that Mr. Xu—a former political prisoner of the Chinese government—post a bond to ensure that the defendant billion-dollar companies could recover attorneys' fees and the costs of any discovery. This request suffers from multiple flaws.

Perhaps most glaring is that the defendants have given no reason why they would be entitled to "costs and attorneys' fees," Dkt. 47 at 6, and "the fees and costs of … discovery," Dkt. 48 at 23. The TVPA does not include any fee- or cost-shifting provision in favor of defendants, providing only that prevailing *plaintiffs* can recover "reasonable attorneys fees." 18 U.S.C. § 1595(a). TTI relies on a sanctions case where an attorney engaged in "clearly vexatious and unreasonable" conduct "after the case had been dismissed with prejudice," then provided "disingenuous explanations" and other "negligent, reckless, and indifferent conduct that demonstrated bad faith." *Jolly Grp. v. Medline Indus., Inc.*, 435 F.3d 717, 719 (7th Cir. 2006). The defendants give no justification for why anything of the kind would possibly happen here. The defendants also cite generally to Federal Rule of Civil Procedure 54 without further explanation. Dkt. 48 at 24 n.6; Dkt. 47 at 6. But Rule 54(d)(1)'s provision for costs to the prevailing party doesn't apply to attorneys' fees or to all discovery expenses,

---

[12] Indeed, the blizzard of subsidiaries that the defendants invoke make it particularly important to have a clear picture of how these relationships are structured.

just a very narrow category of costs (and would of course only apply to a party that prevails). *See, e.g.*, *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022). The defendants don't even explain which of these costs they think would apply or how much they would be.

That in itself would be sufficient to deny this request. But even beyond that, the defendants can't show that a bond would be warranted for whatever hypothetical discovery costs they envisage (but don't articulate). Milwaukee Tool relies on a case imposing a bond in light of "the frivolous nature of the suit," the plaintiff's troubling "behavior in this case," and "his pro se status." *Froemming v. Carlson*, 677 F. Supp. 3d 828, 852 n.10 (E.D. Wis. 2023); *see also Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993) (request for bond was "at least plausible" given "apparently frivolous character of this litigation and the fact that the plaintiff is an unrepresented individual"). But while the merits of this case are "contested" (as lawsuits usually are), the defendants have not even tried to show that it is "frivolous in nature." *Malibu Media v. Linthakhanh*, 2014 WL 12740543, at *2 (C.D. Ill. 2014). And that would be a particularly tall order given that the U.S. government blocked the importation of gloves manufactured by TTI and Milwaukee Tool's supplier because of evidence of forced labor, Compl. ¶ 6, and Walmart stopped selling the Milwaukee Tool-branded gloves, *id.* ¶¶ 4, 125. Further, the defendants haven't shown any risk of meaningful "prejudice," given that they haven't even tried to explain the "costs" they think they are due or why. *Gay v. Chandra*, 682 F.3d 590, 594 (7th Cir. 2012). And finally, while the defendants' silence as to the costs they envisage makes it hard to calculate potential "prejudice" to Mr. Xu of having to pay a bond, a Court would need to take this burden (and ability to pay) into account before imposing any such bond on someone who as recently as a few years ago was in a Chinese government forced labor facility. *Id.*

13

Case 2:24-cv-00803-BHL Filed 02/03/25 Page 18 of 20 Document 51

## CONCLUSION

For the reasons above, if this Court were to hold that Mr. Xu failed to make a prima facie case of personal jurisdiction sufficient to defeat the motion to dismiss outright, he has at the very least made a colorable showing sufficient to grant the motion for jurisdictional discovery.

Dated: February 3, 2025

Respectfully submitted,

**GUPTA WESSLER LLP**
*/s/ Jennifer Bennett*
Jennifer Bennett
Attorney Bar Number: 296726
Attorney for Plaintiff
Email: jennifer@guptawessler.com
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

Thomas Scott-Railton[*]
Attorney Bar Number: 5687330
Attorney for Plaintiff
Email: thomas@guptawessler.com
2001 K Street NW, Suite 850 North
Washington, DC 20001
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

**HAWKS QUINDEL, S.C.**

William E. Parsons
Attorney Bar Number: 1048594
Attorney for Plaintiff
Email: wparsons@hq-law.com
409 East Main Street
P.O. Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

---

[*] *Admitted in New York; practicing under direct supervision of members of the District of Columbia Bar under Rule 49(c)(8).*

14

**FARRA & WANG PLLC**

Times Wang
Attorney Bar Number: 281077
Email: twang@farrawang.com
Adam Farra (application for admission forthcoming)
Email: afarra@farrawang.com
1300 I Street NW, Suite 400E
Washington, D.C. 20005
Telephone: (202) 505-6227

*Counsel for Plaintiff*